FEB - 7 2008

USDC WP SDNY

RECEIVED

JAN 3 0 2008

U.S. BANKRUPTCY COURT, SDNY

Brad A. Berish (BB 0340 admitted
    pro hac vice)
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd.
Suite 1050
Chicago, IL 60604
(312) 435-1050 (ph)
bberish@ag-ltd.com

Attorney for Defendants
Brian Farley, Phillip Herlihey and PMD Company
(a/k/a G01NG PLACES LLC)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**08 CIV. 1257**

**BRIEANT**

| | |
|---|---|
| In re | Case No. 05-25081 (ASH) |
| DOUGLAS E. PALERMO, | Chapter 7 |
| Debtor. | |
| DAVID R. KITTAY, TRUSTEE, | Adv. Pro. No. 08-8203 |
| Plaintiff, | |
| vs. | |
| BRIAN FARLEY, PHILIP HERLIHY, and PMD COMPANY, | Hearing Date and Time: To Be Determined |
| Defendants. | |

**NOTICE OF MOTION TO WITHDRAW THE REFERENCE AND TO TRANSFER**
**VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN**
**DISTRICT OF ILLINOIS, EASTERN DIVISION**

TO:  Jonathan Bardavid, Esq.
     Storch Amini & Munves, P.C.
     2 Grand Central Tower
     140 E. 45th Street, 25th Floor
     New York, NY 10017
     jbardavid@samlegal.com

78127.1 1/28/08

PLEASE TAKE NOTICE, that upon the supporting memorandum of law, the affidavits of Brian Farley and Phillip Herlihey, and accompanying exhibits, the defendants Brian Farley ("**Farley**"), Phillip Herlihey ("**Herlihey**") and PMD Company (a/k/a G01NG PLACES LLC, an Illinois limited liability company ("**PMD**") (collectively, the "**Defendants**") shall move this Court at the United States District for the Southern District of New York, 300 Quarrapos Street, White Plaines, New York, on _____, 2008 at _____ m., for an order (i) pursuant to 28 U.S.C. §157(d) and Federal Rule of Bankruptcy Procedure 5011 withdrawing the reference of this adversary proceeding to the Bankruptcy Court for the Southern District of New York and (ii) pursuant to 28 U.S.C. §1404 and §1412 and Federal Rule of Bankruptcy Procedure 1014(a) transferring the above-captioned case to the United States District Court for the Northern District of Illinois, Eastern Division.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion shall be in writing, set forth the name of the objector, the basis for the objection, and the grounds therefore, and be filed with the Court, together with proof of service thereof, and served upon Adelman & Gettleman, Ltd., 53 W. Jackson Boulevard, Suite 1050, Chicago, Illinois 60604, Attention: Brad A. Berish

DATED:     January 29, 2008
           Chicago, Illinois.                    Respectfully submitted,


                                    By:  /s/ Brad A. Berish_____
                                         Brad A. Berish (BB 0340 admitted pro
                                         hac vice)
                                         ADELMAN & GETTLEMAN, LTD
                                         53 W. Jackson Boulevard
                                         Suite 1050
                                         Chicago, Illinois 60604
                                         (312) 435-1050
                                         Attorneys for defendants, Brian
                                         Farley, Phillip Herlihey and PMD
                                         Company (a/k/a G01ING PLACES LLC)

## CERTIFICATE OF SERVICE

I, Brad A. Berish, an attorney, hereby certify that a copy of the attached document along with the documents referred to therein including the Memorandum of Law in Support of Motion of Defendants To Withdraw The Reference and To Transfer Venue To The United States District Court For The Northern District of Illinois, Eastern Division, the Affidavits attached thereto, and the proposed Order in connection therewith, was served upon the party listed below, via ECF and email transmission on January 29, 2008:

> Jonathan Bardavid, Esq.
> Storch Amini & Munves, P.C.
> 2 Grand Central Tower
> 140 E. 45th Street, 25th Floor
> New York, NY 10017
> jbardavid@samlegal.com
> Attorney for Plaintiff

Dated: January 29, 2008

/s/ Brad  A. Berish, Esq.
Brad Berish, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Tel: 312-435-1050
Fax: 312-435-1059

ATTORNEY FOR DEFENDANTS
Brian Farley, Phillip Herlihy and PMD Company
(a/k/a G01NG PLACES LLC)

78127.1 1/28/08

Brad A. Berish (BB 0340 admitted
    pro hac vice)
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd.
Suite 1050
Chicago, IL 60604
(312) 435-1050 (ph)
bberish@ag-ltd.com

Attorney for Defendants
Brian Farley, Phillip Herlihey and PMD Company
(a/k/a G01NG PLACES LLC)


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Case No. 05-25081 (ASH) |
| | Chapter 7 |
| DOUGLAS E. PALERMO, | |
|         Debtor. | |
| DAVID R. KITTAY, TRUSTEE, | Adv. Pro. No. 08-8203 |
|         Plaintiff, | |
|   vs. | |
| BRIAN FARLEY, PHILIP HERLIHY, and PMD COMPANY, | Hearing Date and Time: To be determined |
|         Defendants. | |


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS TO**
**WITHDRAW THE REFERENCE**
**AND TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Case Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    The Key Parties or Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    The Transactions Relating to the Alleged Transfers At Issue . . . . . . . . . . . . . . . 8

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    WITHDRAWAL OF REFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    TRANSFER OF VENUE TO ILLINOIS . . . . . . . . . . . . . . . . . . . . . . . . . 13

            (i)     Facts and Issues Relevant to Venue Transfer Analyses . . . . . . . . . . . . . 14

            (ii)    The Applicable Factors Favor Transfer of Venue to Illinois . . . . . . . . . 16

                    1.    Convenience of the Witnesses . . . . . . . . . . . . . . . . . . . . . . . 17

                    2.     Location of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                    3.    Convenience of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . 18

                    4.    Locus of Operative Facts . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                    5.    Process to Compel Witnesses . . . . . . . . . . . . . . . . . . . . . . . 19

                    6.    Means of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                    7.    Familiarity with Governing Law . . . . . . . . . . . . . . . . . . . . . 20

                    8.    Plaintiff's Choice of Forum . . . . . . . . . . . . . . . . . . . . . . . . . 21

                    9.    Trial Efficiency and Interests of Justice . . . . . . . . . . . . . . . . . . 22

            (iii)   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TABLE OF AUTHORITIES

<u>CASES</u>

Berman v. Informix Corp., 30 F.Supp.2d 653, 657 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . 17

Curtis v. Loether, 415 U.S. 189, 196 n. 11 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Germain v. Connecticut National Bank, 988 F.2d 1323, 1329 (2nd Cir. 1993) . . . . . . . . . . . . 12

Granfinanceria, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2781, 2787 (1989) . . . . . . . . . . . 12

In re Bennett Funding Group, Inc., 259 B.R. 243, 248 (N.D.N.Y.2001) . . . . . . . . . . . 14, 16-23

In re Blatstein, 244 B.R. 290, 298 (Bankr.E.D.Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re General Media, Inc., 335 B.R. 66, 72 (Bkrtcy.S.D.N.Y.2005) . . . . . . . . . . . . . . . . . . . . . 11

In re Iridium Operating LLC, 285 B.R. 822, 835 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . 13

In re Jumer's Castle Lodge, Inc., 338 B.R. 344, 354 (Bankr.C.D.IL. 2006) . . . . . . . . . . . . . . 16

In re Magnesium Corp., 2004 WL 1161172 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Rickel & Assocs., Inc., 2003 WL 23021972 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re RML, Inc., 92 F.3d 139, 151 (3rd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Sloan, 32 B.R. 607, 611 (Bankr.E.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Transcon Lines, 121 B.R. 837, 838 (C.D.Cal.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Zahneis, 78 B.R. 504, 505 (Bankr.S.D.OH. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 331 (1990) . . . . . . . . . . . . . . . . . . . . . . . . 12

Mediterranean Shipping Co. S.A. Geneva v. Pol-Atlantic, 229 F.3d 397, 405 (2d Cir. 2000)   22

Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman,

    306 B.R. 746, 749 (S.D.N.Y.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Rickel & Assocs.. Inc., 2003 WL 23021972 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES

11 U.S.C. § 544(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 157(b)(2)(H) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. §157(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. §157(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. §157(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. §1334(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## RULES

Federal Rule of Bankruptcy Procedure 5011(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed.R.Civ.P. 45(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed.R.Civ.P. 45(c)(3)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed.R.Civ.P. 45(c)(3)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

78105.4 1/29/08

## I.    <u>PRELIMINARY STATEMENT</u>

The Defendants have a constitutional right to a jury trial in this matter, have requested a jury trial in this matter, and have <u>not</u> consented to a jury trial before the Bankruptcy Court, and thus, the reference to the Bankruptcy Court must be withdrawn.  The Supreme Court has held that defendants have a Seventh Amendment right to a jury trial in adversary proceedings which assert fraudulent conveyance claims, unless defendants have themselves asserted claims as creditors against the bankruptcy estate.  In 1994, Congress removed the bankruptcy courts' authority to conduct jury trials, even in core proceedings, absent special designation by the district court **and** the express consent of the parties.  In the instant matter, the Defendants have not asserted any claims as creditors against the bankruptcy estate, have requested a jury trial, and do not consent to such trial before a Bankruptcy Court.  Thus, the reference of this matter to the Bankruptcy Court must be withdrawn, and the matter must be tried in the District Court.

After withdrawing the reference to the Bankruptcy Court, this Court should then transfer venue of this matter to the United States District Court for the Northern District of Illinois, Eastern Division.  The Defendants all reside in Illinois.  The majority of the parties and non-party witnesses reside in Illinois.  The underlying operative documents are governed by Illinois law and mandate an Illinois forum.  The payments associated with the alleged fraudulent transfers were paid by Illinois parties and received by the Defendants in Illinois.  In the interest of justice and for the convenience of the parties, the Court should transfer this matter to the District Court for the Northern District of Illinois, Eastern Division.

## II.    BACKGROUND

**A.    Case Status**

1.      On October 14, 2005 (the "**Petition Date**"), Douglas E. Palermo (the "**Debtor**") filed a petition seeking relief under Chapter 7 of Title 11 (the "**Bankruptcy Case**") of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). See, paragraph no. 1 of Complaint filed in this adversary proceeding on January 7, 2007 (dkt no. 1) (the "**Complaint**"), a copy of which is attached hereto, without its exhibits, as exhibit A and by express reference made a part hereof.

2.      On January 23, 2006, David R. Kittay was appointed Chapter 7 successor Trustee of the Bankruptcy Case (the "**Trustee**"). See, Complaint at para. 3.

3.      On January 7, 2008, the Trustee filed the eleven (11) count Complaint initiating this adversary proceeding against the defendants, Phillip Herlihey ("**Herlihey**"), Brian Farley ("**Farley**"), and PMD Company (a/k/a G01NG PLACES LLC) ("**PMD**") (collectively, the "**Defendants**") (the "**Adversary Proceeding**").[1]

4.      On January 17, 2008, the Bankruptcy Court entered a Scheduling Order which, *inter alia*, required the Defendants answer to be filed on January 22, 2008, and set a discovery cut-off date of April 17, 2008.

---

[1]      The Adversary Proceeding was initially commenced by the filing of a complaint against the Defendants and other defendants on October 12, 2007, in adversary case number 07-8310, however, on or about December 11, 2007, the Bankruptcy Judge directed the Trustee to refile the complaint so that a separate proceeding is commenced against only the Defendants. See, Complaint at para. 61. As stated, that new Complaint was filed on January 7, 2008.

5.      Counts I-VIII of the Complaint seek to avoid four alleged transfers from the Debtor to one or more of the Defendants totaling in excess of $465,000 (the "**Alleged Transfers**") as fraudulent transfers under state law and the Bankruptcy Code (the "**Fraudulent Transfer Counts**"). See Counts I-VIII of Complaint. The remaining three counts of the Complaint relate to the same Alleged Transfers, but seek an accounting or turnover under other theories (the "**Other Counts**"). See Counts IX-XI of Complaint.

6.      On January 22, 2008, the Defendants filed their Answer and Affirmative Defenses to the Complaint (the "**Answer**") and a Demand For Jury Trial and Statement of Non-Consent To Jury Trial Conducted by the Bankruptcy Court ("**Nonconsent to Jury Trial**"), copies of which are attached hereto as exhibits B and C, respectively.

7.      No discovery has been commenced yet in the Adversary Proceeding.

8.      The Trustee's counsel in this Adversary Proceeding is retained on a contingency fee basis equal to 33 1/3% of what ever recovery is obtained in this Adversary Proceeding. A copy of the retention application and the Bankruptcy Court order approving same filed in the Bankruptcy Case as docket numbers 61 and 63, are attached hereto, without exhibits, as exhibit D.

**B.      The Key Parties or Witnesses**

9.      As is alleged in the Complaint, the Alleged Transfers were in repayment of loans made by the Defendants to the Debtor. See, Complaint at para. 30, 44, 47, 48, 49, 51, 52, and 54. As is also alleged in the Complaint, the Alleged Transfers consisted of the assignment to one or more of the Defendants of the Debtor's interests in future real estate related commissions (the "**Contingent Commissions**"), that the Debtor and/or one or more entities in which he had an interest in, or a relationship with (the "**Debtor Entity(ies)**"), would earn as a broker for a single

owner of several different pieces of real estate if those transactions later closed. Id. That owner of each of those pieces of real estate, and accordingly, the obligor for the Contingent Commissions, was Daniel McLean ("**McLean**") and/or entities which he owned including MCL Companies of Chicago, an Illinois corporation (the "**McLean Entity(ies)**"). Id., see also,, the Affidavits of the Defendants, Farley and Herlihey, attached hereto as exhibits E and F, respectively (collectively, the "**Affidavits**").

10.    The Defendants are all Illinois residents and have their principal place of business in Illinois. See, Affidavits (exhs. E and F).

11.    McLean and the McLean Entities are all Illinois residents and have their principal place of business in Illinois. See, Affidavit of Farley (exh. E).

12.    Upon information and belief, the Debtor is an individual residing in New York.

**C.    The Transactions Relating to the Alleged Transfers At Issue**

13.    As detailed in each of their Affidavits and as is set forth below, the Defendants admit that certain of them had made five different loans to the Debtor and/or to the Debtor Entity(ies) in return for (a) a promissory note evidencing each such loan (the "**Promissory Note(s)**") and (b) a concomitant assignment of the Debtor's and/or the Debtor Entities' right to collect a Contingent Commission from the McLean Entity if a particular real estate transaction successfully closed in the future (the "**Assignment(s)**") (the Promissory Notes and Assignments shall be collectively referred to as the "**Loan Agreement(s)**"):

      a.    A Promissory Note dated July 15, 2003, executed by two Debtor Entities evidencing a loan of $120,000 by Farley, and an Assignment also dated July 15, 2003, executed by the Debtor, the two Debtor Entities, Farley, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to the Farley ("**Loan Agreement No. 1**").

      b.    A Promissory Note dated June 15, 2004, executed by two Debtor Entities evidencing a loan of $65,000 by Herlihey, and an Assignment also dated June 15,

2004, executed by the Debtor, the two Debtor Entities, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to Herlihey (**"Loan Agreement No. 2"**).

c.    A Promissory Note dated November 23, 2005, executed by the Debtor and one Debtor Entity evidencing a loan of $59,000 by Herlihey, and an Assignment also dated November 23, 2005, executed by the Debtor, the Debtor Entity, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to Herlihey (**"Loan Agreement No. 3"**).

d.    A Promissory Note dated May 9, 2006, executed by the Debtor and one Debtor Entity evidencing a loan of $40,000 by Herlihey, and an Assignment also dated May 9, 2005, executed by the Debtor, the Debtor Entity, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to Herlihey (**"Loan Agreement No. 4"**).

e.    A Promissory Note dated June 28, 2006, executed by the Debtor and one Debtor Entity evidencing a loan of $40,000 by Herlihey, and an Assignment also dated June 28, 2006 executed by the Debtor, the Debtor Entity, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to Herlihey (**"Loan Agreement No. 5"**).

See, Affidavits (exh. E and F).

14.    In connection with the Loan Agreements, several guaranties of those obligations were executed the Debtor and/or McLean including, without limitation, those described below (the "**Guaranty(ies)**"):

a.    A Guaranty dated July 15, 2003, executed by the Debtor relating to the Promissory Note under Loan Agreement No. 1.

b.    A Guaranty dated June 15, 2004, executed by the Debtor relating to the Promissory Note under Loan Agreement No. 2.

c.    A Guaranty dated November 23, 2004, executed by the Debtor and McLean relating to the Promissory Note under Loan Agreement No. 3.

d.    A Guaranty dated June 26, 2006, executed by the McLean relating to the Promissory Note under Loan Agreement No. 5.

See, Affidavits (exh. E and F).

15.     The Loan Agreements and Guaranties were negotiated between the respective

Defendant, their counsel (if applicable), McLean, and the Debtor by telephone or written

communications. See, Affidavits (Exhs. E& F).  Accordingly, the Defendants never traveled to

New York to meet with the Debtor, and the Debtor never traveled to Illinois to meet with the

Defendants concerning these agreements.  The Defendants, Farley and Herlihey, signed or

accepted the respective Loan Agreements in Illinois.  Id.

16.     Each of the Loan Agreements and Guaranties provide that (a) Illinois law shall

govern, (b) that, with respect to the Loan Agreements, they are "deemed to have been delivered

and accepted in Illinois", and (c) in the event of a lawsuit, only the forum of courts in Cook

County, Illinois shall apply.  Id.

17.     The Defendants received payment and satisfaction of the obligations represented

by each of the foregoing described Loan Agreements as follows:

    a.    On or about July 29, 2004, Farley received a payment of $203,176 in satisfaction of the obligations under Loan Agreement No. 1, and Herlihey received a payment of $90,000 in satisfaction of the obligations under the Loan Agreement No. 2. Both payments had actually been wired into a bank account belonging to PMD, of which Farley is an employee.

    b.    In or about January 2006, Herlihey received a payment of $71,800 in satisfaction of the obligations under Loan Agreement No. 3.

    c.    In or about August 2006, Herlihey received a payment of $101,000 in satisfaction of the obligations under Loan Agreement Nos. 4 & 5.

See, Affidavits (Exhs. E and F).

18.     Each of the foregoing payments were received by the Defendants in Illinois.

19.     Each of the foregoing payments were made by McLean or a McLean Entity and

related to a Contingent Commission that had then been earned by the Debtor and/or a Debtor

Entity at a closing that had then occurred concerning the real estate referenced in a Loan

Agreement. See, Complaint at para. 44-49, 51-52; Affidavits attached hereto as Exhibits E & F.

      20.      The Defendant, PMD, had no involvement in any of the Alleged Transfers or the

Loan Agreements other than for the fact that it happened to own the bank account into which one

of the payments to the Defendants, Farley and Herlihey, was deposited. See, Affidavit (Exh. E).

Farley is an employee of PMD, however, neither he nor Herlihey own any direct interests in that

entity or otherwise control that entity.

### III.   ARGUMENT

### A.   WITHDRAWAL OF REFERENCE

      28 U.S.C. §1334(a) "grants the district court exclusive jurisdiction over bankruptcy cases.

Subsection (b) grants the district court 'original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or related to cases under title 11.' The district

court may refer its bankruptcy jurisdiction to the bankruptcy court. 28 U.S.C. §157(a). The

United States District Court for the Southern District of New York referred its bankruptcy

jurisdiction by General Order, signed July 10, 1984." In re General Media, Inc., 335 B.R. 66, 72

(Bkrtcy.S.D.N.Y.2005).

      28 U.S.C. §157(d) provides in part: "[t]he district court may withdraw, in whole or in

part, any case or proceeding referred to under this section, on its own motion or on timely motion

of any party, for cause shown." Federal Rule of Bankruptcy Procedure 5011(a) states: "[a]

motion for withdrawal of a case or proceeding shall be heard by a district judge."

      A bankruptcy court is authorized to conduct a jury trial only "if specially designated to

exercise such jurisdiction by the district court and with the express consent of all the parties." 28

U.S.C. §157(e); In re Rickel & Assocs., Inc., 2003 WL 23021972, at *3 (S.D.N.Y. Dec. 24,

2003) (absent express consent of all the parties, the bankruptcy court may not conduct a jury

trial)(a copy of this case is attached hereto as exhibit G and by express reference made a part

hereof).[2] Here, the Defendants have demanded a jury trial and have filed a statement of

Nonconsent to Jury Trial in the Bankruptcy Court.[3]

Here, clearly the Defendants are entitled to a jury trial on the Fraudulent Transfer Counts

of the Complaint. See, Granfinanceria, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2781, 2787

(1989)(Supreme Court held that the Seventh Amendment right to a jury trial applied to a

fraudulent transfer action brought by a bankruptcy trustee). The fact that one of the Other Counts

of the Complaint for an accounting may seek equitable relief and thus, may not entitle one to a

jury trial, does not destroy the Defendants' right to a jury trial in this Adversary Proceeding. See,

Curtis v. Loether, 415 U.S. 189, 196 n. 11 (1974); Germain v. Connecticut National Bank, 988

F.2d 1323, 1329 (2nd Cir. 1993)("In general, if some claims are legal, a party will not be denied a

jury trial just because other claims arising out of the same facts are equitable").

Accordingly, the reference to the Bankruptcy Court must be withdrawn with respect to

this Adversary Proceeding because the Defendants have requested a jury trial and the Bankruptcy

Court cannot try the matter. "Due to the fact that a District Court Judge must eventually preside

---

[2]    The Supreme Court has noted, however, that a party's right to a jury trial may
depend upon whether the party has submitted a claim against the estate. Langenkamp v. Culp,
498 U.S. 42, 111 S.Ct. 330, 331 (1990). But here, the Defendants have not filed a claim in the
Bankruptcy Case and thus, this is not an issue.

[3]    Because 28 U.S.C. § 157(e) requires the consent of all the parties to a jury trial in
bankruptcy matters regardless whether they are core or non-core, it is no longer necessary for the
Court to make a coreness determination, as previously required by In re Orion Pictures Corp., 4
F.3d 1095, 1101 (2d Cir. 1993), which was decided before Section 157(e) was enacted. See, e.g.,
Rickel & Assocs., Inc., 2003 WL 23021972, at *3, n.6 (the absence of consent dooms a jury trial
. . . even if the case were viewed as a core proceeding . . . . Prior to the adoption of section
157(e), the core/non-core distinction was necessarily a threshold issue."); In re Magnesium
Corp., 2004 WL 1161172, at *1 n.1 (S.D.N.Y., May 24, 2004).

over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation." In re Transcon Lines, 121 B.R. 837, 838 (C.D.Cal.1990)(Court withdrew the reference to the bankruptcy court where defendants did not consent to a jury trial before that court).

Here, the Defendants have moved for withdrawal of the reference early in the proceedings and neither the Bankruptcy Court nor the parties have invested any substantial time on this matter, except for the filing of the Complaint and Answer. As such, the interests of efficiency and uniformity of bankruptcy administration will be served by an immediate withdrawal of reference, rather than waiting until trial.

Accordingly, for the foregoing reasons, the reference to the Bankruptcy Court should be withdrawn.

**B.    TRANSFER OF VENUE TO ILLINOIS**

After withdrawing the reference to the Bankruptcy Court, the District Court should then transfer venue of this Adversary Proceeding to the District Court for the Northern District of Illinois, Eastern Division.

"A fraudulent conveyance action brought pursuant to 11 U.S.C. § 544(b) is a core proceeding under 28 U.S.C. § 157(b)(2)(H)." Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 749 (S.D.N.Y. 2004). "Where a party seeks to transfer venue for a core proceeding the applicable statute is 28 U.S.C. § 1412." In re Iridium Operating LLC, 285 B.R. 822, 835 (S.D.N.Y. 2002). "In determining whether to grant a motion for a change of venue under § 1412, courts consider substantially the same factors as for a motion to

transfer under 28 U.S.C. § 1404(a)." <u>Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman</u>, 306 B.R. 746, 749 (S.D.N.Y.2004).

Section 1404(a) allows a district court to transfer a case "[f]or the convenience of the parties and witnesses [or] in the interests of justice to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The decision whether or not to transfer a case is left to the "broad discretion of the district court and [is] determined upon notions of convenience and fairness on a case-by-case basis." <u>In re Bennett Funding Group, Inc.</u>, 259 B.R. 243, 248 (N.D.N.Y.2001)(citations omitted).[4]

In determining whether to grant a motion for a change of venue under §1404(a), courts look to the following factors: "(1) convenience of witnesses; (2) the location of relevant documents and relative ease of access to source of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice based on the totality of circumstances." <u>Bennett Funding</u>, 259 B.R. 243, 249 (N.D.N.Y.2001)(citation omitted). These factors, applied to the instant case, favor transferring venue to Illinois.

---

[4] Section 1412 similarly provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. §1412; Fed. R.Bankr.P. 1014(a). Under section 1412, the court has discretion to transfer venue based on an individualized, case-by-case consideration of convenience and fairness. <u>See</u>, <u>Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman</u>, 306 B.R. 746, 749 (S.D.N.Y. 2004).

**(i)**     **Facts and Issues Relevant to Venue Transfer Analyses**

In assessing the venue transfer factors, it is important to understand some of the legal and

factual issues which will be involved in this Adversary Proceeding, including the following:

a.     Whether the Contingent Commissions Were Property of the Debtor - Among the
requirements which the Trustee must prove under all of the Fraudulent Transfer Counts is
whether the Debtor had an interest in the property (i.e., the Contingent Commissions)
which was transferred to the Defendants. See, §548(a)(1) of Bankruptcy Code ("The
trustee may avoid any transfer... of an interest of the debtor in property"). Under the
applicable case law, a trustee cannot avoid as fraudulent the post-petition earnings of an
individual debtor. See, In re Blatstein, 244 B.R. 290, 298 (Bankr.E.D.Pa. 2000)(Court
held that trustee could not avoid as fraudulent transfers the debtor's post-petition income
because such assets are not property of the estate and are not subject to avoidance by
hypothetical creditors under §544 because such rights did not exist as of the
"commencement of the case").  Here, however, with respect to all of the Contingent
Commissions, the Defendants do not know, and will need to take discovery to determine,
whether the payments that they actually received were commissions earned by the Debtor
or a Debtor Entity, whether those commissions were earned pre-petition or post-petition,
and also whether those payments actually related to the same commissions that were
assigned to them under the Loan Agreements.  For that analyses, the Loan Agreements
will have to be examined to determine which commissions were assigned. Significantly,
those agreements are **governed by Illinois law**.  In addition, discovery will be needed
from McLean **(of Illinois)** who, as the owner of the real estate, the obligor of the
Contingent Commissions, and the payor of the payments received by the Defendants,
should have knowledge about whether the payments made to the Defendants were for
commissions due to the Debtor or a Debtor Entity, whether those commissions were
earned pre or post-petition, and whether they arose from the same assigned Contingent
Commissions which are referenced in the Loan Agreements.

In addition, in determining whether commissions are earned pre or post-petition, it
is dependent upon whether any post-petition services by the debtor were necessary to earn
the commission. See, In re Sloan, 32 B.R. 607, 611 (Bankr.E.D.N.Y. 1983)("Where a
debtor derives a post-petition commission under a pre-petition contract, and such
commissions are dependent upon the continued services of the debtor, they do not
constitute property of the estate"); In re Zahneis, 78 B.R. 504, 505 (Bankr.S.D.OH. 1987).
Here, it is clear that at least three of the five Loan Agreements (nos. 3-5) occurred after
the Petition Date and that at least two of the four real estate closings, and the related
payments to the Defendants from those closings, occurred after the Petition Date.
Accordingly, as stated, it will be necessary to also obtain discovery from both McLean **(of
Illinois)** and the Debtor (of New York) concerning whether those Contingent
Commissions and related payments arose from pre-petition or post-petition services of
the Debtor.

b.    Whether the Debtor received less than reasonably equivalent value - Another important factor that the Trustee must prove under the Fraudulent Transfer Counts is whether the loans the Debtor received from the Defendants were less than reasonably equivalent value as compared to the Contingent Commissions that the Debtor assigned to the Defendants. See, §548(a)(1)(B) of Bankruptcy Code ("The trustee may avoid any transfer.... if the debtor... received less than a reasonably equivalent value in exchange for such transfer or obligation"). Obviously, it will be necessary for the Defendants **(of Illinois)** to be called as witnesses to identify the loans which they gave to the Debtor, as well as the Assignments and the possibly related payments which they received in return.

In addition, in addressing this factor, it will be necessary to look to the terms of the Promissory Notes and Guaranties to determine the validity of the obligations which were satisfied by the payments and/or Assignments that the Defendants allegedly received from the Debtor. The terms of those Promissory Notes and Guaranties are all **governed by Illinois law** and to the extent any issues arise concerning the value of the loans given by the Defendants, then **Illinois law would govern** to assess that issue.

Secondly, when assessing the Contingent Commissions assigned to the Defendants by the Debtor, a Court will have to analyze the value of those  commissions as of the date of the Assignment. Under applicable case law, in determining reasonably equivalent value, the assets transferred must be valued at the time of the transaction rather than through the 20/20 vision of hindsight. See, In re Jumer's Castle Lodge, Inc., 338 B.R. 344, 354 (Bankr.C.D.IL. 2006)("whether reasonably equivalent value has been given is a question of fact that must be evaluated as of the date of the transaction, rather than through the 20/20 vision of hindsight"); In re RML, Inc., 92 F.3d 139, 151 (3rd Cir. 1996). Thus, in order to assess the value of the Contingent Commissions at the time of the Assignments, it will be necessary again to obtain evidence from the only apparent witness to the transaction who could assess whether the real estate transaction at issue was really going to close in the future based upon all of the surrounding circumstances relating to the transaction at the time of the Assignment. That person with this presumed knowledge of the circumstances of the real estate transaction is the owner of the real estate and obligor for the Contingent Commissions, McLean **of Illinois**.

**(ii)**    **The Applicable Factors Favor Transfer of Venue to Illinois**

As is described below, the majority of the nine venue transfer factors support transferring venue of this Adversary Proceeding to Illinois and no factor supports denial of the Motion.  In fact, the Bennett Funding case contains facts virtually identical to this case and, in that decision, the District Court granted the defendants' request to transfer venue from New York to California. Initially, like here, the defendants in Bennett Funding moved to withdraw the reference because

they had requested a jury trial and did not consent to the bankruptcy court hearing the matter. In response, the District Court there withdrew the reference. Id. at 247.

Also, in Bennett Funding, like here, several out-of state (California) defendants were sued by a trustee for fraudulent transfers arising from loans totaling $9.5 million made to the debtors which were secured by the pledging of certain stock allegedly worth $47 million. Thereafter, the debtors defaulted on the loans and the defendants foreclosed upon the stock, taking ownership thereof pursuant to the terms of the promissory notes and security agreements, which were governed by California choice of law and forum selection clauses. The trustee there sought to avoid that transaction as a fraudulent transfer.

By comparison, here, the Trustee seeks to avoid a transaction also based upon loans by the Defendants to the Debtor or his entities under the Promissory Notes in return for the Assignments of the Contingent Commissions. As in Bennett Funding, the loans here were subsequently satisfied by the purported payments arising from those Assignments and now, the Trustee seeks to avoid those Assignments. Also, as in Bennett Funding, the pertinent agreements here (i.e., the Loan Agreements), are governed by the other state's law (i.e., Illinois), have a forum selection clause mandating the other state's (i.e., Illinois) forum, and have a majority of the parties and witnesses located in that other state (i.e., Illinois).

As described below and as in the Bennett Funding decision, nearly all of the factors for venue transfer are met here:

### 1.    Convenience of the Witnesses

"Convenience of both party and non-party 'witnesses is probably the *single most important factor* in the analysis of whether transfer should be granted.'" Bennett Funding, 259 B.R. 243, 249 (N.D.N.Y.2001)(emphasis added) quoting Berman v. Informix Corp., 30

F.Supp.2d 653, 657 (S.D.N.Y.1998)(citations omitted). As stated, here, with the exception of the Debtor, there are at least three other important party and non-party witnesses (Farley, Herlihey, and McLean), all of whom reside and are located in Illinois. Accordingly, since more witnesses are from Illinois than New York, then this factor favors transferring venue. See, Bennett Funding at 249 (Court found this factor favored transferring venue where 9-14 witnesses were from California, while only 7 witnesses were from New York).

### 2.    *Location of Documents*

The relevant documents and sources of proof in this Adversary Proceeding will probably include files and records of the Debtor located in New York as well as files and records of the Defendants and McLean located in Illinois. However, the amount of documents required in this matter are likely insubstantial and not particularly difficult to transfer and accordingly, this factor favors neither party. See, Bennett Funding at 250 (Court found that even though documents may be located in both California and New York, since the documents are not particularly bulky or voluminous, this factor does not favor either party).

### 3.    *Convenience of the Parties*

There are four parties in this matter, the three Defendants and the Trustee. All three of the Defendants reside and are located in Illinois. The Trustee is the only party that does not reside in Illinois, but instead, resides in New York. Accordingly, this factor favors transferring venue to Illinois. See, Bennett Funding at 250 (Court found that where the 12 defendants resided in California and only the plaintiff/trustee resided in New York, this factor favored transferring venue to California).

### 4.    *Locus of Operative Facts*

Since the operative facts concerning the negotiation of the Loan Agreements took place over the phone or by written communication, those facts should not favor either side of the issue. See, Bennett Funding at 250 (Court found this factor did not "militate either in favor or against transfer" because most communications occurred by phone or fax and the closing of the original transaction took place in neither location at issue). Also, while McLean and the Defendants were obviously involved in the real estate closings, the Contingent Commissions, and/or the Loan Agreements and Guaranties from Illinois, the Debtor was presumably involved in these negotiations from New York. As such, these facts do not appear to militate either in favor or against transfer.

### 5.    *Process to Compel Witnesses*

"Under Fed.R.Civ.P. 45(b)(2) a district court may compel an unwilling witness who resides in the court's district or within 100 miles of the courthouse to attend any deposition, hearing, trial, production, or inspection specified in a properly issued subpoena." In re Bennett Funding Group, Inc., 259 B.R. 243, 250 (N.D.N.Y.,2001); See Fed.R.Civ.P. 45(b)(2). "If a subpoena is served on a non-party and it forces the non-party to travel more than 100 miles from where it resides, the court must quash or modify the subpoena." Id.; See Fed.R.Civ.P. 45(c)(3)(A)(ii). "In addition if a subpoena requires a non-party to travel more than 100 miles to attend trial and the non-party is located in the state in which the trial is held, the Court may modify the subpoena to ensure that the non-party is reasonably compensated. Id.; See Fed.R.Civ.P. 45(c)(3)(B)(iii). Applying these principals to the instant case, if the case remains in New York, the parties may have to travel to Illinois to depose McLean and pay for his attendance at a trial, however, if the case is transferred to Illinois, the parties may have to travel

to New York to depose the Debtor and pay for his attendance at a trial. Accordingly, this factor too does not favor or oppose transfer of venue. Id. at 251.

### 6. *Means of the Parties*

As stated above, with the exception of the Trustee, all parties reside in Illinois. A bankruptcy estate is usually composed of limited resources which militates against transferring venue. Id. However, here, and unlike the situation in Bennett Funding, the Trustee has retained the services of its counsel on a contingency fee basis. Accordingly, transferring this Adversary Proceeding to Illinois will therefore not impose a substantial expense upon the bankruptcy estate.

Furthermore, the depositions of the Defendants and the non-party witnesses (i.e. MCL and McLean) will have to be conducted in Illinois regardless of venue. As such, absent quick resolution of this matter, the parties necessarily will have to devote some time in Illinois regardless of venue. Conversely, requiring the three (3) Defendants to defend this matter in New York for the convenience of the single plaintiff involved in this matter, will impose substantial expenses upon the Defendants.[5] Accordingly, this factor also favors transfer of venue to Illinois.

### 7. *Familiarity with Governing Law*

Here, the laws of the state of Illinois will govern the challenged transactions in the Complaint because they pertain to the Loan Agreements which contain an Illinois choice of law provision.

The alleged fraudulent transfers arise out of the Loan Agreements. In addition, as stated, in order to determine whether the Debtor received fair consideration for the alleged fraudulent

---

[5]    It would also be extremely burdensome upon the Defendant, PMD, to have to defend this action since it was not involved in any of the Alleged Transfers other than for the fact that it happened to own the bank account into which one of the payments to the Defendants, Farley and Herlihey, was deposited. Farley is an employee of PMD, however, neither he nor Herlhihey own any direct interests in that entity or otherwise control that entity.

conveyances, the Court will need to look at the Loan Agreements. Each of the Loan Agreements contain a mandatory Illinois choice of law and forum selection provisions which are substantially in the following form:[6]

> This Note has been delivered to Lender and accepted by Lender in the State of Illinois and if delivered or accepted elsewhere shall be deemed to have been delivered and accepted in the State of Illinois. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, the State of Illinois and hereby waives any right to contest jurisdiction or venue. This Note shall be governed by and construed in accordance with the laws of the State of Illinois.

"[C]ourts have routinely enforced similar choice of law provisions even where a party challenges the contract as fraudulent or claims of fraudulent inducement exist." Bennett Funding at 251. Accordingly, as the District Court found in Bennett Funding, which also involved fraudulent transfers arising from loan agreements governed by another state's law, the Northern District of Illinois is more familiar with the governing (i.e. Illinois) law of this case, and this factor favors transfer of venue. Id.

### 8.    *Plaintiff's Choice of Forum*

Each of the Promissory Notes contain a forum selection clause which provide if "there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, the State of Illinois and hereby waives any right to contest jurisdiction or venue." Therefore, the fact that the Trustee has chosen this court as its forum is not to be given any weight in the transfer venue analyses because of the existence of the foregoing mandatory forum selection clause. Id. at 251 (Court gave no weight to the Plaintiff's choice of forum where the promissory notes contained a mandatory choice of forum clause for California).

---

[6]    Even the Guaranties contain similar mandatory Illinois choice of law and forum selection clauses.

### 9.    *Trial Efficiency and Interests of Justice*

The District Court in <u>Bennett Funding</u> found the presence of the "forum selection clauses... ha[d] a large impact 'and figures centrally' in th[e] Court's analysis of whether, in the interests of justice, to transfer the case." <u>Id.</u> at 251 (citations omitted).  The Court also noted that "there is a 'heavy presumption' in favor of enforcing forum selection clauses." <u>Id.</u> (citing <u>Mediterranean Shipping Co. S.A. Geneva v. Pol-Atlantic</u>, 229 F.3d 397, 405 (2d Cir. 2000). Similarly, here there is a "heavy presumption" in favor of enforcing the forum selection clauses of the Loan Agreements.

The <u>Bennett Funding</u> Court noted that courts generally prefer not to transfer a bankruptcy action when the majority of the matters alleged constitute core proceedings under the bankruptcy code because "[t]ransferring a core matter that is not 'inextricably intertwined' with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court." <u>Id.</u>, at 252 (N.D.N.Y.2001)(citations omitted).  However, when "the Court has already withdrawn the reference from the bankruptcy court, the policy behind centralizing core matters in the bankruptcy court is not applicable." <u>Id.</u>  Here again, where the reference must be withdrawn (as it was in <u>Bennett Funding</u>), the policy of centralizing core matters is inapplicable to the Court's analyses about whether to transfer venue. <u>Id.</u>

Finally, as stated, this Adversary Proceeding has not proceeded beyond the filing of the Complaint and Answer.  Thus, there would be no waste of judicial resources or other concern if this Adversary Proceeding were to be transferred to Illinois.

Accordingly, the interests of justice favor transferring venue to Illinois.

**(iii)    Conclusion**

After balancing all of the foregoing factors, six of the nine factors (1,3,6,7,8,9) favor transferring venue, and the remaining three (2,4,5) do not militate either way in the analyses. Indeed, this case contains one more factor than even the court in Bennett Funding found existed which was sufficient to transfer venue in that case under very similar circumstances. Therefore, the venue of this Adversary Proceeding should be transferred to the Northern District of Illinois, Eastern Division.

## IV.    CONCLUSION

For the foregoing reasons, (a) the reference to the Bankruptcy Court should be withdrawn and (b) the venue of this Adversary Proceeding should be transferred to the United States District Court for the Northern District of Illinois, Eastern Division.

WHEREFORE, the Defendants prays for the entry of an order, a proposed form of which is attached hereto, in accordance with the foregoing recommendations, and for such other and further relief as is just.

DATED:        January 29, 2008.            Respectfully submitted,

By: /s/ Brad A. Berish
Brad A. Berish (BB 0340 admitted pro hac vice)
ADELMAN & GETTLEMAN, LTD
53 W. Jackson Boulevard
Suite 1050
Chicago, Illinois 60604
(312) 435-1050
Attorneys for defendants, Brian Farley, Phillip Herlihey and PMD Company (a/k/a G0IING PLACES LLC)

## File a Motion:

<u>08-08203-ash</u> <u>Kittay v. Farley et al</u>

### U.S. Bankruptcy Court

### Southern District of New York

Notice of Electronic Filing

The following transaction was received from Berish, Brad A. entered on 1/29/2008 at 12:02 PM and
filed on 1/29/2008

**Case Name:**        Kittay v. Farley et al
**Case Number:**      <u>08-08203-ash</u>
**Document Number:** <u>7</u>

**Docket Text:**
Motion to Withdraw the Reference *and to Transfer Venue, and Proof of Service* filed by Brad A. Berish
on behalf of Brian Farley, Philip Herlihy, PMD Company. (Attachments: # (1) Exhibit A# (2) Exhibit
B# (3) Exhibit C# (4) Exhibit D# (5) Exhibit E# (6) Exhibit F (Part 1)# (7) Exhibit F (Part 2)# (8)
Exhibit G# (9) Exhibit Draft Order) (Berish, Brad)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\db\Desktop\Farley NOM and Motion to Withdraw the
Reference.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-0]
[7928ab09ded7f703713a4d53b31daadd48fbe391ed36f323c128ef54f441c0262c4d4
7e661563e32a6e3f644d4a73af099d8ba6f56324126df13e132fff1a228]]
**Document description:**Exhibit A
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit A.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-1]
[99abbaa359fb16e29da95afe6558814ff97400602d76ca1756402f33d6b17db37f72d
732848f4481591275d661f8f183142d2a3da64f3b7a349b80d019cee91e]]
**Document description:**Exhibit B
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit B.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-2]
[84ff7f8a938ecf7215abee114af1b0c9558342cacff155689719dc881117a57afa927
6d87bc204da255f542412c8907cd959b7f677a22e0c437862f65faf883e]]
**Document description:**Exhibit C
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit C.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-3]
[9042635160ec42577f3580da078a4252685ecc5671757b66f9045cdc6bfbbc2df8ec8
3d524aa188783c4a1f71a9b1d5d2c1b9efaf9b5c132969bb67c60e0232e]]

**Document description:**Exhibit D
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit D.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-4]
[2db2b9a997e27c7330b746a922bc521162249895242aad94927bdf3b2f9d1b0ea09ba
25a197ee7d121e7648b219249ea3e22f6e0f30acdab9b46a52fac2f5cb1]]
**Document description:**Exhibit E
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit E.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-5]
[2733c429527826b965a2652cbf488915771c71e01dd4fc4d8e84279c34443b96a5ca5
61fd7db0639ace29963275ba9fffb5291baaeafc24ef0552c77b734ff7c]]
**Document description:**Exhibit F (Part 1)
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit F (Part 1).pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-6]
[538bde1bf47841446e229184aecfba75bdbcde8e9df8183f74a9fee39f8121fa029c6
d32c585cc3b1e1c7ff03912e2729504c9d63220a716100dfab514e3db5a]]
**Document description:**Exhibit F (Part 2)
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit F (Part 2).pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-7]
[6c312757575664ca8bfd512e92a632bf32ed1eee704441159f6a342019ca71887bc3d
cc40912305aa5a1019bdb1a9b2e855b8df3e11bfa47b823b8c39a829fe7]]
**Document description:**Exhibit G
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Exhibit G.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-8]
[90a6efda545393c15eda6900b1f6fb73d1e10d3f6bb4a9a81de9b1c9997991bafa08e
9046566dd1283d63cd54a76764ac42029455bbc3523e391a9cc648d2d7b]]
**Document description:**Exhibit Draft Order
**Original filename:**C:\Documents and Settings\db\Desktop\Farley Proposed Order Withdrawing
Reference.pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=1/29/2008] [FileNumber=6449960-9]
[069b41148201f0c4b19735ffa575ad2244930e278d4bceb348baf7e7112da480b0709
ddab6ddb673a2ceee35c863d7bbb27520e2deaf13a33ef2b25820fe9da6]]

**08-08203-ash Notice will be electronically mailed to:**

Brad A. Berish     bberish@ag-ltd.com

**08-08203-ash Notice will not be electronically mailed to:**

Jonathan Bardavid
Storch Amini & Munves, P.C.
2 Grand Central Tower
140 E. 45th Street, 25th Floor
New York, NY 10017

STORCH AMINI & MUNVES, P.C.
140 East 45th Street, 25th Floor
New York, New York 10017
Bijan Amini (BA 3533)
Russell Bogart (RB 0320)
Jonathan Bardavid (JB 0072)
212-490-4100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                          :        Chapter 7
                                                :
DOUGLAS E. PALERMO,                             :        Case No. 05 25081 (ASH)
                                                :
                              Debtor.           :
------------------------------------------------------------ -x
                                                :
 DAVID R. KITTAY, TRUSTEE,                       :        Adv. Pro. No.
                                                :
                        Plaintiff,              :
                                                :
             - against -                        :
                                                :        **COMPLAINT**
                                                :
BRIAN FARLEY, PHILLIP HERLIHY and PMD           :
COMPANY,                                         :
                        Defendants.             :
------------------------------------------------------------ x

        David R. Kittay (the "Trustee" or "Plaintiff"), as Chapter 7 successor Trustee of the

bankruptcy estate of Douglas E. Palermo (the "Debtor"), by his attorneys, Storch Amini &

Munves, P.C., for his complaint against Brian Farley ("Farley"), Phillip Herlihy ("Herlihy"),

PMD Company ("PMD," collectively, with Farley and Herlihy referred to as "PMD Defendants")

alleges as follows:

### Introduction

1.      On October 14, 2005, the Debtor filed a petition seeking relief under Chapter 7 of

EXHIBIT A

#1

Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.    On October 16, 2005, Eric Kurtzman was appointed Chapter 7 trustee of the Debtor's estate.

3.    Mr. Kurtzman subsequently passed away and, on January 23, 2006, David R. Kittay was appointed Chapter 7 successor Trustee.

4.    Plaintiff is the duly qualified and acting Trustee herein.

5.    This is an adversary proceeding for fraudulent conveyance conversion, and the turn over of property of the estate pursuant to Sections 542(a) and (e), 544(b), 544(b)(1), 548(a)(1)(A), 548(a)(1)(B)(i) and (ii)(I) and (ii)(III), and 550 of the Bankruptcy Code and Rule 7001 et seq. of the Federal Rules of Bankruptcy Procedure.

## Jurisdiction and Venue

6.    This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 1134(b) and 157(a) and (b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.

7.    This is a core proceeding under 28 U.S.C. §§ 157(b) (2) (A), (E), (H) and (O) and arises in the Chapter 7 case of the Debtor pending before this Court.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.

## The Parties

9.    The Plaintiff maintains an office at 100 White Plains Road, Tarrytown, New York

2

10591.

10.     Upon information and belief PMD Company is a company formed under the laws of the State of Illinois with a principal place of business located at 1343 North Wells Street, Chicago IL 60610.

11.     Phillip Herlihy is an individual over the age of 18 who, upon information and belief, resides at 430 Carol Place, Pelham New York 10803

12.     Upon information and belief, Brian Farley and Phillip Herlihy are the principals of the PMD Company.

13.     The Debtor is an individual.

## FACTS

14.     Since 1970, the Debtor has worked as a self-employed real estate consultant. The services he provided included identifying real property development sites for clients, procuring financing, and identifying potential purchasers or joint venture partners.

15.     Morris Silver ("Silver") is a certified public accountant who provided accounting services to the Debtor and to certain of the Debtor's businesses. Silver also occasionally loaned money to the Debtor before and after 1990. Silver organized and controlled an entity called Doubet, LLC ("Doubet").

16.     In 1990, Silver commenced three lawsuits against the Debtor in the Supreme Court of the State of New York, Nassau County, seeking to recover unpaid accounting fees and unpaid notes executed by the Debtor. Silver obtained three default judgments against the Debtor in 1990, in the aggregate amount of $1,017,206 ("State Court Judgments"). As of the date of the Debtor's bankruptcy filing, the Debtor owed $2,751,299, including statutory interest, on the State

3

Court judgments. Silver assigned the three State Court Judgments to Doubet.

17.    On March 3, 2006, after the filing date, Doubet commenced an adversary proceeding in the Debtor's bankruptcy case titled, <u>Doubet, LLC v. Douglas E Palermo</u>, Adv. Proc. No. 06-8285A (SDNY Bkrptcy), seeking that the Debtor should be denied a discharge under the Bankruptcy Code, 11 U.S.C. §§ 727(a)(2), (3) and (5). In a July 9, 2007 decision, issued after trial, the Court determined that the discharge should be denied on all three grounds. <u>See</u> the July 9, 2007 Decision annexed hereto as Exhibit A ("The Discharge Decision").

18.    The Discharge Decision found that the Debtor has been insolvent since the time that the State Court Judgments were entered against the Debtor in 1990. Additionally, the Court found that the Debtor "orchestrated complex deals to evade his creditors" and siphoned "off his money to his various shell entities." <u>Id</u>. at 17-19.

## I.    Entities That The Debtor Controlled

19.    N.M. Palermo, Inc. ("N.M. Palermo") was a company organized under the laws of the State of New Jersey on or about December 1927 by the Debtor's grandfather. N.M. Palermo's corporate charter was declared void by the State of New Jersey in or about May 1981.

20.    Beekman Street Advisory Corporation ("Beekman") was formed in or about 1996 and ceased to exist as a corporation in good standing in 1999. The Debtor was Beekman's sole shareholder.

21.    Argus Asset Management, LLC ("Argus") was purportedly formed in 2004 and ceased operations in 2005. The Debtor was the sole shareholder of Argus, which maintained a bank account.

22.    Norfolk Financial, LLC ("Norfolk"), was purportedly formed in 2004 but ceased

4

operations in 2005. Debtor was the sole shareholder of Norfolk, which maintained a bank account.

23.    Butterfield Trust I LLC ("Butterfield Trust") was purportedly formed by David Buchanan as managing member and sole shareholder between 2001 and 2002. The management of Butterfield Trust was subsequently transferred to William Chipman, a friend, accountant and business associate of Debtor.

24.    Brook Financial LLC ("Brook") was organized in or about 2005 by the Debtor. The Debtor was the sole owner of Brook Financial LLC.

25.    Residual Equity Corp. ("Residual") was organized under the laws of Delaware as a corporation in December 2001.

26.    The above mentioned entities collectively shall be referred to as the "Palermo Entities."

27.    Palermo occasionally conducted his business activities under the names of the Palermo entities and funneled money which he earned to or through such entities. The Debtor cannot produce any organizational documents for any of these entities. Upon information and belief, the Palermo entities did not exist as lawful entities, but instead were simply exploited by the Debtor as a 'doing business as' ("d/b/a") the Debtor himself in his business dealings, either for tax purposes or to conceal his assets from his creditors. The Debtor solely controlled each of the Palermo entities and commingled monies among the Palermo entities. Hence, each of the Palermo entities represented an alter ego of the Debtor.

**II.    455 Central Park West Transaction**

28.    The Trustee's claims in this action are based primarily on a series of lending and

5

real estate transactions engineered by the Debtor to avoid his creditors. These transactions, relevant to the instant complaint, are briefly summarized below, and are described in more extensive detail in the Discharge Decision, annexed at Exhibit A, pp 5-8.

29. In 1999, the Debtor collaborated with Columbia University and Bovis Lendlease to bid on a parcel of property located at 455 Central Park West (the "CPW Property").

30. MCL Companies of Chicago ("MCL") submitted the winning bid for the CPW Property and MCL acquired the CPW Property in 1999. MCL created several entities for the purpose of purchasing and developing the property, including 455 CPW, LLC ("455 CPW") which developed the CPW Property into two buildings comprised of residential condominium units.

31. As MCL acquired the CPW Property, the Debtor, based on his relationship with Daniel McLean, president of MCL, introduced Columbia University (with which the Debtor submitted the unsuccessful bid) to MCL so that Columbia University could purchase condominium units at the CPW Property from MCL.

32. Columbia University contracted to purchase 53 condominium units in the 455 Central Park West project from MCL.

33. MCL agreed to pay the Debtor a fee for introducing Columbia University to MCL as the buyer of 53 condominium units (the "455 CPW Closing").

34. On August 28, 2001, Beekman and the Butterfield Trust (two of the Palermo entities) entered into the First Advisory Service Agreement (the "First Agreement") with 455 CPW. Pursuant to the First Agreement, Beekman and Butterfield Trust purported to act as the exclusive financial advisor for 455 CPW in connection with the 455 CPW closing, even though

6

all services were personally performed by the Debtor.

35.    The First Agreement provided that Debtor would receive compensation totaling $1,815,520 (the "First Agreement Fee"). The First Agreement provided that $453,880 of the First Agreement Fee was to be paid to Beekman upon 455 CPW obtaining a construction loan; the remaining $1,361,640 was payable to Butterfield Trust upon the closing of sale of the 53 condominium units from 455 CPW to Columbia University.

36.    The First Agreement also provided for a "Put and Call" option for Columbia University to purchase an additional 24 condominium units from 455 CPW.

37.    McLean negotiated and executed the First Agreement and dealt solely with the Debtor in connection with the First Agreement.

38.    On or about January 29, 2002, a Second Advisory Services Agreement (the "Second Agreement") was executed between 455 CPW and N.M. Palermo. The Second Agreement provided that 455 CPW would pay N.M. Palermo a 1% fee, or $330,000, for arranging a loan to 455 CPW through iStar, a source introduced by Debtor to 455 CPW. The Second Agreement was signed on behalf of N.M. Palermo by the Debtor and was payable when iStar financed the loan to 455 CPW.

39.    Shortly after signing the First Agreement and Second Agreement, the Debtor requested an advance on his commissions from McLean. McLean agreed and authorized $140,000 in advances to the Debtor, personally, in four $35,000 installments which were paid to the Debtor on February 8, March 14, April 23 and June 3, 2002.

40.    On October 28, 2002, N.M. Palermo and 455 CPW entered into an Amended Advisory Services Agreement (the "Amended Agreement") which amended the First Agreement

7

and the Second Agreement. In the Amended Agreement, it was acknowledged that (1) the Debtor already received an advance of $140,000 on his fees, (2) at the loan closing, iStar, the lender, would advance to Debtor the balance of Beekman's one percent commission, $313,880, which iStar could deduct from the loan to 455 CPW, (3) $1,361,640 was still due to Butterfield Trust upon closing of the sale of the condominium to Columbia University, and 4) Columbia University rather than 455 CPW would pay Palermo's balance at closing.

41.    That same day the parties agreed to Debtor's fee arrangement for the "Put and Call" agreement, even though Columbia University never purchased the additional 24 units. The agreement provided for the same approximate amount due the Debtor, including the same $120,000 due from iStar at the impending loan closing and $203,176 from Columbia University out of the purchase price at the 455 CPW closing ("Put and Call Commission"). However, this agreement, which appears to have superseded the Second Agreement, alters the payor as well as the Palermo entity designated as payee.

### III.    Restraining Notices Are Served on the Debtor

42.    In February 2003, Silver served two sets of restraining notices on various parties including MCL and McLean, to facilitate collection of the State Court Judgments from the income due the Debtor under his real estate activities. See Discharge Decision, p. 9.

### IV.    Debtor Arranges to Circumvent the Restraining Notices

43.    Subsequent to learning of the first restraining notice, the Debtor arranged for several cash advances against the monies due to him under the First, Second and Amended Agreements from persons or entities not covered by the restraining notices. See Discharge Decision, pp 10-11. In exchange, the Debtor assigned to those persons and entities money due

8

from the 455 Central Park West transaction.

44.    These transactions, relevant to the instant complaint, engineered to avoid the restraining notices included:

    a)  on July 15, 2003, the Debtor arranged for a $120,000 cash advance from Brian Farley, on behalf of PMD. The Debtor assigned to PMD the right to collect the $203,176 Put and Call Commission at the 455 CPW Closing;

    b)  on June 15, 2004, the Debtor arranged a cash advance of an unidentified sum from Phillip Herlihy in exchange for an assignment to PMD of $90,000 of Debtor's commission at the 455 CPW Closing.

45.    On July 29, 2004, at the 455 CPW Closing, Columbia closed on its purchase of the 53 units from 455 CPW. In 2002, the Debtor already had received the $140,000 advance from McLean and the $313,880 advance from iStar. As of the time of the 455 Central Park West Closing, the Debtor still was entitled to $1,361,640, as well as the $203,176 "Put and Call" commission, totaling $1,564,816.

46.    On July 29, 2004, $293,176 of the Debtor's commission of $1,564,816 was distributed to PMD as per its two assignments.

## V.    River East Transaction

47.    River East is a shopping center development in Chicago owned by McLean through one of his MCL entities.

48.    In 2005, the Debtor found a buyer for the retail space in River East. Pursuant to a letter agreement between the MCL Companies and Norfolk, dated August 29, 2005, the Debtor was entitled to a $437,000 commission for this introduction ("River East Fee"). The sale relating

9

to River East closed on January 17, 2006, several months after the Debtor filed for bankruptcy.
The Debtor did not report in his bankruptcy schedule that he was entitled to the $437,000 River
East Fee. At the time of closing, 455 CPW paid a $340,200 fee to Norfolk, as the Debtor had
assigned $96,800 of the fee to other parties.

49.    The Debtor arranged for McLean to distribute the River East Fee, in relevant part,
as follows: McLean wired $71,800 to Herlihy in repayment of a $59,000 loan.

## VI.    South Boston Development Project

50.    Prior to the summer of 2005, the Debtor owned 100% of Brook Financial, which
fully owned South Boston Housing, Enhancement LLC ("South Boston"). South Boston is a
company incorporated by the Debtor to develop a housing project in South Boston, MA (the
"South Boston Project").

51.    The Debtor introduced McLean to XE Capital to form a $50,000,000 fund for real
estate investments, including the South Boston Project. In August 2006, The Debtor received
approximately $500,000 for making this introduction.

52.    Out of this $500,000, the Debtor, in relevant part, assigned $104,000 to Herlihy
for repayment of an undisclosed cash advance.

## VII.    The Debtor's Unlawful Transfers

53.    In sum, the Debtor engaged in a pattern of activities designed to hinder his
creditors, as described above, consisting of "taking cash advances on his future earnings,
assigning his payments to those lenders in repayment, transferring his property between accounts
and squandering the balances." See Discharge Decision, at p. 17. Since the entry of the State
Court Judgments in 1990, the Debtor was personally insolvent, and siphoned off his money to his

10

various shell entities.

54.    The Debtor improperly transferred to the PMD Defendants (PMD, Farley and Herlihy) $293,176, consisting of i) assigning to PMD the right to collect the $203,176 Put and Call Commission at the 455 CPW Closing and ii) the assignment of $90,000 to PMD of the Debtor's Commission at the 455 CPW Closing ("the PMD Transfers").

55.    The Debtor improperly conveyed to Herlihy: i) $71,800 from the River East Fee and ii) an assignment of $104,000 relating to the introduction of XE Capital to McLean ("the Herlihy Transfers").

## VIII.    The Initial Adversary Proceeding

56.    On October 12, 2007, the Trustee filed an adversary proceeding for turnover, conversion and fraudulent conveyance against the debtor, Daniel McLean, MCL Companies of Chicago, PMD Corporation, Brian Farley, Phillip Herlihy, Joseph Korff, John Livingston and SB Housing, LLC.  The case was captioned Kittay v. Palermo, et. al. Adv. Proc. No. 07-8310 (ASH) (herein after the "Initial Adversary Proceeding").

57.    As the fraudulent conveyances occurred via a series of related and overlapping real estate transactions the Trustee included all of the defendants in the Initial Adversary Proceeding.

58.    On November 27, 2007 the parties, except for Joseph Korff and John Livingston, appeared for an initial conference before Judge Hardin.

59.    At the conference Judge Hardin indicated that he was concerned with having one adversary proceeding involving multiple defendants, some of whom may have not been involved in some of the fraudulent conveyances.

11

60.     Plaintiff, through counsel, maintained that the transactions in questions were related and that the facts sufficiently overlapped to warrant one adversary proceeding.

61.     After a lengthy discussion with all parties who appeared in the action, Judge Hardin adjourned the conference until December 11, 2007, and ordered the parties to confer to discuss the issue of separating the Initial Adversary Proceeding, into separate adversary proceedings.

62.     The parties thereafter met and conferred about this issue.  Although plaintiff maintains that it was appropriate to bring one adversary proceeding against all the defendants, in the interests of judicial economy, the plaintiff agreed to divide the Initial Adversary Proceeding into multiple adversary proceedings.

63.     By agreement of the parties, the plaintiff agreed to amend the complaint in the Initial Adversary Proceeding and proceed solely against the debtor in that proceeding.

64.     The parties further agreed to the plaintiff filing separate adversary proceedings against each defendant or group of related defendants, provided however, that discovery would be conducted jointly for the related adversary proceedings.

65.     On December 11, 2007, a conference was held before Judge Hardin, on the initial adversary proceeding.  The parties set forth, and the court accepted, their agreement, concerning how to separate the initial adversary proceeding.

66.     The plaintiff was provided until January 7, 2007 to amend the initial adversary proceeding and to file the additional separate adversary proceedings.

67.     Judge Hardin held that for purposes of the statute of limitations, the date of filing for the additional adversary proceedings would relate back to the date the Initial Adversary

12

Proceeding was filed.

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
#### (Fraudulent Conveyance Pursuant to 11 U.S.C . §§544(b) and 550 and New York Debtor and Creditor Law §273)

68.    Plaintiff repeats and realleges each and every allegation set forth above.

69.    The PMD Transfers and Herlihy Transfers made by the Debtor to the PMD Defendants and Herlihy respectively were made at a time when the Debtor was insolvent or in the zone of insolvency.  The PMD Transfers and Herlihy Transfers were made without fair consideration and constitute fraudulent conveyances as to creditors.

70.    The Trustee is asserting the rights of unsecured creditors whose unsecured claims date back to the date of the initial fraudulent conveyance.  The Trustee is also asserting the rights of open trade account creditors who extended credit to the Debtor at the time of the fraudulent conveyances and who continued to do so until the time of the bankruptcy.

71.    By reason of the foregoing, such transfers should be avoided and Plaintiff is entitled to set aside and recover the value of such transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

### SECOND CLAIM FOR RELIEF
#### (Fraudulent Conveyance Pursuant to 11 U.S.C. §§ 544(b) and 550 and New York Debtor and Creditor Law §274)

72.    Plaintiff repeats and realleges each and every allegation contained above.

73.    The PMD Transfers and the Herlihy Transfers each caused the Debtor to become insolvent.

74.    The PMD Transfers and the Herlihy Transfers were made without fair

consideration and constitute fraudulent conveyances as to creditors.

75.    The Trustee is asserting the rights of unsecured creditors whose unsecured claims date back to the date of the initial fraudulent conveyance.

76.    The Trustee is also asserting the rights of open trade account creditors who extended credit to the Debtor at the time of the fraudulent conveyances and who continued to do so until the time of the bankruptcy.

77.    By reason of the foregoing, the forgoing transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176, plus interest.

### THIRD CLAIM FOR RELIEF
**(Fraudulent Conveyance Pursuant to 11 U.S.C. §§ 544(b)
And 550 and New York Debtor and Creditor Law §274)**

78.    Plaintiff repeats and realleges each and every allegation contained above.

79.    The aforementioned PMD Transfers and Herlihy Transfers from Debtor to the PMD Defendants and Herlihy, respectively were made while the Debtor was engaged in a business for which the property remaining in its hands after the transfers was unreasonably small capital.

80.    The PMD Transfers and the Herlihy Transfers were made without fair consideration and constitute fraudulent conveyances as to creditors at that time and as to other persons who became creditors during the continuance of the business.

81.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176, plus interest.

14

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to 11 U.S.C. §§ 544(b)
### and 550 and New York Debtor and Creditor Law §275)

82.  Plaintiff repeats and realleges each and every allegation contained above.

83.  The PMD Transfers and the Herlihy Transfers were made while the Debtor

intended to, or believed that it would, incur debts beyond its ability to pay as such debts matured.

84.  The PMD Transfers and the Herlihy Transfers were made without fair

consideration and constitute fraudulent conveyances as to both then present and future creditors.

85.  By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should

be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount

to be determined at trial, which is not less than $397,176, plus interest.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to 11 U.S.C. §§544(b)
### and 550 and New York Debtor and Creditor Law §276)

86.  Plaintiff repeats and realleges each and every allegation contained above.

87.  The PMD Transfers and the Herlihy Transfers were made with actual intent to

hinder, delay or defraud either present or future creditors.

88.  By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should

be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount

to be determined at trial, which is not less than $397,176 plus interest.

## SIXTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO
### 11 U.S.C. §§ 548(a)(1)(A) AND 550)

89.  Plaintiff repeats and realleges each and every allegation above.

90.  The PMD Transfers and the Herlihy Transfers were made with actual intent to

15

hinder, delay or defraud an entity to which the Debtor was indebted or to which the Debtor became indebted after the date of the transfer of the Equity.

91.    The PMD Transfers and the Herlihy Transfers constitute fraudulent conveyances as to the Estate's or Debtor's creditors.

92.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

### SEVENTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO
### 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(I) AND 550)

93.    Plaintiff repeats and realleges each and every allegation above.

94.    The Debtor received less than a reasonably equivalent value in exchange for the PMD Transfers and the Herlihy Transfers.

95.    The Debtor was insolvent on the date of the PMD Transfers and the Herlihy Transfers or became insolvent as a result of the PMD Transfers and the Herlihy Transfers.

96.    The PMD Transfers and the Herlihy Transfers constitute fraudulent conveyances as to the estate's or Debtor's creditors.

97.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

### EIGHTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO
### 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(III) AND 550)

98.    Plaintiff repeats and realleges each and every allegation above.

16

99.    The Debtor received less than a reasonably equivalent value in exchange for the PMD Transfers and the Herlihy Transfers.

100.    At the time of the PMD Transfers and the Herlihy Transfers the Debtor intended to incur or believed that he would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

101.    The PMD Transfers and the Herlihy Transfers constitute fraudulent conveyances as to the estate's or Debtor's creditors.

102.    By reason of the foregoing, PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

## NINTH CLAIM FOR RELIEF
### (Turnover Pursuant to 11 U.S.C. §542)

103.    Plaintiff repeats and realleges each and every allegation above.

104.    The funds transferred to the PMD Defendants and Herlihy via the PMD Transfers and the Herlihy Transfers, respectively constitute Property of the Estate of the Debtor that have benefit and value to the Debtor's bankruptcy estate.

105.    The PMD Defendants and Herlihy remain in possession and control of the Property of the Debtor's Estate, i.e., the proceeds of the PMD Transfers, and the Herlihy Transfers respectively.

106.    The PMD Defendants and Herlihy's retention of the funds constituting property of the Estate is improper.

107.    Based on the foregoing, the Court should compel the PMD Defendants and Herlihy to turn over the funds constituting the property of the Estate of the Debtor, and any other

17

monies the Trustee determines through discovery are owed to the Estate, to the Trustee.

## TENTH CLAIM FOR RELIEF
### (Accounting)

108.    Plaintiff repeats and realleges each and every allegation contained above.

109.    The PMD Defendants and Herlihy have profited from the PMD Transfers and the Herlihy Transfers, respectively for which no consideration or inadequate consideration was given to the Debtor.

110.    By reason of the foregoing, the Trustee is entitled to an accounting of all transfers from the Debtor to the PMD Defendants and Herlihy from January 1999 through the present and an accounting of the reasons for each transfer.

## ELEVENTH CLAIM FOR RELIEF
### (POST-PETITION TRANSFER PURSUANT TO 11 U.S.C. §§ 549 AND 550) AGAINST HERLIHY

111.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

112.    McLean distributed the River East fee post-petition, in relevant part, by i) wiring $71,800 to Herlihy ("River East Post-Petition Transfer").

113.    The Debtor also received post-petition $500,000 for introducing McLean to XE Capital, and out of this introduction fee, in relevant part, assigned $104,000 to Herlihy ("XE Capital Post-Petition Transfer").

114.    The River East Post-Petition Transfer and the XE Capital Post-Petition Transfer to Herlihy constituted property of the Debtor's bankruptcy estate.

115.    The River East Post-Petition Transfer and the XE Capital Post-Petition Transfer to Herlihy occurred after the commencement of the Debtor's bankruptcy case.

18

116.   The River East Post-Petition Transfer and the XE Capital Post-Petition Transfer to Herlihy were not authorized by the Bankruptcy Code or Court.

117.   By reason of the foregoing, the River East Post-petition transfer and the XE Capital post-petition transfer to Herlihy must be avoided and Plaintiff is entitled to recover from Herlihy, an amount to be determined at trial, which amount is not less than $175,800 plus interest.

WHEREFORE, Plaintiff respectfully requests entry of judgment against Defendants: (i) on the First through Eighth Claims for Relief, voiding the PMD Transfers and Herlihy Transfers and for damages on behalf of the Debtor in an amount to be determined at trial, which is not less than $397,176, as well as any additional amounts that may be revealed in discovery, plus interest; directing that a money judgment be entered for that amount, and attaching the assets of all Defendants to prevent transfers therefrom in the foregoing amounts; (ii) on the Ninth Claim for Relief directing the PMD Defendants and Herlihy to turn over the funds constituting the property of the Estate of the Debtor, and any other monies the Trustee determines through discovery are owed to the Estate, to the Trustee; (iii) on the Tenth Claim for Relief directing an accounting of all transfers from the Debtor to the PMD Defendants and Herlihy from January 1999 through the present and an accounting of the reasons for each transfer; (iv) on the Eleventh Claim for Relief voiding the River East Post-Petition Transfer and the XE Capital Post-Petition Transfer and for damages on behalf of the Debtor in an amount to be determined at trial, which amount is not less

19

than $175,800 plus interest and (v) granting the Trustee such other relief as is just and proper.


Dated: New York, New York
        January 7, 2008


                              STORCH AMINI & MUNVES, P.C.


                              By: _____
                                  Bijan Amini (BA 3533)
                                  Russell Bogart (RB 0302)
                                  Jonathan Bardavid (JB 0072)
                              140 East 45th Street, 25th Floor
                              New York, New York 10017
                              (212) 490-4100
                              Attorneys for Plaintiff

Brad A. Berish (BB 0340 admitted
    pro hac vice)
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd.
Suite 1050
Chicago, IL 60604
(312) 435-1050 (ph)
bberish@ag-ltd.com

[No hearing required]

Attorneys for defendants,
Brian Farley, Philip Herlihey and PMD Company
(a/k/a G01ING PLACES LLC)

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DOUGLAS E. PALERMO,<br>       Debtor. | Case No. 05-25081 (ASH)<br>Chapter 7 |
| DAVID R. KITTAY, TRUSTEE,<br><br>       Plaintiff,<br>    vs.<br><br>BRIAN FARLEY, PHILIP HERLIHY, and PMD<br>COMPANY,<br><br>       Defendants. | Adv. Pro. No. 08-8203 |

### ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT
### (Jury Trial Demanded)

NOW Comes Brian Farley ("**Farley**"), Philip Herlihey ("**Herlihey**"), and PMD Company

(a/k/a G01NG Places LLC) ("**PMD Company**"), defendants herein (collectively, the

"**Defendants**"), by and through their attorneys, Adelman & Gettleman, Ltd., for their Answer

and Affirmative Defenses to Complaint, and state as follows:

### Introduction

77526.4

EXHIBIT B

#4

1.     On October 14, 2005, the Debtor filed a petition seeking relief under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

ANSWER:    The Defendants admit the allegations of paragraph 1 of the Complaint.

2.     On October 16, 2005, Eric Kurtzman was appointed Chapter 7 trustee of the Debtor's estate.

ANSWER:    The Defendants admit the allegations of paragraph 2 of the Complaint.

3.     Mr. Kurtzman subsequently passed away and, on January 23, 2006, David R. Kittay was appointed Chapter 7 successor Trustee.

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 3, however, the Defendants admit that David Kittay is the Chapter 7 Trustee.

4.     Plaintiff is the duly qualified and acting Trustee herein.

ANSWER:    The Defendants admit the allegations of paragraph 4 of the Complaint.

5.     This is an adversary proceeding for fraudulent conveyance conversion, and the turn over of property of the estate pursuant to Sections 542(a) and (e), 544(b), 544(b)(1), 548(a)(1)(A), 548(a)(1)(B)(i) and (ii)(I) and (ii)(III), and 550 of the Bankruptcy Code and Rule 7001 et seq. of the Federal Rules of Bankruptcy Procedure.

ANSWER:    The allegations of paragraph 5 call for a legal conclusion to which no response is necessary, however, to the extent that a response is necessary, Defendants deny the allegations of paragraph 5 of the Complaint concerning the relief sought herein against the Defendants.

### Jurisdiction and Venue

6.     This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 1134(b) and 157(a) and (b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.

ANSWER:    The allegations of paragraph 6 of the Complaint call for a legal conclusion

to which no response is necessary.

7.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O) and arises in the Chapter 7 case of the Debtor pending before this Court.

ANSWER:    The allegations of paragraph 7 of the Complaint call for a legal conclusion

to which no response is necessary.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.

ANSWER:    The allegations of paragraph 8 of the Complaint call for a legal conclusion

to which no response is necessary, however, to the extent that a response is necessary, the

Defendants deny that this district is the appropriate venue under the circumstances.

## The Parties

9.      The Plaintiff maintains an office at 100 White Plains Road, Tarrytown, New York 10591.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 9, and therefore deny the same.

10.      Upon information and belief PMD Company is a company formed under the laws of the State of Illinois with a principal pace of business located at 1343 North Wells Street, Chicago, IL 60610.

ANSWER:    The Defendants admit that PMD Company is the d/b/a for G01NG

PLACES LLC, an Illinois limited liability company, and that its principal place of business is

1343 North Wells Street, Chicago, IL 60610, however, the Defendants deny the remaining

allegations of paragraph 10 of the Complaint.

11.      Phillip Herlihy is an individual over the age of 18 who, upon information and belief, resides at 430 Carol Place, Pelham New York  10803.

ANSWER:    The Defendants admit that Herlihey is an individual over the age of 18,

however, they deny that he resides in New York.

12.    Upon information and belief, Brian Farley and Phillip Herlihy are the principals of the PMD Company.

ANSWER:    The Defendants admit that Farley is an employee of PMD Company,

however, they deny the remaining allegations of paragraph 12 of the Complaint.

13.    The Debtor is an individual.

ANSWER:    The Defendants admit the allegations of paragraph 13 of the Complaint.

## FACTS

14.    Since 1970, the Debtor has worked as a self-employed real estate consultant. The services he provided included identifying real property development sites for clients, procuring financing, and identifying potential purchasers or joint venture partners.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 14, and therefore deny the same.

15.    Morris Silver ("Silver") is a certified public accountant who provided accounting services to the Debtor and to certain of the Debtor's businesses. Silver also occasionally loaned money to the Debtor before and after 1990. Silver organized and controlled an entity called Doubet, LLC ("Doubet").

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 15, and therefore deny the same.

16.    In 1990, Silver commenced three lawsuits against the Debtor in the Supreme Court of the State of New York, Nassau County, seeking to recover unpaid accounting fees and unpaid notes executed by the Debtor. Silver obtained three default judgments against the Debtor in 1990, in the aggregate amount of $1,017,206 ("State Court Judgments"). As of the date of the Debtor's bankruptcy filing, the Debtor owed $2,751,299, including statutory interest, on the State Court judgments. Silver assigned the three State Court Judgments to Doubet.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 16, and therefore deny the same.

17.    On March 3, 2006, after the filing date, Doubet commenced an adversary proceeding in the Debtor's bankruptcy case titled, <u>Doubet, LLC v. Douglas E. Palermo</u>, Adv. Proc. No. 06-8285A (SDNY Bkrptcy), seeking that the Debtor should be denied a discharge under the Bankruptcy Code, 11 U.S.C. §§ 727(a)(2), (3) and (5). In a July 9, 2007 decision, issued after trial, the Court determined that the discharge should be denied on all three grounds.

See the July 9, 2007 Decision annexed hereto as Exhibit A ("The Discharge Decision").

     ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 17, and therefore deny the same.

     18.    The Discharge Decision found that the Debtor has been insolvent since the time
that the State Court Judgments were entered against the Debtor in 1990. Additionally, the Court
found that the Debtor "orchestrated complex deals to evade his creditors" and siphoned "off his
money to his various shell entities." Id. at 17-19.

     ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 18, and therefore deny the same.

**I.   Entities That The Debtor Controlled**

     19.    N.M. Palermo, Inc. ("N.M. Palermo") was a company organized under the laws of
the State of New Jersey on or about December 1927 by the Debtor's grandfather. N.M.
Palermo's corporate charter was declared void by the State of New Jersey in or about May 1981.

     ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 19, and therefore deny the same.

     20.    Beekman Street Advisory Corporation ("Beekman") was formed in or about 1996
and ceased to exist as a corporation in good standing in 1999. The Debtor was Beekman's sole
shareholder.

     ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 20, and therefore deny the same.

     21.    Argus Asset Management, LLC ("Argus") was purportedly formed in 2004 and
ceased operations in 2005. The Debtor was the sole shareholder of Argus, which maintained a
bank account.

     ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 21, and therefore deny the same.

     22.    Norfolk Financial, LLC ("Norfolk"), was purportedly formed in 2004 but ceased
operations in 2005. Debtor was the sole shareholder of Norfolk, which maintained a bank
account.

     ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 22, and therefore deny the same.

23.    Butterfield Trust I LLC ("Butterfield Trust") was purportedly formed by David Buchanan as managing member and sole shareholder between 2001 and 2002. The management of Butterfield Trust was subsequently transferred to William Chipman, a friend, accountant and business associate of Debtor.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 23, and therefore deny the same.

24.    Brook Financial LLC ("Brook") was organized in or about 2005 by the Debtor. The Debtor was the sole owner of Brook Financial LLC.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 24, and therefore deny the same.

25.    Residual Equity Corp. ("Residual") was organized under the laws of Delaware as a corporation in December 2001.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 25, and therefore deny the same.

26.    The above mentioned entities collectively shall be referred to as the "Palermo Entities."

ANSWER:    The allegations of paragraph 26 fail to allege any facts which require a

response.

27.    Palermo occasionally conducted his business activities under the names of the Palermo entities and funneled money which he earned to or through such entities. The Debtor cannot produce any organizational documents for any of these entities. Upon information and belief, the Palermo entities did not exist as lawful entities, but instead were simply exploited by the Debtor as a 'doing business as' ("d/b/a") the Debtor himself in his business dealings, either for tax purposes or to conceal his assets from his creditors. The Debtor solely controlled each of the Palermo entities and commingled monies among the Palermo entities. Hence, each of the Palermo entities represented an alter ego of the Debtor.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 27, and therefore deny the same.

## II.    455 Central Park West Transaction

28.    The Trustee's claims in this action are based primarily on a series of lending and real estate transactions engineered by the Debtor to avoid his creditors. These transactions, relevant to the instant complaint, are briefly summarized below, and are described in more extensive detail in the Discharge Decision, annexed as Exhibit A, pp. 5-8.

ANSWER:    The allegations of paragraph 26 fail to allege any facts which require a response, however, to the extent that a response is necessary, then the Defendants deny the allegations of the first sentence of paragraph 28 and further deny the relief sought in this Complaint.

29.    In 1999, the Debtor collaborated with Columbia University and Bovis Lendlease to bid on a parcel of property located at 455 Central Park West (the "CPW Property").

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 29, and therefore deny the same.

30.    MCL Companies of Chicago ("MLC") submitted the winning bid for the CPW Property and MCL acquired the CPW Property in 1999. MCL created several entities for the purpose of purchasing and developing the property, including 455 CPW, LLC ("455 CPW") which developed the CPW Property into two buildings comprised of residential condominium units.

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 30, and therefore deny the same.

31.    As MCL acquired the CPW Property, the Debtor, based on his relationship with Daniel McLean, president of MCL, introduced Columbia University (with which the Debtor submitted the unsuccessful bid) to MCL so that Columbia University could purchase condominium units at the CPW Property from MCL.

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 31, and therefore deny the same.

32.    Columbia University contracted to purchase 53 condominium units in the 455 Central Park West project from MCL.

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 32, and therefore deny the same.

33.    MCL agreed to pay the Debtor a fee for introducing Columbia University to MCL as the buyer of 53 condominium units (the "455 CPW Closing").

ANSWER:    Upon information and belief, the Defendants believe that 455 Central Park

West, L.L.C. ("455 CPW LLC"), had agreed to pay contingent commission fees to certain

entities that the Debtor was related to in some manner, in connection with, among other things,

the purchase of 53 condominium units by Columbia University from 455 CPW LLC relating to a

certain purchase agreement, provided however, the Defendants are without sufficient information

or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph

33, and therefore deny the same.

34.    On August 28, 2001, Beekman and the Butterfield Trust (two of the Palermo entities) entered into the First Advisory Service Agreement (the "First Agreement") with 455 CPW. Pursuant to the First Agreement, Beekman and Butterfield Trust purported to act as the exclusive financial advisor for 455 CPW in connection with the 455 CPW closing, even though all services were personally performed by the Debtor.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 34, and therefore deny the same.

35.    The First Agreement provided that Debtor would receive compensation totaling $1,815,520 (the "First Agreement Fee"). The First Agreement provided that $453,880 of the First Agreement Fee was to be paid to Beekman upon 455 CPW obtaining a construction loan; the remaining $1,361,640 was payable to Butterfield Trust upon the closing of sale of the 53 condominium units from 455 CPW to Columbia University.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 35, and therefore deny the same.

36.    The First Agreement also provided for a "Put and Call" option for Columbia University to purchase an additional 24 condominium units from 455 CPW.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 36, and therefore deny the same.

37.    McLean negotiated and executed the First Agreement and dealt solely with the Debtor in connection with the First Agreement.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 37, and therefore deny the same.

38.    On or about January 29, 2002, a Second Advisory Services Agreement (the "Second Agreement") was executed between 455 CPW and N.M. Palermo. The Second Agreement provided that 455 CPW would pay N.M. Palermo a 1% fee, or $330,000, for arranging a loan to 455 CPW through iStar, a source introduced by Debtor to 455 CPW. The Second Agreement was signed on behalf of N.M. Palermo by the Debtor and was payable when iStar financed the loan to 455 CPW.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 38, and therefore deny the same.

39.    Shortly after signing the First Agreement and Second Agreement, the Debtor requested an advance on his commissions from McLean. McLean agreed and authorized $140,000 in advances to the Debtor, personally, in four $35,000 installments which were paid to the Debtor on February 8, March 14, April 23 and June 3, 2002.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 39, and therefore deny the same.

40.    On October 28, 2002, N.M. Palermo and 455 CPW entered into an Amended Advisory Services Agreement (the "Amended Agreement") which amended the First Agreement and the Second Agreement. In the Amended Agreement, it was acknowledged that (1) the Debtor already received an advance of $140,000 on his fees, (2) at the loan closing, iStar, the lender, would advance to Debtor the balance of Beekman's one percent commission, $313,880, which iStar could deduct from the loan to 455 CPW, (3) $1,361,640 was still due to Butterfield Trust upon closing of the sale of the condominium to Columbia University, and (4) Columbia University rather than 455 CPW would pay Palermo's balance at closing.

ANSWER:    Upon information and belief, the Defendants believe that N.M. Palermo,

455 CPW LLC, and other parties entered into two different Amended Agreements dated October

28, 2002, which agreements speak for themselves and to the extent that the allegations of

paragraph 40 conflict with the terms of those agreements, then the Defendants are without

sufficient information or knowledge to form a belief as to the truth of such allegations, and

therefore deny the same.

41.    That same day the parties agreed to Debtor's fee arrangement for the "Put and Call" agreement, even though Columbia University never purchased the additional 24 units. The agreement provided for the same approximate amount due the Debtor, including the same $120,000 due from iStar at the impending loan closing and $203,176 from Columbia University out of the purchase price at the 455 CPW closing ("Put and Call Commission"). However, this agreement, which appears to have superseded the Second Agreement, alters the payor as well as the Palermo entity designated as payee.

ANSWER:    The Defendants incorporate their answer to paragraph 40 above as their answer hereto, and further state that they are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 41, and therefore deny the same.

### III.    Restraining Notices Are Served on the Debtor

42.    In February 2003, Silver served two sets of restraining notices on various parties including the MCL and McLean, to facilitate collection of the State Court Judgments from the income due the Debtor under his real estate activities. See Discharge Decision, p. 9.

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 42, and therefore deny the same.

### IV.    Debtor Arranges to Circumvent the Restraining Notices

43.    Subsequent to learning on the first restraining notice, the Debtor arranged for several cash advances against the monies due to him under the First, Second and Amended Agreements from persons or entities not covered by the restraining notices. See Discharge Decision, pp 10-11. In exchange, the Debtor assigned to those persons and entities money due from the 455 Central Park West transaction.

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 43, and therefore deny the same.

44.    These transactions, relevant to the instant complaint, engineered to avoid the restraining notices included:

a)    On July 15, 2003, the Debtor arranged for a $120,000 cash advance from Brian Farley, on behalf of PMD. The Debtor assigned to PMD the right to collect the $203,176 Put and Call Commission at the 455 CPW Closing;

b)    On June 15, 2004, the Debtor arranged a cash advance of an unidentified

sum from Phillip Herlihy in exchange for an assignment to PMD of $90,000 of
Debtor's commission at the 455 CPW Closing.

ANSWER:    The Defendants admit that (a) pursuant to the terms of promissory notes,

Farley loaned $120,000 to Beekman and N.M. Palermo on or about July 15, 2003, and Herlihey

loaned Beekman, N.M. Palermo, and Butterfield Trust $65,000 on or about June 15, 2004, (b)

that the Debtor had requested the loans, and (c) that as a condition to, as part of, and

commensurate with, each respective promissory note, each of Farley and Herlihey received

written assignments, respectively, of certain contingent commissions that may be due from 455

CPW LLC in the future to the Debtor and/or certain Palermo Entities as specified therein;

however, the Defendants deny the remaining allegations of paragraph 44 of the Complaint.

45.    On July 29, 2004, at the 455 CPW Closing, Columbia closed on its purchase of
the 53 units from 455 CPW. In 2002, the Debtor already had received the $140,000 advance
from McLean and the $313,880 advance from iStar. As of the time of the 455 Central Park West
Closing, the Debtor still was entitled to $1,361,640, as well as the $203,176 "Put and Call"
commission, totaling $1,564,816.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 45, and therefore deny the same.

46.    On July 29, 2004, $293,176 of the Debtor's commission of $1,564,816 was
distributed to PMD as per its two assignments.

ANSWER:    Upon information and belief, the Defendants admit that $293,176 was

distributed to PMD Company's bank account on or about July 29, 2004, in compliance with and

in satisfaction of, the assignments to, and for the benefit of, Farley (for $203,276) and Herlihey

(for $90,000) under the assignment agreements referenced in their answer to paragraph 44 of the

Complaint, however, the Defendants are without sufficient information or knowledge to form a

belief as to the truth of the remaining allegations contained in paragraph 46, and therefore deny

the same.

## V.   Riverside Estate Transaction

47.   River East is a shopping center development in Chicago owned by McLean through one of his MCL entities.

ANSWER:   The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 47, and therefore deny the same.

48.   In 2005, the Debtor found a buyer for the retail space in River East. Pursuant to a letter agreement between the MCL Companies and Norfolk, dated August 29, 2005, the Debtor was entitled to a $437,000 commission for this introduction ("River East Fee"). The sale relating to River East closed on January 17, 2006, several months after the Debtor filed for bankruptcy. The Debtor did not report in his bankruptcy schedule that he was entitled to the $437,000 River East Fee. At the time of closing, 455 CPW paid a $340,200 fee to Norfolk, as the Debtor had assigned $96,800 of the fee to other parties.

ANSWER:   The Defendants admit that they are aware of a letter agreement between MCL Companies and Norfolk dated August 29, 2005 which references to a $437,000 contingent commission relating to a property referred to as the "River East Retail/Parking Complex, Chicago IL", however, the Defendants are without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 48, and therefore deny the same.

49.   The Debtor arranged for McLean to distribute the River East Fee, in relevant part, as follows: McLean wired $71,800 to Herlihy in repayment of a $59,000 loan.

ANSWER:   The Defendants admit that Herlihey received $71,800 in January 2006 in repayment of a $59,000 loan to the Debtor and Norfolk under the terms of a promissory note, however, the Defendants are without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 49, and therefore deny the same.

## VI.   South Boston Development Project

50.   Prior to the summer of 2005, the Debtor owned 100% of Brook Financial, which fully owned South Boston Housing, Enhancement LLC ("South Boston"). South Boston is a company incorporated by the Debtor to develop a housing project in South Boston, MA (the "South Boston Project").

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 50, and therefore deny the same.

51.    The Debtor introduced McLean to XE Capital to form a $50,000,000 fund for real estate investments, including the South Boston Project. In August 2006, the Debtor received approximately $500,000 for making this introduction.

ANSWER:    The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 51, and therefore deny the same.

52.    Out of this $500,000, the Debtor, in relevant part, assigned $104,000 to Herlihy for repayment of an undisclosed cash advance.

ANSWER:    The Defendants admit that Herlihey received $101,000 in or about August 2006 in repayment of certain loans made in May and June 2006 to Norfolk and the Debtor under certain promissory notes in favor of Herlihey, and, upon information and belief, in compliance with certain assignments of contingent commissions given to Herlihey as a condition to, as part of, and commensurate with, said promissory notes, provided, however, the Defendants are without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 52, and therefore deny the same.

## VII.    The Debtor's Unlawful Transfers

53.    In sum, the Debtor engaged in a pattern of activities designed to hinder his creditors, as described above, consisting of "taking cash advances on his future earnings, assigning his payments to those lenders in repayment, transferring his property between accounts and squandering the balances." See Discharge Decision, at p. 17. Since the entry of the State Court Judgments in 1990, the Debtor was personally insolvent, and siphoned off his money to his various shell entities.

ANSWER:    The Defendants deny that the loans and related transactions that they made with the Debtor and/or the entities which he may have had an interest in were improper, however, the Defendants are without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 53, and therefore deny the same.

54.    The Debtor improperly transferred to the PMD Defendants (PMD, Farley and Herlihy) $293,176, consisting of i) assigning to PMD the right to collect the $203,176 Put and Call Commission at the 455 CPW Closing and ii) the assignment of $90,000 to PMD of the Debtor's Commission at the 455 CPW Closing ("the PMD Transfers").

ANSWER:    The Defendants deny the allegations of paragraph 54 of the Complaint.

55.    The Debtor improperly conveyed to Herlihy: i) $71,800 from the River East Fee and ii) an assignment of $104,000 relating to the introduction of XE Capital to McLean (the "Herlihy Transfers").

ANSWER:    The Defendants deny the allegations of paragraph 55 of the Complaint.

## VIII.    The Initial Adversary Proceeding

56.    On October 12, 2007, the Trustee filed an adversary proceeding for turnover, conversion and fraudulent conveyance against the debtor, Daniel McLean, MLC Companies of Chicago, PMD Corporation, Brian Farley, Phillip Herlihy, Joseph Korff, John Livingston and SB Housing, LLC.  The case was captioned Kittay v. Palermo, et al. Adv. Proc. No. 07-8310 (ASH) (herein after the "Initial Adversary Proceeding").

ANSWER:    The Defendants admit that the Initial Adversary Proceeding was filed on

October 12, 2007, however, the remaining allegations of paragraph 56 call for a legal conclusion

to which no response is necessary and to the extent that a response is necessary, the Defendants

deny the relief sought against them in this Complaint and in the Initial Adversary Proceeding.

57.    As the fraudulent conveyances occurred via a series of related and overlapping real estate transactions the Trustee included all of the defendants in the Initial Adversary Proceeding.

ANSWER:    The Defendants admit that the Trustee included other defendants in the

Initial Adversary Proceeding, however, the Defendants deny the remaining allegations of the

paragraph 57 of the Complaint.

58.    On November 27, 2007 the parties, except for Joseph Korff and John Livingston, appeared for an initial conference before Judge Hardin.

ANSWER:    Upon information and belief, the Defendants admit the allegations of

paragraph 58 of the Complaint.

59.    At the conference Judge Hardin indicated that he was concerned with having one adversary proceeding involving multiple defendants, some of whom may have not been involved in some of the fraudulent conveyances.

ANSWER:    The Defendants admit the allegations of paragraph 59 of the Complaint,

however, the Defendants deny that fraudulent conveyances to them occurred as may be alleged

in the Initial Adversary Proceeding or in this Complaint.

60.    Plaintiff, through counsel, maintained that the transactions in questions were related and that the facts sufficiently overlapped to warrant one adversary proceeding.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 60, and therefore deny the same.

61.    After a lengthy discussion with all parties who appeared in the action, Judge Hardin adjourned the conference until December 11, 2007, and ordered the parties to confer to discuss the issues of separating the Initial Adversary Proceeding, into separate adversary proceedings.

ANSWER:    The Defendants admit the allegations of paragraph 61 of the Complaint

and further state that Judge Hardin directed Plaintiff to separate the Initial Adversary Proceeding

into several adversary proceedings after consultation with the counsel for all defendants on the

best manner in order to achieve that result.

62.    The parties thereafter met and conferred about this issue. Although plaintiff maintains that it was appropriate to bring one adversary proceeding against all the defendants, in the interests of judicial economy, the plaintiff agreed to divide the Initial Adversary Proceeding into multiple adversary proceedings.

ANSWER:    The Defendants admit that certain of the parties, through counsel, met as is

alleged in paragraph 62 of the Complaint and agreed to divide the Initial Adversary Proceeding

into multiple adversary proceedings, however, the Defendants are without sufficient information

or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph

62, and therefore deny the same.

63.    By agreement of the parties, the plaintiff agreed to amend the complaint in the

Initial Adversary Proceeding and proceed solely against the debtor in that proceeding.

ANSWER:    The Defendants admit the allegations of paragraph 63 of the Complaint.

64.    The parties further agreed to the plaintiff filing separate adversary proceedings against each defendant or group of related defendants, provided however, that discovery would be conducted jointly for the related adversary proceedings.

ANSWER:    The Defendants admit that (a) the parties, through counsel, agreed to the plaintiff filing separate adversary proceedings against each defendant or group of related defendants and (b) Judge Hardin directed the parties to coordinate discovery in the separate adversary proceedings so as to try to avoid duplication of depositions and possibly certain other discovery depending on the circumstances, however, the Defendants deny that the parties agreed that the discovery would be conducted "jointly."

65.    On December 11, 2007, a conference was held before Judge Hardin, on the initial adversary proceeding. The parties set forth, and the court accepted, their agreement, concerning how to separate the initial adversary proceeding.

ANSWER:    The Defendants admit the allegations of paragraph 65 of the Complaint.

66.    The plaintiff was provided until January 7, 2007 to amend the initial adversary proceeding and to file the additional separate adversary proceedings.

ANSWER:    The Defendants admit the allegations of paragraph 66 of the Complaint.

67.    Judge Hardin held that for purposes of the statute of limitations, the date of filing for the additional adversary proceedings would relate back to the date the Initial Adversary Proceeding was filed.

ANSWER:    The Defendants admit the allegations of paragraph 67 of the Complaint.

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
**(Fraudulent Conveyance Pursuant to 11 U.S.C. §§544(b)**
**And 550 and New York Debtor and Credit Law §273)**

68.    Plaintiff repeats and realleges each and every allegation set forth above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

69.    The PMD Transfers and Herlihy Transfers made by the Debtor to the PMD
Defendants and Herlihy respectively were made at a time when the Debtor was insolvent or in
the zone of insolvency. The PMD Transfers and Herlihy Transfers were made without fair
consideration and constitute fraudulent conveyances as to creditors.

ANSWER:    The Defendants deny the allegations of the second sentence of paragraph

69 of the Complaint, however, the Defendants are without sufficient information or knowledge

to form a belief as to the truth of the remaining allegations contained in paragraph 69, and

therefore deny the same.

70.    The Trustee is asserting the rights of unsecured creditors whose unsecured claims
date back to the date of the initial fraudulent conveyance. The Trustee is also asserting the rights
of open trade account creditors who extended credit to the Debtor at the time of the fraudulent
conveyances and who continued to do so until the time of the bankruptcy.

ANSWER:    The allegations of paragraph 70 call for a legal conclusion to which no

response is necessary, however, to the extent that a response is necessary, Defendants are

without sufficient information or knowledge to form a belief as to the truth of the allegations

contained in paragraph 70, and therefore deny the same.

71.    By reason of the foregoing, such transfers should be avoided and Plaintiff is
entitled to set aside and recover the value of such transfers in an amount to be determined at trial,
which is not less than $397,176 plus interest.

ANSWER:    The Defendants deny the allegations of paragraph 71 of the Complaint.

### SECOND CLAIM FOR RELIEF
#### (Fraudulent Conveyance Pursuant to 11 U.S.C. §§544(b)
#### And 550 and New York Debtor and Creditor Law §274)

72.    Plaintiff repeats and realleges each and every allegation contained above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

73.     The PMD Transfers and the Herlihy Transfers each caused the Debtor to become insolvent.

ANSWER:     The Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 73 of the Complaint, and therefore deny the same.

74.     The PMD Transfers and the Herlihy Transfers were made without fair consideration and constitute fraudulent conveyances as to creditors.

ANSWER:     The Defendants deny the allegations of paragraph 74 of the Complaint.

75.     The Trustee is asserting the rights of unsecured creditors whose unsecured claims date back to the date of the initial fraudulent conveyance.

ANSWER:     The allegations of paragraph 76 call for a legal conclusion to which no response is necessary, however, to the extent that a response is necessary, Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 75, and therefore deny the same.

76.     The Trustee is also asserting the rights of open trade account creditors who extended credit to the Debtor at the time of the fraudulent conveyances and who continued to do so until the time of the bankruptcy.

ANSWER:     The allegations of paragraph 76 call for a legal conclusion to which no response is necessary, however, to the extent that a response is necessary, Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 76, and therefore deny the same.

77.     By reason of the forgoing, the foregoing transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

ANSWER:     The Defendants deny the allegations of paragraph 77 of the Complaint.

### THIRD CLAIM FOR RELIEF
**(Fraudulent Conveyance Pursuant to 11 U.S.C. §§544(b)
and 550 and New York Debtor and Creditor Law §274)**

78.     Plaintiff repeats and realleges each and every allegation contained above.

ANSWER:     The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

79.     The aforementioned PMD Transfers and Herlihy Transfers from Debtor to the
PMD Defendants and Herlihy respectively were made while the Debtor was engaged in a
business for which the property remaining in its hands after the transfers was unreasonably small
capital.

ANSWER:     The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 79 of the Complaint, and therefore

deny the same.

80.     The PMD Transfers and the Herlihy Transfers were made without fair
consideration and constitute fraudulent conveyances as to creditors at that time and as to other
persons who became creditors during the continuance of the business.

ANSWER:     The Defendants deny the allegations of paragraph 80 of the Complaint.

81.     By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should
be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount
to be determined at trial, which is not less than $397,176 plus interest.

ANSWER:     The Defendants deny the allegations of paragraph 81 of the Complaint.

### FOURTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to 11 U.S.C. §§544(b) and 550 and New York Debtor and Creditor Law §275)

82.     Plaintiff repeats and realleges each and every allegation contained above.

ANSWER:     The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

83.     The PMD Transfers and the Herlihy Transfers were made while the Debtor
intended to, or believed that it would, incur debts beyond its ability to pay as such debts matured.

ANSWER:     The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 83 of the Complaint, and therefore

deny the same.

84.    The PMD Transfers and the Herlihy Transfers were made without fair consideration and constitute fraudulent conveyances as to both then present and future creditors.

ANSWER:    The Defendants deny the allegations of paragraph 84 of the Complaint.

85.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

ANSWER:    The Defendants deny the allegations of paragraph 85 of the Complaint.

**FIFTH CLAIM FOR RELIEF**
**(Fraudulent Conveyance Pursuant to 11 U.S.C. §§544(b)**
**and 550 and New York Debtor and Creditor Law §276)**

86.    Plaintiff repeats and realleges each and every allegation contained above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

87.    The PMD Transfers and the Herlihy Transfers were made with actual intent to hinder, delay or defraud either present or future creditors.

ANSWER:    The Defendants deny the allegations of paragraph 87 of the Complaint.

88.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

ANSWER:    The Defendants deny the allegations of paragraph 88 of the Complaint.

**SIXTH CLAIM FOR RELIEF**
**(FRAUDULENT CONVEYANCE PURSUANT TO**
**11 U.S.C. §§548(a)(1)(A) and 550)**

89.    Plaintiff repeats and realleges each and every allegation above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

90.    The PMD Transfers and the Herlihy Transfers were made with actual intent to hinder, delay or defraud an entity to which the Debtor was indebted or to which the Debtor

became indebted after the date of the transfer of the Equity.

ANSWER:    The Defendants deny the allegations of paragraph 90 of the Complaint.

91.    The PMD Transfers and the Herlihy Transfers constitute fraudulent conveyances as to the Estate's or Debtor's creditors.

ANSWER:    The Defendants deny the allegations of paragraph 91 of the Complaint.

92.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount to be determined at trial, which is not less than $397,176 plus interest.

ANSWER:    The Defendants deny the allegations of paragraph 92 of the Complaint.

## SEVENTH CLAIM FOR RELIEF
## (FRAUDULENT CONVEYANCE PURSUANT TO
## 11 U.S.C. §§548(a)(1)(B)(i) and (ii)(I) AND 550)

93.    Plaintiff repeats and realleges each and every allegation above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

94.    The Debtor received less than a reasonably equivalent value in exchange for the PMD Transfers and the Herlihy Transfers.

ANSWER:    The Defendants deny the allegations of paragraph 94 of the Complaint.

95.    The Debtor was insolvent on the date of the PMD Transfers and the Herlihy Transfers or became insolvent as a result of the PMD Transfers and the Herlihy Transfers.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 95 of the Complaint, and therefore

deny the same.

96.    The PMD Transfers and the Herlihy Transfers constitute fraudulent conveyances as to the estate's or Debtor's creditors.

ANSWER:    The Defendants deny the allegations of paragraph 96 of the Complaint.

97.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount

to be determined at trial, which is not less than $397,176 plus interest.

ANSWER:    The Defendants deny the allegations of paragraph 97 of the Complaint.

## EIGHTH CLAIM FOR RELIEF
### (FRAUDULENT CONVEYANCE PURSUANT TO
### 11 U.S.C. §§548(a)(1)(B)(i) and (ii)(III) AND 550)

98.    Plaintiff repeats and realleges each and every allegation above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

99.    The Debtor received less than a reasonably equivalent value in exchange for the
PMD Transfers and the Herlihy Transfers.

ANSWER:    The Defendants deny the allegations of paragraph 99 of the Complaint.

100.    At the time of the PMD Transfers and the Herlihy Transfers the Debtor intended
to incur or believed that he would incur debts that would be beyond the Debtor's ability to pay as
such debts matured.

ANSWER:    The Defendants are without sufficient information or knowledge to form a

belief as to the truth of the allegations contained in paragraph 100 of the Complaint, and

therefore deny the same.

101.    The PMD Transfers and the Herlihy Transfers constitute fraudulent conveyances
as to the estate's or Debtor's creditors.

ANSWER:    The Defendants deny the allegations of paragraph 101 of the Complaint.

102.    By reason of the foregoing, the PMD Transfers and the Herlihy Transfers should
be avoided and Plaintiff is entitled to set aside and recover the value of the transfers in an amount
to be determined at trial, which is not less than $397,176 plus interest.

ANSWER:    The Defendants deny the allegations of paragraph 102 of the Complaint.

## NINTH CLAIM FOR RELIEF
### (Turnover Pursuant to 11 U.S.C. §§542)

103.    Plaintiff repeats and realleges each and every allegation above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

104.    The funds transferred to the PMD Defendants and Herlihy via the PMD Transfers and the Herlihy Transfers, respectively constitutes Property of the Estate of the Debtor that have benefit and value to the Debtor's bankruptcy estate.

ANSWER:    The Defendants deny the allegations of paragraph 104 of the Complaint.

105.    The PMD Defendants and Herlihy remain in possession and control of the Property of the Debtor's Estate, i.e., the proceeds of the PMD Transfers, and the Herlihy Transfers respectively.

ANSWER:    The Defendants deny the allegations of paragraph 105 of the Complaint.

106.    The PMD Defendants and Herlihy's retention of the funds constituting property of the Estate is improper.

ANSWER:    The Defendants deny the allegations of paragraph 106 of the Complaint.

107.    Based on the foregoing, the Court should compel the PMD Defendants and Herlihy to turn over the funds constituting the property of the Estate of the Debtor, and any other monies the Trustee determines through discovery are owed to the Estate, to the Trustee.

ANSWER:    The Defendants deny the allegations of paragraph 107 of the Complaint.

### TENTH CLAIM FOR RELIEF
(Accounting)

108.    Plaintiff repeats and realleges each and every allegation contained above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the

allegations set forth above as though fully set forth herein.

109.    The PMD Defendants and Herlihy have profited from the PMD Transfers and the Herlihy Transfers, respectively for which no consideration or inadequate consideration was given to the Debtor.

ANSWER:    The Defendants deny the allegations of paragraph 109 of the Complaint.

110.    By reason of the foregoing, the Trustee is entitled to an accounting of all transfers from the Debtor to the PMD Defendants and Herlihy from January 1999 through the present and an accounting of the reasons for each transfer.

ANSWER:    The Defendants deny the allegations of paragraph 110 of the Complaint.

ELEVENTH CLAIM FOR RELIEF
(POST-PETITION TRANSFER PURSUANT TO 11 U.S.C. §§549 AND 550)
AGAINST HERLIHY

111.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth above.

ANSWER:    The Defendants restate each of their foregoing answers to all of the allegations set forth above as though fully set forth herein.

112.    McLean also distributed the River East fee post-petition, in relevant part, by i) wiring $71,800 to Herlihy ("River East Post-Petition Transfer").

ANSWER:    Upon information and belief, Herlihey admits that he received a $71,800 payment post-petition relative to a commission arising out of a property referred to as "River East Retail/Parking Complex, Chicago IL", but he denies that said fee is subject to avoidance and he is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 112 of the Complaint.

113.    The Debtor also received post-petition $500,000 for introducing McLean to XE Capital, and out of this introduction fee, in relevant part, assigned $104,000 to Herlihy ("XE Capital Post-Petition Transfer").

ANSWER:    Upon information and belief, Herlihey admits that he received a $101,000 payment post-petition relative to a commission arising out of a "Joint Venture between X.E. Capital Partners and MCL Companies", but he denies that said fee is subject to avoidance and he is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 113 of the Complaint.

114.    The River East Post-Petition Transfer and the XE Capital Post-Petition Transfer constituted property of the Debtor's bankruptcy estate.

ANSWER:    Herlihey denies the allegations of paragraph 114 of the Complaint.

115.    The River East Post-Petition Transfer and the XE Capital Post-Petition Transfer occurred after the commencement of the Debtor's bankruptcy case.

ANSWER:    Herlihey admits that the payments referred to in his responses to

allegations 112 and 113 occurred after the commencement of the Debtor's bankruptcy case,

however, he denies the remaining allegations of paragraph 115 of the Complaint.

116.    The River East Post-Petition Transfer and the XE Capital Post-Petition Transfer
to Herlihy were not authorized by the Bankruptcy Code or Court.

ANSWER:    The allegations of paragraph 116 call for a legal conclusion to which no

response is necessary, however, to the extent that a response is necessary, Herlihey denies the

allegations of paragraph 116 of the Complaint

117.    By reason of the foregoing, the River East Post-Petition Transfer and the XE
Capital post-petition Transfer to Herlihy must be avoided and Plaintiff is entitled to recover from
Herlihy, an amount to be determined at trial, which amount is not less than $175,800 plus
interest.

ANSWER:    Herlihey denies the allegations of paragraph 117 of the Complaint.

## AFFIRMATIVE DEFENSES

As and for Defendants' affirmative defenses to the Complaint, the Defendants assert the

following:

## FIRST AFFIRMATIVE DEFENSE

1.    The Complaint fails to state a claim upon which relief can be granted and

accordingly, it should be dismissed with prejudice.

## SECOND AFFIRMATIVE DEFENSE

2.    Upon information and belief, the assets comprising the PMD Transfers and the

Herlihy Transfers were never property of the bankruptcy estate of the Debtor.

3.    The Trustee lacks standing to assert relief for any transfers of assets which were

not property of the estate of the Debtor including, without limitation, the PMD Transfers and the

Herlihy Transfers.

4.      Accordingly, all counts of the Complaint should be dismissed with prejudice.

## THIRD AFFIRMATIVE DEFENSE

5.      The avoidance of the PMD Transfers under Counts VI, VII, and VIII of the Complaint are barred by applicable statutes of limitation because said transfers were made more than one (1) year prior to the commencement of the Debtor's bankruptcy case.

6.      Accordingly, Counts VI, VII, and VIII of the Complaint should be dismissed with prejudice with respect to the PMD Transfers.

## FOURTH AFFIRMATIVE DEFENSE

7.      Any assets which may have been given by the Debtor to the Defendants as alleged in the Complaint were received (a) in good faith and without knowledge that the Debtor had any intent to hinder, delay, or defraud any creditor of the Debtor and (b) in return for value in exchange for said assets which equaled or exceeded the value of said assets.

8.      Accordingly, Counts I-VIII of the Complaint should be dismissed with prejudice.

## FIFTH AFFIRMATIVE DEFENSE

9.      The allegations of Counts V and VI of the Complaint fail to plead fraud with specificity as is required by Bankruptcy Rule 7009(b).

10.     Accordingly, Counts V and VI of the Complaint should be dismissed with prejudice.

## SIXTH AFFIRMATIVE DEFENSE

11.     The PMD Transfers and the Herlihy Transfers are not avoidable to the extent that (a) the Debtor was solvent at the time of the alleged transfers, (b) was not engaged in (or about to engage in) business or a transaction for which any property remaining with the Debtor was an unreasonably small capital, and (c) the Debtor did not intend to incur (or believed that he would

incur) debts that would be beyond the Debtor's ability to pay as such debts matured.

12.    Accordingly, Counts I-VIII of the Complaint should be dismissed with prejudice.

### SEVENTH AFFIRMATIVE DEFENSE

13.    The Defendants contend that the venue of this adversary proceeding is improper and should, under the circumstances, be transferred to the District Court for the Northern District of Illinois, Eastern Division.

### EIGTHT AFFIRMATIVE DEFENSE

13.    To the extent that the assets comprising the PMD Transfers and the Herlihy Transfers were property of entities including Norfolk, N.M. Palermo, Beekman, Butterfield Trust, and/or Residual, rather than property of the Debtor prior to such alleged transfer to the Defendants, and to the extent that the Trustee contends that such entities were the alter ego of the Debtor, then such parties are indispensable to, and are necessary for, the just adjudication of this adversary proceeding.

14.    To the extent that the parties referenced in paragraph 13 are not made a party to this proceeding, then all counts of the Complaint should be dismissed with prejudice.

### NINTH AFFIRMATIVE DEFENSE

15.    The Defendants continue to conduct discovery and reserve the right to add additional affirmative defenses in this adversary proceeding upon the completion of same.

### JURY DEMAND

The Defendants demand a jury trial in this adversary proceeding.

WHEREFORE, Brian Farley, Philip Herlihey, and PMD Company (a/k/a G01NG PLACES LLC), defendants herein, request that the Complaint be dismissed with prejudice, that the Defendants be awarded their costs and reasonable attorneys' fees, and for such other relief as

the Court deems just and proper.

DATED:        January 22, 2008.              Respectfully submitted,


                                             By: /s/ Brad A. Berish
                                                 Brad A. Berish (BB 0340 admitted pro
                                                 hac vice)
                                                 ADELMAN & GETTLEMAN, LTD
                                                 53 W. Jackson Boulevard
                                                 Suite 1050
                                                 Chicago, Illinois 60604
                                                 (312) 435-1050
                                                 Attorneys for defendants, Brian
                                                 Farley, Philip Herlihey and PMD
                                                 Company (a/k/a G01ING PLACES LLC)


77526.4                              28

Brad A. Berish (BB 0340)
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd., Suite 1050
Chicago, IL 60604
312-435-1050 (ph)
bberish@ag-ltd.com

Attorney for Defendants
Brian Farley, Philip Herlihy and PMD Company

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| DOUGLAS E. PALERMO, | ) | Case No. 05-25081 (ASH) |
|     Debtors. | ) | |
| _____ | ) | |
| DAVID R. KITTAY, TRUSTEE, | ) | |
|     Plaintiff, | ) | Adv. Pro. No. 08-8203 |
|       vs. | ) | |
| | ) | |
| BRIAN FARLEY, PHILIP HERLIHY, | ) | |
| and PMD COMPANY, | ) | |
|     Defendants. | ) | |

### CERTIFICATE OF SERVICE

    I, Brad A. Berish, an attorney, hereby certify that a copy of the attached **ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT** was served upon the party listed below, via ECF on January 22, 2008:

        Jonathan Bardavid, Esq.
        Storch Amini & Munves, P.C.
        2 Grand Central Tower
        140 E. 45th Street, 25th Floor
        New York, NY 10017
        jbardavid@samlegal.com
        Attorney for Plaintiff

Dated: January 22, 2008               /s/ Brad  A. Berish, Esq.
                               Brad Berish, Esq.
                               Adelman & Gettleman, Ltd.
                               53 W. Jackson Boulevard, Suite 1050
                               Chicago, Illinois 60604
                               Tel: 312-435-1050
                               Fax: 312-435-1059

                               ATTORNEY FOR DEFENDANTS
                               Brian Farley, Philip Herlihy and PMD Co.

Brad A. Berish (BB 0340 admitted                    [No hearing required]
    pro hac vice)
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd.
Suite 1050
Chicago, IL 60604
(312) 435-1050 (ph)
bberish@ag-ltd.com

Attorney for defendants,
Brian Farley, Philip Herlihey and PMD Company
(a/k/a G01ING PLACES LLC)

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Case No. 05-25081 (ASH) |
| | Chapter 7 |
| DOUGLAS E. PALERMO, | |
|      Debtor. | |
| DAVID R. KITTAY, TRUSTEE, | Adv. Pro. No. 08-8203 |
|        Plaintiff, | |
|   vs. | |
| BRIAN FARLEY, PHILIP HERLIHY, and PMD COMPANY, | |
|      Defendants. | |

### DEFENDANTS' DEMAND FOR JURY TRIAL AND STATEMENT OF NON-CONSENT TO JURY TRIAL CONDUCTED BY THE BANKRUPTCY COURT PURSUANT TO FED. R. BANKR. PROC. 9015 AND L.B.R. 9015-1

Pursuant to Local Bankruptcy Rule 9015-1 and Federal Bankruptcy Rule 9015(a), and consistent with its pleadings filed in the above captioned adversary proceeding, the defendants herein, Brian Farley, Philip Herlihey, and PMD Company (a/k/a G01NG Places LLC) (collectively, the "**Defendants**"), demand a jury trial on all issues so triable in the above-captioned adversary proceeding.  The Defendants do not consent to a jury trial conducted by the Bankruptcy Court in the above-captioned adversary proceeding.

77999

# EXHIBIT C

#5

DATED:     January 22, 2008.       Respectfully submitted,

By: /s/ Brad A. Berish_____
     Brad A. Berish (BB 0340 admitted pro
     hac vice)
     ADELMAN & GETTLEMAN, LTD
     53 W. Jackson Boulevard
     Suite 1050
     Chicago, Illinois 60604
     (312) 435-1050
     Attorneys for defendants, Brian
     Farley, Philip Herlihey and PMD
     Company (a/k/a G01ING PLACES LLC)

Brad A. Berish (BB 0340)
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd., Suite 1050
Chicago, IL 60604
312-435-1050 (ph)
bberish@ag-ltd.com

Attorney for Defendants
Brian Farley, Philip Herlihy and PMD Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| DOUGLAS E. PALERMO, | ) | Case No. 05-25081 (ASH) |
|      Debtors. | ) | |
| ———————————— | ) | |
| DAVID R. KITTAY, TRUSTEE, | ) | |
|      Plaintiff, | ) | Adv. Pro. No. 08-8203 |
|     vs. | ) | |
| | ) | |
| BRIAN FARLEY, PHILIP HERLIHY, | ) | |
| and PMD COMPANY, | ) | |
|      Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Brad A. Berish, an attorney, hereby certify that a copy of the attached **DEFENDANTS'
DEMAND FOR JURY TRIAL AND STATEMENT OF NON-CONSENT TO JURY TRIAL
CONDUCTED BY THE BANKRUPTCY COURT PURSUANT TO FED.R.BANKR.PROC. 9015
AND L.B.R. 9015-1** was served upon the party listed below, via ECF on January 22, 2008:

> Jonathan Bardavid, Esq.
> Storch Amini & Munves, P.C.
> 2 Grand Central Tower
> 140 E. 45th Street, 25th Floor
> New York, NY 10017
> jbardavid@samlegal.com
> Attorney for Plaintiff

Dated: January 22, 2008

                         /s/ Brad A. Berish, Esq.
Brad Berish, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Tel: 312-435-1050
Fax: 312-435-1059

ATTORNEY FOR DEFENDANTS
Brian Farley, Philip Herlihy and PMD Co.

77526.2                                     3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                    Chapter 7

                                              :

DOUGLAS E. PALERMO,                           Case No. 05 B 25081 (ASH)

                                              :

                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

### AMENDED APPLICATION PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY THE LAW FIRM OF STORCH AMINI & MUNVES, P.C. AS SPECIAL COUNSEL TO THE TRUSTEE

TO:    THE HONORABLE ADLAI S. HARDIN, JR.,
       UNITED STATES BANKRUPTCY JUDGE:

       David R. Kittay, Esq., as the duly appointed Chapter 7 successor trustee (the

"Trustee") for the estate of Douglas E. Palermo, the debtor in the above-captioned case (the

"Debtor"), respectfully represents as follows:

#### Jurisdiction and Venue

       1.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§

157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case

and this application (the "Application") is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory predicate for the relief sought herein is sections 327(a) and 328 of Title 11, United

States Code (the "Bankruptcy Code").

#### Background

       2.  On October 14, 2005, the Debtor filed a petition seeking relief under Chapter

7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of

New York (the "Court").

       3.  On October 16, 2005, Eric C. Kurtzman was appointed Chapter 7 trustee.

1

# EXHIBIT D

#61

4.  Subsequently, on January 23, 2006, David R. Kittay was appointed Chapter 7 successor Trustee of the Debtor's estate.[1]

5.  On July 16, 2007 this Court entered an order denying the Debtor a discharge. The written decision of this Court denying the Debtor a discharge enumerates in detail numerous possible fraudulent conveyances and preferential transfers that were made by the Debtor prior to filing for bankruptcy.

## Request to Employ and Retain the Law Firm of
## Storch Amini & Munves as Special Counsel to the Trustee

6.  By this Application, the Trustee seeks to employ and retain the law firm of Storch Amini & Munves, P.C. ("SAM") as his special counsel to pursue certain claims for the benefit of the Debtor's estate and his creditors, including fraudulent conveyance, unjust enrichment, conversion, and preferential transfer (the "Claims").

7.  The Trustee has determined that it is in the best interest of the Debtor, its estate, and its creditors that SAM provide services as special counsel to the Trustee for the reasons enumerated below and in the accompanying Declaration of Bijan Amini (the "Amini Declaration") filed concurrently herewith as "Exhibit A".

8.  Accordingly, the Trustee respectfully requests the entry of an order pursuant to Sections 327(a) and 328 of the Bankruptcy Code authorizing him to employ and retain SAM as special counsel to perform legal services relating the Claims.

## Basis for Relief

9.  SAM will act as special counsel to the Trustee in pursuit of the Claims. SAM is familiar with the facts and issues relating to the Claims as a result of its review of the existing files and conversations with the Trustee.

---

1    Sadly, Mr. Kurtzman passed away.

10. Moreover, SAM has extensive experience in, and knowledge of, litigating fraudulent transfer and unjust enrichment actions and has successfully collected large sums of money for the benefit of estates. Under the terms set forth below, SAM will be able to expeditiously and efficiently pursue such claims for the benefit of the estate.

11. SAM's services are necessary to enable the Trustee to faithfully execute his duties under Section 704 of the Bankruptcy Code. The services that SAM will render to the Trustee include, but are not limited to, the following:

a.  filing and pursuing any adversary proceedings in connection with the Claims;

b.  conducting discovery in the pursuit of any actions related to the Claims;

c.  bringing any adversary proceeding commenced regarding the Claims to trial; and

d.  generally assisting the Trustee in investigating and recovering the Debtor's assets in connection with the Claims.

12. Despite the belief that the Claims should be pursued, the estate does not have the funds available to fund, on a traditional hourly fee basis, what could amount to time consuming and very costly litigation.

13. Because of the risks associated with the litigation, the time and expense involved in handling this case, and the inability of the estate to pay for any significant legal time or expense, the Trustee has requested counsel to handle the Claims on a contingency basis.

14. With respect to the Claims, SAM will earn a contingency fee in the amount of thirty-three and one third percent (33 1/3%) of any recovery realized by the Trustee.

15. In addition, SAM will be reimbursed for its out of pocket expenses from any recovery realized by the Trustee in a manner and at rates consistent with charges made generally to SAM's other clients and consistent with the guidelines set forth by Office of the

United States Trustee. SAM will be seeking reimbursement of all such ancillary services incurred on behalf of the Trustee in accordance with the Guidelines of the Court.

16. To the best of the Trustee's knowledge, and except as disclosed herein and in the Amini Declaration, SAM has not represented the Trustee, the Debtor, its creditors, or any other parties in interest, or its respective attorneys, in any other matter relating to the Debtor or its estate.

17. "It is a cardinal principle of bankruptcy administration that a trustee in bankruptcy is entitled to engage attorneys of his choice, subject only to the approval of the court." Matter of W.T. Grant Co., 4 B.R. 53, 82 (Bankr. S.D.N.Y. 1980). The "[T]rustee should have wide latitude in determining who shall be employed to perform legal services for the estate . . . Only in the rarest cases should the [T]rustee be deprived of the privilege of selecting his own counsel." In the Matter of Codesco, Inc., 87 B.R. 997, 999 (Bankr. S.D.N.Y. 1982) (internal quotations omitted).

18. Pursuant to Sections 327 and 101(14) of the Bankruptcy Code, the Trustee, with the Court's approval, may employ professional persons, including attorneys, provided that they "do not hold or represent an interest adverse to the estate and that they are disinterested persons . . ." 11 U.S.C. § 327(a). The Trustee's proposed retention of SAM falls clearly within the parameters of Sections 327 and 101(14). First, SAM does not hold or represent an interest adverse to the estate. Rather, SAM, like the Trustee, the estate and every other creditor, shares the same goal of maximizing the estate's recovery for the benefit of all creditors. Second, SAM is a "disinterested person," as defined under Section 101(14) of the Bankruptcy Code. SAM is not disqualified from acting as special counsel to the Trustee by any of the specific relationships delineated under Section 101(14)(A)-(D), nor does it have "an interest

4

materially adverse to the interest of the estate or of any class of creditors . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . ." 11 U.S.C. 101(14)(E).

19. SAM has stated its desire and willingness to act in this case and render the necessary professional services as special counsel to the Trustee.

20. This Application does not raise any novel issues of law and, accordingly, the Trustee respectfully requests that the Court waive the requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York for the filing of a memorandum of law.

WHEREFORE, the Trustee respectfully requests the entry of the Order, attached hereto as Exhibit "B", authorizing him to retain SAM and utilize the services of SAM and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 12, 2007

KITTAY & GERSHFELD, P.C.
Attorneys for the Trustee

/s/ Robin Meyer Konigsberg

Robin Meyer Konigsberg (RMK-1424)
100 White Plains Road
Tarrytown, New York 10591
(914) 332-8000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                  Chapter 7

                                                    :
DOUGLAS E. PALERMO,                                 Case No. 05 B 25081 (ASH)

                                                    :

                                Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
## STORCH AMINI & MUNVES, P.C. AS SPECIAL COUNSEL TO THE TRUSTEE

Upon the Amended Application (the "Application") of David Kittay as the

duly appointed Chapter 7 successor trustee (the "Trustee") for the estate of Douglas E.

Palermo, the debtor in the above-captioned case (the "Debtor"), for an Order authorizing

the employment and retention of Storch Amini & Munves, P.C. ("SAM") as special

counsel for the Trustee to pursue certain claims for the benefit of the estate and its

creditors, including fraudulent conveyance, unjust enrichment, turnover, conversion, and

preferential transfer (the "Claims"); and the annexed Declaration of Bijan Amini (the

"Amini Declaration"), a principal of SAM, duly sworn to on November 9, 2007; and it

appearing that the members and associates of SAM who will be engaged in this Chapter

7 case are duly admitted to practice before this Court; and the Court being satisfied,

based on the representations made in the Application and the Amini Declaration, that

SAM represents or holds no interest adverse to the Debtor and the Debtor's estate and is

"disinterested" as such term is defined pursuant to Section 101(14) of Title 11 of the

United States Code (the "Bankruptcy Code"); and the Court having jurisdiction to

consider and determine the Application as a core proceeding in accordance with 28

U.S.C. §§ 157 and 1334; and it appearing that the relief requested by the Trustee is

1

H63

necessary and in the best interests of the Debtor's estate; and sufficient cause appearing

therefor, it is hereby

ORDERED, that the Application is granted; and it is further

ORDERED, that pursuant to, inter alia, Section 327(a) of the Bankruptcy

Code and Federal Rule of Bankruptcy Procedure 2014(a), the Trustee is authorized to

retain SAM as special counsel to prosecute the Claims for the benefit of the estate and its

creditors, including fraudulent conveyance, unjust enrichment, conversion, and

preferential transfer and such retention is hereby approved; and it is further

ORDERED, that the Trustee's retention of SAM will be in accordance

with the fee arrangement set forth in the Application and Amini Declaration; and it is

further

ORDERED, that pursuant to, inter alia, Sections 327(a), 328 and 330 of the

Bankruptcy Code, SAM is retained and is authorized to seek compensation and

reimbursement of expenses from the Debtor's Chapter 7 estate for payment of

professional services rendered and expenses incurred by SAM, as special counsel, which

compensation shall be subject to review and determination by this Court upon proper

application pursuant to Sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED, that the costs, disbursements and expenses as incurred by

SAM in any actions (e.g., court fees, stenographers fees, photocopying and any and all

other disbursements, costs and expenses incurred) will be paid by SAM until said costs,

disbursements and expenses are approved by this Court; and it is further

2

ORDERED, that SAM shall provide the Trustee with a written status report every six months, one on May 1st and the other on October 1st until the Claims are finalized.

Dated: White Plains, New York
      November 30, 2007

                               /s/ Adlai S. Hardin, Jr.
                        UNITED STATES BANKRUPTCY JUDGE

NO OBJECTION:

OFFICE OF THE U.S. TRUSTEE

By: /s/ Nazar Khodorovsky, Trial Attorney

Dated: November 20, 2007

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DOUGLAS E. PALERMO,<br>Debtor. | Case No. 05-25081 (ASH)<br>Chapter 7 |
| DAVID R. KITTAY, TRUSTEE,<br><br>          Plaintiff,<br><br>     vs.<br><br>BRIAN FARLEY, PHILIP HERLIHY, and PMD<br>COMPANY,<br><br>          Defendants. | Adv. Pro. No. 08-8203<br><br><br><br>Hearing Date and Time: To be determined |

### AFFIDAVIT OF BRIAN FARLEY IN SUPPORT OF MOTION OF DEFENDANTS TO WITHDRAW THE REFERENCE AND TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Brian Farley, being duly sworn, hereby deposes and states, under penalty of perjury, as follows:

1.    I am over eighteen years of age and competent to testify on the matters set forth in this affidavit. I have personal knowledge of the facts set forth in this affidavit.

2.    I make this affidavit in connection with that certain Motion and Memorandum of Law in Support of Motion of Defendants To Withdraw The Reference And To Transfer Venue To the United States District Court For the Northern District of Illinois, Eastern Division (the "**Motion**"), which Motion is filed with this Affidavit. I have read the Motion and the Affidavit of Herlihey attached thereto. All capitalized terms not otherwise defined herein shall have the meaning as is set forth in the Motion.

78124v3                                            1

# EXHIBIT E

3.   I am an attorney licensed to practice in the State of Illinois.

4.   Since at least the year 2002, I have resided in the state of Illinois.

5.   I have been friends with, and have had business relationships with, McLean since prior to 2003.  Through those relationships, I have come to understand that McLean is in the business of real estate development and ownership.  He operates many of his real estate businesses from the McLean Entities.  Since at least 2002, McLean has both resided in Illinois and has his principal place of business for the McLean Entities located in Chicago, Illinois.

6.   Shortly prior to, or in, approximately July 2003, McLean introduced me to the Debtor who was inquiring about obtaining a loan.  Following further communications I had with both McLean and the Debtor at that time, we negotiated the terms of a Loan Agreement under which, among other things, (a) I would make a loan in return for an Assignment of a Contingent Commission, that the Debtor and/or one or more Debtor Entities would be entitled to collect if a certain transaction relating to real estate owned by a McLean Entity thereafter closed and (b) the Debtor would guarantee the loan (the "**Guaranty**").

7.   Thereafter, on or about July 15, 2003, I entered into a Loan Agreement under which (a) I lent $120,000 pursuant to the terms of a Promissory Note dated July 15, 2003, that had been executed by two Debtor Entities, and (b) I received an Assignment also dated July 15, 2003, executed by the Debtor, the two Debtor Entities, myself, McLean and a McLean Entity evidencing the Assignment of certain Contingent Commissions to me ("**Loan Agreement No. 1**").  A copy of Loan Agreement No. 1 is attached hereto as exhibit 1 and by express reference made a part hereof.  At or about the date of Loan Agreement No. 1, I prepared Loan Agreement No. 1 and the Guaranty and sent it to the Debtor and/or McLean by fax, email, or mail for the

2

required signatures therein and received those documents signed back from them by fax, email, or mail on or about the date of the agreements. I currently retain an original or copy of Loan Agreement No. 1 and the Guaranty in my possession. A copy of the Guaranty is attached hereto as exhibit no. 2 and by express reference made a part hereof.

8.    Shortly prior to, or in, approximately June 2004, the Debtor contacted me again about obtaining another loan. I have been friends with the Defendant, Herlihey, since at least 2003. I introduced Herlihey to the Debtor about this potential loan. I agreed to act as Herlihey's attorney/advisor concerning this potential loan as well as the subsequent loans that Herlihey thereafter made in November 2005, May 2006, and June 2006 which are discussed below (collectively, the "**Herlihey Loans**").

9.    Prior to each of the Herlihey Loans, the parties negotiated Loan Agreements between Herlihey (or myself as his attorney/advisor), McLean and the Debtor which were similar in form and substance to Loan Agreement No. 1. Just prior to or on about the date of Loan Agreement No. 2, Loan Agreement No. 3, Loan Agreement No. 4, and Loan Agreement No. 5, either Herlihey or I sent them by fax or email to the Debtor and/or McLean to obtain the appropriate signatures required therein, and thereafter either Herlihey or I received these documents fully signed back via similar methods from those individuals on or about the date of said agreements. Herlihey or myself have copies or originals of each of these executed documents.

10.    All of the negotiations and communications that I had (excluding any communications with Herlihey) concerning all of the Loan Agreements and Guaranties (including the Guaranties referenced in the Herlihey Affidavit) were between myself (acting as an

78124v3                                        3

attorney/advisor to Herlihey, except for Loan Agreement No. 1 where I was acting for myself), the Debtor, and McLean primarily by telephone or written communications, while I was located in Illinois. I never traveled to meet and/or negotiate any of these transactions with the Debtor in person, and the Debtor never traveled to meet with me. I accepted Loan Agreement No. 1 and the related Guaranty while I was in Illinois at or about the date of that agreement.

11.     On or about July 29, 2004, I was notified by the Debtor and/or McLean that the real estate closing concerning the Contingent Commissions due under Loan Agreements Nos. 1 and 2 was going to occur. As a result of the closing, on or about July 29, 2004, payment of $293,176 was sent by wire to a bank under the PMD name located in Illinois, and thereafter, the funds were distributed as follows in accordance with, and in satisfaction of the obligations of, our respective Loan Agreements: (a) $90,000 to Herlihey and (b) $203,176 to myself. I am an employee of G01NG PLACES, LLC, an Illinois limited liability company (sometimes d/b/a PMD), however, I do not have a direct ownership interest in, or control over, that entity. Herlihey has no relationship with either PMD or G01NG PLACES, LLC.

12.     It is my understanding that the foregoing $293,176 payment as well as the payments to Herlihey that are referenced in the Herlihey Affidavit were actually sent by McLean or a McLean Entity and that they related to a Contingent Commission that had then been earned by the Debtor and/or a Debtor Entity at a closing that had then occurred concerning the real estate referenced in one or more of the Loan Agreements.

13.     I state under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

Affiant further sayeth naught.

BRIAN FARLEY

STATE OF ILLINOIS )
                  )    ss:
COUNTY OF COOK    )

SUBSCRIBED AND SWORN TO
THIS _28th_ DAY OF
_January_, 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
VALLERY LUCAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/19/11

## ASSIGNMENT

This agreement dated this ___15___ of July, 2003, is to serve as an irrevocable assignment between the parties Beekman Street Advisory Corp. (having corporate offices at 535 Fifth Avenue, 18th Floor, New York, NY 10017), N.M. Palermo Inc., Residual Equity Corporation and Douglas E. Palermo, (herein called "Seller" or "Sellers") and Brian Farley, having offices at 1343 N. Wells Street, Chicago, IL 60610 (herein called "Purchasers") assigning all rights, title and interests to any monies or sums due to Sellers in relation to the "Advisory Services Agreement Amendment" (hereinafter the "ASAA") attached hereto as Exhibit "A" and documents and agreements underlying or relating thereto. Pursuant to section 3(b) of the ASAA $203,176.00 will be due and payable to Sellers pursuant to the agreement.

For the price of $10.00 and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Sellers, Sellers hereby assign to Purchaser all rights, title and interests to any monies or sums due to Sellers in relation to the ASAA. Upon payment of the $203,176.00 to Purchaser pursuant to this assignment and the terms of the ASAA (which is expected to be on or before July 1, 2004) the Purchaser agrees to forgive the principal debt on the promissory note between Beekman Street Advisory Corp. and the Purchaser which is attached hereto as Exhibit "B". Any outstanding amount due (excluding principal) on the promissory note would still be owed to the Purchasers notwithstanding the cancellation of the principal amount.

SELLERS:

_____
Douglas E. Palermo

Beekman Street Advisory Corp.

By: _____
Name: Douglas E. Palermo
Title: President

N.M. Palermo Inc.

By: _____
Name: Douglas E. Palermo
Title: President

Residual Equity Corporation

By: _____
Name: David Buchanan, Jr.
Title: President

PURCHASER:

_____
Brian Farley

Acknowledged

The Trustees of Columbia
University in the City of New York

By: _____
Name: William Scott
Title: Deputy Vice President

# EXHIBIT E-1

FOR PURPOSES OF APPROVING THE ASSIGNMENT SET FORTH HEREIN:

455 Central Park West, L.L.C.

By: _____

Name: Daniel E. McLean

Title: Member

_____

Daniel E. McLean

## ADVISORY SERVICES AGREEMENT AMENDMENT

THIS ADVISORY SERVICES AGREEMENT AMENDMENT (this "Amendment") is made as of the 30th day of October, 2002, by and among 455 Central Park West, L.L.C., a Delaware limited liability company having an office c/o MCL Companies, 455 E. Illinois Street, Chicago, Illinois 60611 (hereinafter "the Company"), Daniel E. McLean, having an office c/o MCL Companies, 455 E. Illinois Street, Chicago, Illinois 60611, Beekman Street Advisory Corp., a New Jersey corporation having an office at 305 W. Grand Avenue, Suite 600, Montvale, New Jersey 07645 (hereinafter "BSA"), N.M. Palermo, Inc., a New Jersey corporation having an office at 305 W. Grand Avenue, Suite 600, Montvale, New Jersey 07645 ("N.M. Palermo"), Residual Equity Corporation, a Delaware corporation, having an office at 1054 Black Rock Road, Easton, Connecticut 06612 ("REC") and Douglas E. Palermo, having an office at 305 W. Grand Avenue, Suite 600, Montvale, New Jersey 07645.

## RECITALS

(A)    On January 29, 2002, the Company and N.M. Palermo entered into a letter agreement (the "Loan Fee Agreement") regarding fees to be paid by the Company to N.M. Palermo in connection with the construction loan financing to be obtained by the Company. A copy of the Loan Fee Agreement is annexed hereto as Exhibit 1.

(B)    On January 11, 2002, the Company and the Trustees of Columbia University in the City of New York ("Columbia") entered into that certain Purchase Agreement (as heretofore or hereafter amended, the "Purchase Agreement") pursuant to which the Company agreed to sell to Columbia, and Columbia agreed to acquire from the Company, 53 of the condominium units to be constructed as part of the building to be constructed by the Company (the "Building") at 455 Central Park West, New York, New York (the "Pre-Sale Units") for the gross purchase price of $45,388,000. In the Purchase Agreement, BSA and Residual Equity Corporation ("REC") were listed as brokers in the transaction.

(C)    N.M. Palermo asserts that it is entitled to a commission in connection with the Put Agreement (as hereinafter defined) pursuant to an unsigned agreement between the Company and itself (the "Put Fee Agreement"), a copy of which has been provided by N.M. Palermo in the form attached hereto to Exhibit 2.

(D)    The Company and Columbia anticipate entering into a certain Put and Call Agreement (the "Put Agreement") pursuant to which the Company may require Columbia to acquire up to an additional 24 condominium units in the Building (the "Put Units") and Columbia may require the Company to sell the Put Units to Columbia.

(E)    The Company, BSA, N.M. Palermo, Daniel E. McLean, Douglas E. Palermo and REC desire to clarify certain of their rights and obligations under the Purchase Agreement, Put Agreement, Loan Fee Agreement and Put Fee Agreement (the "Services Agreement").

NOW, THEREFORE, in consideration of ten dollars and other good and valuable consideration paid one to the other, the receipt and sufficiency of which are hereby

acknowledged, the Company, BSA, N.M. Palermo, Daniel E. McLean and Douglas E. Palermo and REC hereby covenant and agree as follows:

1.    Recitals:  The Recitals set forth above are incorporated into this Amendment as if set forth in the body hereof and are confirmed as being true and correct by the parties hereto.

2.    The Loan Fee Agreement:  It is agreed that neither BSA, N.M. Palermo, Douglas E. Palermo nor REC (collectively, the "Advisors") nor any principal or affiliate of the foregoing were instrumental in arranging a construction loan (the "Loan") from iStar Financial Services, Inc. (the "Lender") anticipated to be made by Lender to the Company and therefor no fee is due to any of the Advisors or any principal or affiliate thereof in connection with the Loan. The Loan Fee Agreement is terminated and of no force or effect.

3.    The Put Fee Agreement:  The parties hereto agree that the full fee payable to the Advisors in connection with the Put Agreement is $323,176, which will be payable to the Advisors as follows:

(a)    $120,000 shall be paid to BSA on behalf of the Advisors at the time that Lender makes its first funding of the Loan.  The Company hereby irrevocably authorizes and directs Lender to pay such amount out of the Loan proceeds directly to BSA (on behalf of the Advisors) at the time of the first funding of the Loan; and

(b)    $203,176 shall be paid to BSA on behalf of the Advisors at the time of conveyance of the Pre-Sale Units in accordance with the Purchase Agreement or in accordance with such other closing arrangements as may be agreed to by the Company and Columbia. The Company hereby irrevocably authorizes and directs Columbia to pay such amount out of the purchase price due to the Company pursuant to the Purchase Agreement directly to BSA (on behalf of the Advisors) at the time of the conveyance of the Pre-Sale Units to Columbia and payment by Columbia of the purchase price therefor in accordance with the Purchase Agreement. Notwithstanding the foregoing, in the event that the Pre-Sale Units are not conveyed to Columbia (or any assignee or affiliate thereof) or Columbia fails to pay the purchase price therefor in accordance with the Purchase Agreement or such other closing arrangements as may be agreed to by the Company and Columbia, for any reason other than default by the Company under the Purchase Agreement, the fee provided for in this Section 3(b) shall not be due or payable to Advisors and neither the Company nor Daniel E. McLean nor Columbia shall have any liability therefor whatsoever.

4.    No Liability of Lender or Columbia:  The Company hereby waives any and all rights it may now or hereafter have to bring legal action against Columbia or Lender, and waives all causes of action it may now or hereafter have against Columbia or Lender, in connection with or arising out of, Columbia or Lender making the payments to the Advisors contemplated above. Neither Columbia nor Lender shall be required to comply with any demands or instructions which the Company may give which are in contradiction to the payment instructions set forth above. The Advisors hereby agree for the benefit of Columbia and Lender that they will not bring legal action against Columbia or Lender for any fees due to them with regard to, or in connection with, the Loan Fee Agreement or the Put Fee Agreement, the sale of the Pre-Sale Units, the sale of the Put Units, the Loan, or otherwise in connection with the transactions

contemplated hereby, and waive all causes of action against Columbia and Lender which the Advisors may now or hereafter have with regard to the transactions contemplated hereby (provided that the Advisors do not waive any right to enforce the payment obligations set forth in this Amendment). The Advisors agree to look solely to the Company for any and all fees which may be due to them in connection with the Put Fee Agreement and any purchase agreement which may be signed by the Company and Columbia with respect to Put Units, which fees are limited to those specified in this Amendment. The Company and Daniel E. McLean hereby agree to indemnify, defend and hold harmless Columbia and Lender from and against any claim, loss, cost or expense which either may incur (including reasonable attorneys' fees and costs) as a result of any claim being made by the Advisors or any principal or affiliate thereof against either Columbia or Lender for any fees or other compensation resulting from the Put Agreement and any Purchase Agreement which may be signed by the Company and Columbia with respect to Put Units.

5.    Advisors' Fee Splitting Arrangement: Advisors acknowledge and consent to the payments provided for above being paid in the manner, and to the party, provided for above. The Advisors and Douglas E. Palermo jointly and severally agree to indemnify, defend and hold harmless Columbia, Lender, the Company and Daniel E. McLean from and against any claim, loss, cost or expense which any of them may incur (including reasonable attorneys' fees and costs) as a result of any claim being made by any of the Advisors or any principal or affiliate thereof against either Columbia, Lender, the Company or Daniel E. McLean which relates to how the payments to be made hereby are to be split among the Advisors and/or any principal or affiliate thereof or the payment thereof by Lender and Columbia as provided for above.

6.    Advisors' Releases:    The Company acknowledges that no further services are expected by the Advisors pursuant to the Services Agreement. Upon payment of the fees to BSA on behalf of the Advisors as provided for in Sections 3(a) and 3(b) (assuming the payment in Section 3(b) is in fact payable hereunder), (i) the Put Fee Agreement shall be of no force or effect and no further payments shall be due to the Advisors in connection with the Put Fee Agreement, or the Put Agreement, (ii) the only operative agreement regarding the fees, if any, to be paid to Advisors with regard to the Project and sales contemplated by the Put Agreement shall be this Amendment, and (iii) the Advisors and their principals, shareholders, officers, partners, members and affiliates shall be deemed to have released the Company and Daniel E. McLean from any and all claims or liabilities arising in connection with the Project and sales contemplated by Put Agreement except for claims for the fees payable, if any, pursuant to Section 3(b) above. Upon payment of the fees to BSA on behalf of Advisors as provided for in Section 3(b) above, Advisors and their principals, shareholders, officers, partners, members and affiliates shall be deemed to have released the Company, Daniel E. McLean, Lender and Columbia from any and all claims or liabilities arising in connection with, the Project and the sales contemplated by the Put Agreement, including any set forth in this Amendment. If no fees are due and payable due to failure of Columbia to close under the Purchase Agreement, the Put Fee Agreement shall be terminated and of no force and effect and such release shall be effective as of date of termination of the said Purchase Agreement.

7.    Method of Payment. The payments to be made by Lender and Columbia contemplated by Section 3 above shall be made by wire transfer of good Federal funds to an account or accounts designated by the Advisors.

8.    Entire Agreement:  This Amendment constitutes the entire agreement of the parties hereto with respect to the subject matter of this Amendment.  This Amendment may not be modified, amended or terminated, except by an agreement in writing executed by the parties hereto.  This is without limitation of any other written agreement executed as of the date hereof.

9.    Notices:  Any notice (including a letter, request, consent or other communication) which any party is required or desires to give to the others in connection with this Amendment, must be in writing and must be sent by registered or certified mail, return receipt requested or sent by nationally recognized overnight courier or by hand to the addresses for the respective parties set forth above.  Any party can specify a different address for themselves by giving notice of it to the others.  All notices to Columbia shall be sent to Columbia as provided for in Section 12 of the Purchase Agreement.

10.    Parties Bound:  This Amendment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

11.    Governing Law:  This Amendment shall be governed by and construed in accordance with the laws of the State of New York without regard to principals of conflicts of laws.

12.    Multiple Counterparts:  This Amendment may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement.

13.    Third Party Beneficiaries:  The Company and Advisors acknowledge that Columbia and Lender are to be deemed third party beneficiaries with respect to the terms of this Amendment.

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the day and year first above written.

_____
Douglas E. Palermo

_____
Daniel E. McLean

455 Central Park West, L.L.C.
By:  455 Central Park West, Inc., Manager

By: _____
Daniel E. McLean, President

Beekman Street Advisory Corp.

By: _____
Name:  Douglas E. Palermo
Title:  PRESIDENT

N.M. Palermo, Inc.

By: _____

Name:   Douglas E. Palermo

Title:   PRESIDENT

Lender and Columbia have executed this Amendment for the sole purpose of acknowledging the payment instruction set forth in Section 3 above.

Residual Equity Corporation

By: _____

Name: David H. Buchanan, Jr

Title: President

iStar Financial Inc.

By: _____
Name: _____
Title: _____

The Trustees of Columbia University in the City of New York

By: _____
Name: _____
Title: _____

N.M. Palermo, Inc.

By:_____
Name:   Douglas E. Palermo
Title:_____

Residual Equity Corporation

By:_____
Name:_____
Title:_____

Lender and Columbia have executed this Amendment for the sole purpose of acknowledging the payment instruction set forth in Section 3 above.

iStar Financial Inc.

By:_____
Name:_____ Roger Cozzi
Title:_____ Executive Vice - President

The Trustees of Columbia University in the City of New York

By:_____
Name:_____
Title:_____

N.M. Palermo, Inc.

By:_____
Name:   Douglas E. Palermo
Title:_____

Residual Equity Corporation

By: _____
Name:_____
Title:_____


Lender and Columbia have executed this Amendment for the sole purpose of acknowledging the payment instruction set forth in Section 3 above.

iStar Financial Inc.

By: _____
Name:_____
Title:_____


The Trustees of Columbia University in the City of New York

By: _____
Name: William A. Scott
Title: Deputy Vice President

EXHIBIT 1

LOAN FEE AGREEMENT FOR DOCUMENT #130744

08/28/2002  08:03  212-255-5188
FEB 01 2002 12:17 FR MCL COMPANIES

# 455 Central Park West, L.L.C.

January 28, 2002

Mr. Douglas E. Palermo
Principal
N.M. Palermo, Inc.
305 W. Grand Avenue, Suite 600
Montvale, NJ 07645

Re:    455 Central Park West

Dear Doug:

Please let this letter serve as our agreement to pay you, or any affiliate you name, a 1% fee for helping finance 455 Central Park West, LLC. The fee will be payable upon closing of a construction loan which has been deemed satisfactory to 455 Central Park West, LLC.

The 1% fee is payable on a loan which has been attained through a source you introduce to 455 Central Park West, LLC, not on a loan attained through our own efforts.

If the loan is obtained from Union Labor Life Insurance Company (ULLICO) the fee will be 0.50% as we both currently have relationships with ULLICO.

Very truly yours,

455 Central Park West, L.L.C.

By:
Name: Daniel E. McLean
Title:    President

AGREED AND ACCEPTED TO:

N.M. Palermo, Inc.

By:
Name: Douglas E. Palermo
Title:   Principal

455 E. Illinois Street, Suite 565 • Chicago, Illinois 60611 • Phone 312-321-8500 • Fax 312-755-2750

EXHIBIT 2

PUT FEE AGREEMENT FOR DOCUMENT #130744

# 455 Central Park West, L.L.C.

May 1, 2002

Mr. Douglas E. Palermo
Principal
N. M. Palermo, Inc.
205 West Grand Avenue
Suite 600
Montvale, NJ 07645

RE:    455 Central Park West

Dear Doug:

Please let this letter serve as our agreement to pay you, or any affiliate you name, a 1% fee for helping finance 455 Central Park West, L.L.C.  The fee will be payable upon closing of a construction loan which has been deemed satisfactory to 455 Central Park West, L.L.C.  More specifically, a standby commitment in the amount of $55 million by Columbia University which is referred to in a PUT Agreement between 455 Central Park West L.L.C. and Columbia University.  All fees are due and payable upon funding of the construction loan.

Very truly yours,

455 Central Park West, L.L.C

By: _____
        Name:
        Title:

AGREED AND ACCEPTED TO:

N. M. Palermo, Inc.

By: _____
        Name:
        Title:

October 10, 2002

The undersigned (collectively, the "Releasor"), hereby release and forever hold harmless 455 Central Park West, L.L.C., Daniel E. McLean, iStar Financial, Inc. ,The Trustees of Columbia University in the City of New York and the members, partners, principals , officers, directors, shareholders, agents, employees of each of the foregoing (all of the foregoing collectively the "Released Group"), and the heirs, executors, administrators, successors and assigns of the Released Group, from and against any and all actions, causes of action, suits, debts, dues, sums of money, judgments, claims, fees, damages, expenses or other obligations or demands whatsoever (including without limitation attorneys fees and disbursements) which the Releasor and members, partners, principals, officers, directors, shareholders, agents and employees of the Releasor, and the heirs, executors, administrators, successors and assigns of Releasor, ever had, now have, or hereafter can, shall or may have, for, upon or by reason of any matter or thing whatsoever arising out of or in any way connected with, the sale of condominium units at the property located at 455 Central Park West, New York, New York ("Property"), construction financing for improvements at the Property or otherwise in connection with the Property (collectively, the "Released Claims"), except to the extent of specific fees expressly reserved in agreements dated the date hereof between 455 Central Park West L.L.C., Daniel E. McLean and the undersigned and acknowledged by iStar Financial, Inc. and The Trustees of Columbia University in the City of New York (collectively, the "Agreements") to be paid after the date hereof upon the occurrence of certain events, and which shall be payable only if such events occur, all as more particularly set forth in the Agreements.

This release is intended to be unconditional and irrevocable and to release all claims by Releasor and its members, partners, principals, officers, directors, shareholders, agents and employees and their heirs, executors, administrators, successors, and assigns (collectively, the "Releasing Group"), however arising and any lien associated therewith. The undersigned further agree to jointly and severally indemnify the Released Group from and against any and all claims for additional fees or compensation or otherwise regarding the Property by any of the Releasing Group and further agree to jointly and severally indemnify, defend and hold the Released Group harmless from and against such Released Claims and any and all loss, damage, cost or expense, including, without limitation reasonable attorney fees and disbursements, arising out of or otherwise related to the Released Claims.

This release and indemnity shall be binding upon any assignee to which any of the undersigned assigns all or any part of its interest in or rights under one or more of the Agreements.

Butterfield Trust I, L.L.C.
By: _____

Beekman Street Advisory Corp.
By: _____

N.M. Palermo, Inc.
By: _____

Residual Equity Corporation
By: _____

_____
Douglas E. Palermo

-- 2 --

# Promissory Note

$ 120,000.00

July 15, 2003
Chicago, Illinois

FOR VALUE RECEIVED, BEEKMAN STREET ADVISORY CORP., a New Jersey corporation having an address at 535 Fifth Avenue, 18th Floor, New York, NY  10017 and N.M. PALERMO INC. ("Borrower" or "Borrowers"), promises to pay to the order of BRIAN FARLEY, 1343 N. Wells Street, Chicago, IL 60610, or his assignee ("Lender"), the principal sum of ONE HUNDRED TWENTY THOUSAND DOLLARS ($120,000.00) on July 1, 2004 (the "Maturity Date"), together with interest on the unpaid principal balance from the date of this Note at the rate of seventeen percent (17%) or if not paid in full on or before July 1, 2004, interest at the Default Rate set forth herein on the unpaid principal balance of this Note from the date hereof, until paid in full..

The loan evidenced by this Note, including interest rate, fees and charges as contemplated hereby, are: (a) business loans within the purview of Illinois Compiled Statutes, 815 ILCS 205/4, as amended from time to time; (b) an exempted transaction under the Truth In Lending Act, 15 U.S.C. 1601 et seq., as amended from time to time; and (c) do not and when dispersed shall not, violate the provisions of the Illinois usury laws or any consumer credit laws.

Payments shall be applied first to all accrued interest, then to principal and other sums due under this Note. With the consent of Lender first had, Borrower may prepay this Note in full or in part at any time without penalty prior to the Maturity Date. Partial prepayments shall be applied to principal in the inverse order of maturity and shall not delay the due date of full payment of this Note.

Borrower and all others who may become liable for all or any part of this obligation, to the extent allowed by law, hereby waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; waive presentment, protest, demand and notice of dishonor and any and all lack of diligence or delays in collection or endorsement hereof, and expressly consent to any extension of time, release of any party liable for this obligation or any guaranty of this obligation, release of any security which may have been or which may hereafter be granted in connection herewith or in connection with any guaranty of this obligation, or any other indulgence or forbearance which may be made without notice to said party and without in any way affecting the liability of such party.

Nothing contained herein nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively (a) to require the payment of interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision herein contained shall otherwise so operate to invalidate this Note and/or the transaction related hereto, in whole or in part, then such clause(s) and provision(s) only shall be held for naught as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

If for any reason interest in excess of the amount as limited in the foregoing paragraph shall have been paid hereunder, whether by reason of acceleration or otherwise, then in that event any such excess interest shall constitute and be treated as a payment of principal hereunder and shall operate to reduce such principal by the amount of such excess, or if in excess of the then principal indebtedness, such excess shall be refunded.

The rights and remedies of Lender as provided in this Note or any document securing this Note shall be cumulative and concurrent, and may be pursued singly, successively or together against Borrower,

any guarantor of these obligations or any security for the debt evidenced by this Note, at the discretion of Lender.

Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due hereunder; (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or Borrower has made any material misrepresentations of facts; (c) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws; (d) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest; (e) Lender in good faith deems itself insecure; (f) if the "Advisory Services Agreement Amendment" (attached to the "Assignment" or "Guaranty" of this same date) is cancelled, terminated, voided or defaulted without Lender's prior written consent, or if any claim or lien is made against the funds payable thereunder, Lender may, at its option, require immediate payment in full of all sums due hereunder.

Upon a default Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law do one or both of the following: (a) increase the interest rate on this Note to twenty-five percent (25%) per annum ("Default Rate"); and (b) add any unpaid accrued interest to principal and such sum shall bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

This Note has been delivered to Lender and accepted by Lender in the State of Illinois and if delivered or accepted elsewhere shall be deemed to have been delivered and accepted in the State of Illinois. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, the State of Illinois and hereby waives any right to contest jurisdiction or venue. This Note shall be governed by and construed in accordance with the laws of the State of Illinois. The Borrower waives the benefit of any law that would otherwise restrict or limit the Lender in the exercise of its right, which is hereby acknowledged, to set-off at any time hereafter any indebtedness owing from Lender to Borrower against any sum due and owing hereunder.

Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, plus attorneys' fees as provided in this Note, plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. Lender may delay or forego enforcing any of its rights or remedies under this Note without losing them. Borrower and all others who may become liable for all or any part of this obligation, agree that Lender may renew or extend (repeatedly and for any length of time) this Loan, or release any party or Collateral; or impair, fail to realize upon or perfect Lender's security interest in the Collateral; and take any other action deemed necessary by Lender without the consent of or

notice to anyone. This Note shall not be construed against either party based upon who drafted it and said Note shall be deemed to have been mutually drafted.

This Note may not be changed, modified, amended or terminated orally, but may only be changed, modified, amended or terminated by an agreement in writing signed by both Borrower and Lender, except that this paragraph may not be changed, modified or amended under any circumstances.

WITNESS, the execution hereof on the date first above written. By signing below Douglas E. Palermo personally represents and warrants that he has full power and authority to enter into this agreement and that all corporate and legal formalities have been met.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE SET FORTH BELOW. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.

BORROWER:

BEEKMAN STREET ADVISORY CORP.
A New Jersey corporation

By: _____
Name:    Douglas E. Palermo
Title:   President

N.M. PALERMO INC.

By: _____
Name:    Douglas E. Palermo
Title:   President

<u>GUARANTY</u>

This GUARANTY (this "**Guaranty**") is made as of the 1⁵ day of July, 2003, by **DOUGLAS E. PALERMO** ("**Guarantor**"), in favor of **BRIAN FARLEY** ("**Lender**"), in connection with that certain $120,000.00 loan ("**Loan**") made to Beekman Street Advisory Corp., a New Jersey corporation and the related promissory note ("**Promissory Note**").

1.      For value received and in order to induce Lender to make the Loan, Guarantor hereby unconditionally guarantees to Lender the payment of any amounts due under the Promissory Note in accordance with the terms and conditions set forth therein (the "**Indebtedness**"), within thirty (30) days of Guarantor's receipt of written notice from Lender that a default has occurred or that the Promissory Note has not been timely paid.  Guarantor also hereby unconditionally guarantees that the "Advisory Services Agreement Amendment" and any underlying or related agreements are valid and that there are not any claims, liens or other facts negatively affecting the payments contemplated under section 3(b) of that agreement.  (See agreement attached to Assignment.)

2.      The liability of Guarantor under this Guaranty shall be unconditional irrespective of (a) any lack of enforceability of any Indebtedness; (b) any change of the time, manner or place of payment, or any other term, of any Indebtedness; (c) any exchange, release or non-perfection of any collateral securing payment of any Indebtedness; (d) the acceptance of additional parties or the release of anyone primarily or secondarily liable on the Indebtedness; (e) any law, regulation or order of any jurisdiction affecting any term of any Indebtedness or Lender's rights with respect thereto; and (f) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Guarantor.  Guarantor waives promptness, diligence and notices with respect to any Indebtedness and this Guaranty and any requirement that Lender exhaust any right or take any action against any collateral security and any duty on the part of Lender to disclose to the undersigned any matter, fact or thing related to the business, operations or condition (financial or otherwise) of Guarantor, his affiliates or his property, whether now or hereafter known by Lender.

3.      Guarantor waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of any loans made, extensions granted or other action taken in reliance hereon and all demands and notices of any kind in connection with this Guaranty or the Indebtedness.

4.      There are no conditions or limitations to this Guaranty except those set forth herein, and no alteration, change or modification shall be made except in a writing signed by Lender and Guarantor.

5.      This Guaranty is governed by the laws (other than conflict of interest rules) of the State of Illinois.

6.      This Guaranty shall bind the heirs, administrators, representatives, successors and assigns of Guarantor, and shall inure to the benefit of Lender, his successors and assigns.

7.      This Guaranty shall become effective upon its execution by Guarantor and shall continue in full force and effect and may not be terminated or otherwise revoked until the Indebtedness shall have been fully paid and discharged.

1
407770v1

8.    Guarantor and Lender each agrees that all disputes between them arising out of or related to the relationship established between Guarantor and Lender in connection with this Guaranty, whether arising in contract, tort, equity or otherwise, shall be resolved only by state or federal courts located in Chicago, Illinois.

Dated: July _____, 2003

_____

DOUGLAS E. PALERMO

Address:    535 _____ ___ _____

_____ ___ _____

2

407730v1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Case No. 05-25081 (ASH)<br>Chapter 7 |
| DOUGLAS E. PALERMO,<br>Debtor. | |
| DAVID R. KITTAY, TRUSTEE, | Adv. Pro. No. 08-8203 |
| Plaintiff, | |
| vs. | |
| BRIAN FARLEY, PHILIP HERLIHY, and PMD<br>COMPANY, | Hearing Date and Time: To be determined |
| Defendants. | |

### AFFIDAVIT OF PHILLIP HERLIHEY IN SUPPORT OF MOTION OF DEFENDANTS TO WITHDRAW THE REFERENCE AND TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Phillip Herlihey, being duly sworn, hereby deposes and states, under penalty of perjury, as follows:

1.      I am over eighteen years of age and competent to testify on the matters set forth in this affidavit. I have personal knowledge of the facts set forth in this affidavit.

2.      I make this affidavit in connection with that certain Motion and Memorandum of Law in Support of Motion of Defendants To Withdraw The Reference And To Transfer Venue To the United States District Court For the Northern District of Illinois, Eastern Division (the "**Motion**"), which Motion is filed with this Affidavit. I have read the Motion and the Affidavit of Farley which is attached as exhibit E thereto. All capitalized terms not otherwise defined herein shall have the meaning as is set forth in the Motion.

78137v3                                            1

EXHIBIT F

3.    Since at least the year 2002, I have resided in the state of Illinois.

4.    I have known and been friends with Farley since prior to 2003.

5.    Shortly prior to, or in, approximately June 2004, Farley introduced me to the Debtor who was inquiring about obtaining a loan. Following further communications I had with both Farley and the Debtor at that time, we negotiated the terms of a Loan Agreement under which, among other things, I would make a loan in return for an Assignment of a Contingent Commission, that the Debtor and/or one or more Debtor Entities would be entitled to collect if a certain transaction relating to real estate owned by a McLean Entity thereafter closed.

6.    Thereafter, the Debtor contacted me (either directly of through my attorney/advisor Brian Farley) again in or about November 2005, May 2006, and June 2006 to inquire about obtaining additional loans at those times. Farley helped me prepare Loan Agreement No. 2, Loan Agreement No. 3, Loan Agreement No. 4, and Loan Agreement No. 5 (all described below) just prior to or on about the date of said agreements, and either I or Farley sent them by fax, email, or mail to the Debtor and/or McLean to obtain the appropriate signatures required therein, and thereafter either Farley or I received these documents fully signed back via similar methods from those individual(s) on or about the date of said agreements. Farley or myself have copies or originals of each of these executed documents. Specifically, these executed Loan Agreements provide as follows:

a.    A Promissory Note dated June 15, 2004, executed by three Debtor Entities evidencing a loan of $65,000 by me, and an Assignment also dated June 15, 2004, executed by the Debtor, Beekman Street Advisory Corp., N.M. Palermo Inc. and Butterfield Trust I, LLC, McLean, a McLean Entity and the Trustees of Columbia University in the City of New York evidencing the assignment of certain Contingent Commissions to me ("**Loan Agreement No. 2**"). A copy of Loan Agreement No. 2 is attached hereto as exhibit 1 and by express reference made a part hereof. Although the Promissory Note in this Loan Agreement No. 2 reflects a loan of $90,000, I actually only loaned $65,000.

b.   A Promissory Note dated November 23, 2005, executed by the Debtor and one Debtor Entity evidencing a loan of $59,000 by me, and an Assignment also dated November 23, 2005, executed by the Debtor, the Debtor Entity, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to Herlihey ("**Loan Agreement No. 3**"). A copy of Loan Agreement No. 3 is attached hereto as exhibit 2 and by express reference made a part hereof.

c..  A Promissory Note dated May 9, 2006, executed by the Debtor and one Debtor Entity evidencing a loan of $40,000 by me, and an Assignment also dated May 9, 2005, executed by the Debtor, the Debtor Entity, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to me ("**Loan Agreement No. 4**"). A copy of Loan Agreement No. 4 is attached hereto as exhibit 3 and by express reference made a part hereof.

d.   A Promissory Note dated June 28, 2006, executed by the Debtor and one Debtor Entity evidencing a loan of $40,000 by me, and an Assignment also dated June 28, 2006 executed by the Debtor, a Debtor Entity, McLean and a McLean Entity evidencing the assignment of certain Contingent Commissions to me ("**Loan Agreement No. 5**"). A copy of Loan Agreement No. 5 is attached hereto as exhibit 4 and by express reference made a part hereof.

7.   In connection with certain of these Loan Agreements, and just prior to the date of said agreements, Farley helped me prepare several guaranties including, without limitation, the following guaranty agreements under which the following described individual(s) (i.e., the Debtor and/or McLean) guaranteed the obligations under the specified Promissory Note (the "**Guaranty**"), and either Farley or I sent one or both of these individuals the Guaranty by fax, email, or mail to obtain the appropriate signature(s) required therein, and either Farley or I thereafter received the signed Guaranty back via similar methods from those individual(s) on or about the date of said agreement. Farley or myself have a copy or original of each of the following described Guaranties (a copy which are attached hereto as exhibit 5 and by express reference made a part hereof):

a.   A Guaranty dated June 15, 2004, executed by the Debtor relating to the Promissory Note under Loan Agreement No. 2.

78137v3                                                3

b.    A Guaranty dated November 23, 2004, executed by the Debtor and McLean relating to the Promissory Note under Loan Agreement No. 3.

c.    A Guaranty dated June 26, 2006, executed by McLean relating to the Promissory Note under Loan Agreement No. 5.

8.    All of the negotiations and communications that I had relative to the negotiations of these Loan Agreements and Guaranties were between myself and the Debtor, and/or myself and Farley primarily by telephone or written communication, while I was located in Illinois. I never traveled to meet and/or negotiate any of these transactions with the Debtor in person, and the Debtor never traveled to meet with me. I accepted these Loan Agreements and Guaranties while I was in Illinois at or about the time of the respective agreement.

9.    I thereafter received payment and satisfaction of the obligations represented by each of the foregoing described Loan Agreements as follows:

a.    On or about July 29, 2004, I received $90,000 in satisfaction of the obligations under the Loan Agreement No. 2.

b.    In or about January 2006, I received a payment of $71,800 in satisfaction of the obligations under Loan Agreement No. 3.

c.    In or about August 2006, I received a payment of $101,000 in satisfaction of the obligations under Loan Agreement Nos. 4 & 5.

10.    I state under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

(The rest of this page is intentionally left blank)

78137v3                                          4

Affiant further sayeth naught.

PHILLIP HERLIHEY

STATE OF ILLINOIS                )
                                 )    ss:
COUNTY OF WINNEBAGO )

SUBSCRIBED AND SWORN TO
THIS ____ DAY OF
_____, 2008.


_____
NOTARY PUBLIC

## ASSIGNMENT

This agreement dated this 15th of June, 2004, is to serve as an irrevocable assignment between the parties Beekman Street Advisory Corp. (having corporate offices at 535 Fifth Avenue, 18th Floor, New York, NY 10017), N.M. Palermo Inc., Residual Equity Corporation, Butterfield Trust I, LLC and Douglas E. Palermo, (herein called "Seller" or "Sellers") and Phil Herlihey, 1343 N. Wells Street, Chicago, IL 60610 (herein called "Purchasers") assigning all rights, title and interests to any monies or sums due to Sellers in relation to the "Advisory Services Agreement Amendment" dated October 28, 2002 (hereinafter the "ASAA") attached hereto as Exhibit "A" and documents and agreements underlying or relating thereto. Pursuant to section 3 of the ASAA $1,815,520.00 will be due and payable to Sellers pursuant to the agreement.

For the price of $65,000.00 and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Sellers, Sellers hereby assign to Purchaser all rights, title and interests to the first $90,000.00 of proceeds next due to Seller(s) in relation to the ASAA. Upon payment said $90,000 to Purchaser pursuant to this assignment and the terms of the ASAA (which is expected to be on or before July 7, 2004) the Purchaser agrees to forgive the principal debt on the promissory note between Beekman Street Advisory Corp., Butterfield Trust I, LLC and the Purchaser which is attached hereto as Exhibit "B". Any outstanding amount due (excluding principal) on the promissory note would still be owed to the Purchasers notwithstanding the cancellation of the principal amount. In addition to the $90,000 dollars, if said amount is not received by Purchaser by July 7, 2004, Purchaser will be entitled to an additional $1,000 per week for each and every week (or portion of a week) that said amount has not been fully paid.

SELLERS:

_____
Douglas E. Palermo

Beekman Street Advisory Corp.

By: _____
Name: Douglas E. Palermo
Title: President

Butterfield Trust I, LLC

By: _____
Name: David H. Buchanan, Jr.
Title: Manager

N.M. Palermo Inc.

PURCHASER:

_____
Phil Herlihey

EXHIBIT F-1

By:

Name: Douglas E. Palermo
Title:  President

Residual Equity Corporation

By:

Name: David Buchanan, Jr.
Title:  President

FOR PURPOSES OF APPROVING THE ASSIGNMENT SET FORTH HEREIN:

455 Central Park West, L.L.C.

By:

Name: Daniel E. McLean
Title:  Member

Daniel E. McLean

The Trustees of Columbia University in the City of New York

By:

Name: William Scott
Title: Deputy Vice-President

## ADVISORY SERVICES AGREEMENT AMENDMENT

THIS ADVISORY SERVICES AGREEMENT AMENDMENT (this "Amendment") is made as of the 28 day of October, 2002, by and among 455 Central Park West, L.L.C., a Delaware limited liability company having an office c/o MCL Companies, 455 E. Illinois Street, Chicago, Illinois 60611 (hereinafter "the Company"), Daniel E. McLean, having an office c/o MCL Companies, 455 E. Illinois Street, Chicago, Illinois 60611, Butterfield Trust I, LLC, a Delaware limited liability company having an office at 1054 Black Rock Road, Easton, Connecticut 06612 (hereinafter "BT1"), Beekman Street Advisory Corp., a New Jersey corporation having an office at 305 W. Grand Avenue, Suite 600, Montvale, New Jersey 07645 (hereinafter "BSA"), N.M. Palermo, Inc., a New Jersey corporation having an office at 305 W. Grand Avenue, Suite 600, Montvale, New Jersey 07645 ("N.M. Palermo"), Residual Equity Corporation, a Delaware corporation having an office at 1054 Black Rock Road, Easton, Connecticut 06612 ("REC") and Douglas E. Palermo, having an office at 305 W. Grand Avenue, Suite 600, Montvale, New Jersey 07645.

## R E C I T A L S

(A)    On August 28, 2001, the Company, BT1 and BSA entered into a letter agreement (the "Fee Agreement") regarding fees to be paid by the Company to BT1 and BSA in connection with the sale by the Company to The Trustees of Columbia University in the City of New York ("Columbia") of certain condominium units to be located in the building being constructed by the Company (the "Building") at 455 Central Park West, New York, New York (said construction project collectively the "Project"). A copy of the Fee Agreement is annexed hereto as Exhibit 1.

(B)    On January 29, 2002, the Company and N.M. Palermo entered into a letter agreement (the "Loan Fee Agreement") regarding fees to be paid by the Company to N.M. Palermo in connection with the construction loan financing to be obtained by the Company. A copy of the Loan Fee Agreement is annexed hereto as Exhibit 2.

(C)    On January 11, 2002, the Company and Columbia entered into that certain Purchase Agreement (as heretofore or hereafter amended, the "Purchase Agreement") pursuant to which the Company agreed to sell to Columbia, and Columbia agreed to acquire from the Company, 53 of the condominium units to be constructed as part of the Building (the "Pre-Sale Units") for the gross purchase price of $45,388,000. In the Purchase Agreement, REC and BSA were listed as brokers in the transaction.

(D)    The Company anticipates that it will enter into a Building Loan Agreement and other loan documents with iStar Financial Services, Inc. ("Lender") pursuant to which Lender will make a construction loan (the "Loan") available to the Company for the purpose of constructing the Building.

(E)    The Company, BT1, BSA, N.M. Palermo, Douglas E. Palermo and REC desire to clarify certain of their rights and obligations under the Fee Agreement and the Loan Fee Agreement (collectively, the "Services Agreement") and the Purchase Agreement.

NOW, THEREFORE, in consideration of ten dollars and other good and valuable consideration paid one to the other, the receipt and sufficiency of which are hereby acknowledged, the Company, BT1, BSA, N.M. Palermo, Douglas E. Palermo and REC hereby covenant and agree as follows:

1.    Recitals: The Recitals set forth above are incorporated into this Amendment as if set forth in the body hereof and are confirmed as being true and correct by the parties hereto.

2.    The Loan Fee Agreement: It is agreed that neither BT1, BSA, N.M. Palermo, Douglas E. Palermo nor REC (collectively, the "Advisors") nor any principal or affiliate of the foregoing were instrumental in arranging the Loan anticipated to be made by Lender to the Company and therefor no fee is due to any of the Advisors or any principal or affiliate thereof in connection with the Loan. The Loan Fee Agreement is terminated and of no force or effect.

3.    The Fee Agreement: The parties hereto agree that the full fee due pursuant to the Fee Agreement is $1,815,520, which amount has been or will be payable as follows:

(a)    $140,000 has been paid prior to the date hereof, the receipt whereof is hereby acknowledged by the Advisors;

(b)    $313,880 shall be paid to BSA on behalf of the Advisors at the time that Lender makes its first funding of the Loan, which is anticipated to be on or around October 15, 2002. The Company hereby irrevocably authorizes and directs Lender to pay such amount out of the Loan proceeds directly to BSA (on behalf of the Advisors) at the time of the first funding of the Loan; and

(c)    $1,361,640 shall be paid to BT1 on behalf of the Advisors at the time of conveyance of the Pre-Sale Units in accordance with the Purchase Agreement or in accordance with such other closing arrangements as may be agreed to by the Company and Columbia. The Company hereby irrevocably authorizes and directs Columbia to pay such amount out of the purchase price due to the Company pursuant to the Purchase Agreement directly to BT1 (on behalf of the Advisors) at the time of the conveyance of the Pre-Sale Units to Columbia and payment by Columbia of the purchase price therefor in accordance with the Purchase Agreement. Notwithstanding the foregoing, in the event that the Pre-Sale Units are not conveyed to Columbia (or any assignee or affiliate thereof) or Columbia fails to pay the purchase price therefor in accordance with the Purchase Agreement or such other closing arrangements as may be agreed to by the Company and Columbia, for any reason other than default by the Company under the Purchase Agreement, the fee provided for in this Section 3(c) shall not be due or payable to BT1 or Advisors, and neither the Company nor Daniel E. McLean nor Columbia shall have any liability therefor whatsoever.

4.    No Liability of Lender or Columbia: The Company hereby waives any and all rights it may now or hereafter have to bring legal action against Columbia or Lender, and waives all causes of action it may now or hereafter have against Columbia or Lender, in connection with or arising out of, Columbia or Lender making the payments to the Advisors contemplated above. Neither Columbia nor Lender shall be required to comply with any demands or instructions which the Company may give which are in contradiction to the payment instructions set forth

above. The Advisors hereby agree for the benefit of Columbia and Lender that they will not bring legal action against Columbia or Lender for any fees due to them with regard to, or in connection with, the Fee Agreement, the Loan Fee Agreement, the sale of the Pre-Sale Units, the Loan, or otherwise in connection with the transactions contemplated hereby, and waive all causes of action against Columbia and Lender which the Advisors may now or hereafter have with regard to the transactions contemplated hereby (provided that the Advisors do not waive any right to enforce the payment obligations set forth in this Amendment). The Advisors agree to look solely to the Company for any and all fees which may be due to them in connection with the Fee Agreement and the Purchase Agreement, which fees are limited to those specified in this Amendment. The Company and Daniel E. McLean hereby agree to indemnify, defend and hold harmless Columbia and Lender from and against any claim, loss, cost or expense which either may incur (including reasonable attorneys' fees and costs) as a result of any claim being made by the Advisors or any principal or affiliate thereof against either Columbia or Lender for any fees or other compensation resulting from the Fee Agreement and the Purchase Agreement.

5.    Advisors' Fee Splitting Arrangement: Advisors acknowledge and consent to the payments provided for above being paid in the manner, and to the party, provided for above. The Advisors and Douglas E. Palermo jointly and severally agree to indemnify, defend and hold harmless Columbia, Lender, the Company and Daniel E. McLean from and against any claim, loss, cost or expense which any of them may incur (including reasonable attorneys' fees and costs) as a result of any claim being made by any of the Advisors or any principal or affiliate thereof against either Columbia, Lender, the Company or Daniel E. McLean which relates to how the payments to be made hereby are to be split among the Advisors and/or any principal or affiliate thereof or the payment thereof by Lender and Columbia as provided for above.

6.    Advisors' Releases: The Company acknowledges that no further services are expected by the Advisors pursuant to the Services Agreement. Upon payment of the fees to BSA on behalf of the Advisors as provided for in Section 3(b) (if in fact said fee is payable as set forth therein), (i) the Fee Agreement shall be of no force or effect and no further payments shall be due to the Advisors in connection with the Fee Agreement or the Purchase Agreement, (ii) the only operative agreement regarding the fees, if any, to be paid to Advisors with regard to the Project and sales contemplated by the Purchase Agreement shall be this Amendment, and (iii) the Advisors and their principals, shareholders, officers, partners, members and affiliates shall be deemed to have released the Company and Daniel E. McLean from any and all claims or liabilities arising in connection with the Project and sales contemplated by the Purchase Agreement except for claims for the fees payable, if any, pursuant to Section 3(c) above. Upon payment of the fees to BT1 on behalf of Advisors as provided for in Sections 3(c) above, Advisors and their principals, shareholders, officers, partners, members and affiliates shall be deemed to have released the Company, Daniel E. McLean, Lender and Columbia from any and all claims or liabilities arising in connection with, the Project and the sales contemplated by the Purchase Agreement, including any set forth in this Amendment. If no fees are due and payable due to failure of Columbia to close under the Purchase Agreement, then the Fee Agreement shall be terminated and of no force and effect and such release shall be effective as of the date of the termination of the Purchase Agreement.

7.  **Method of Payment**.  The payments to be made by Lender and Columbia contemplated by Section 3 above shall be made by wire transfer of good Federal funds to an account or accounts designated by the Advisors.

8.  **Entire Agreement**:  This Amendment constitutes the entire agreement of the parties hereto with respect to the subject matter of this Amendment.  This Amendment may not be modified, amended or terminated, except by an agreement in writing executed by the parties hereto.  This is without limitation of any other written agreements executed as of the date hereof.

9.  **Notices**:  Any notice (including a letter, request, consent or other communication) which any party is required or desires to give to the others in connection with this Amendment, must be in writing and must be sent by registered or certified mail, return receipt requested or sent by nationally recognized overnight courier or by hand to the addresses for the respective parties set forth above.  Any party can specify a different address for themselves by giving notice of it to the others.  All notices to Columbia shall be sent to Columbia as provided for in Section 12 of the Purchase Agreement.

10. **Parties Bound**:  This Amendment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

11. **Governing Law**:  This Amendment shall be governed by and construed in accordance with the laws of the State of New York without regard to principals of conflicts of laws.

12. **Multiple Counterparts**:  This Amendment may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement.

13. **Third Party Beneficiaries**:  The Company and Advisors acknowledge that Columbia and Lender are to be deemed third party beneficiaries with respect to the terms of this Amendment.

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the day and year first above written.

_____

Douglas E. Palermo

_____

Daniel E. McLean


455 Central Park West, L.L.C.
By: 455 Central Park West, Inc., Manager

By:_____
Daniel E. McLean, President

Butterfield Trust I, LLC

By: _David H. Buchanan, Jr._

Name: David H. Buchanan, Jr.

Title MANAGER

Beekman Street Advisory Corp.

By: _____

Name: Douglas E. Palermo

Title PRESIDENT

N.M. Palermo, Inc.

By: _____

Name: Douglas E. Palermo

TITLE: PRESIDENT

Residual Equity Corporation

By: _____

Name: David H. Buchanan, Jr,

Title: President

Lender and Columbia have executed this Amendment for the sole purpose of acknowledging the payment instruction set forth in Section 3 above

iStar Financial Inc.

By: _____

Name: _____

Title: _____

The Trustees of Columbia University in the City of New York

By: _____

Name: _____

Title: _____

Butterfield Trust I, LLC

By:_____
Name: David H. Buchanan, Jr.
Title

Beekman Street Advisory Corp.

By:_____
Name:  Douglas E. Palermo
Title

N.M. Palermo, Inc.

By:_____

Residual Equity Corporation

By:_____

Lender and Columbia have executed this Amendment for the sole purpose of acknowledging the payment instruction set forth in Section 3 above

iStar Financial Inc.

By: _____
Name:_____
Title:_____

The Trustees of Columbia University in the City of New York

By:_____
Name:_____
Title:_____

Butterfield Trust I, LLC

By:_____
Name: David H. Buchanan, Jr.
Title

Beekman Street Advisory Corp.

By:_____
Name:  Douglas E. Palermo
Title

N.M. Palermo, Inc.

By:_____

Residual Equity Corporation

By:_____

Lender and Columbia have executed this Amendment for the sole purpose of acknowledging the payment instruction set forth in Section 3 above

iStar Financial Inc.

By: _____
Name:_____
Title:_____

The Trustees of Columbia University in the City of New York

By:_____
Name: William L. Scott
Title: Deputy Vice President

EXHIBIT 1

FEE AGREEMENT FOR DOCUMENT #130588

BUTTERFIELD TRUST I
1054 Black Rock Road
Easton, Connecticut 06612

August 28, 2001

CONFIDENTIAL

455 Central Park West, L.L.C.
c/o MCL Companies
455 E. Illinois Street
Chicago, Illinois 60611
Attention: Daniel E. McLean

Dear Mr. McLean:

We are pleased to submit to you this letter agreement (the "Agreement") which sets forth the terms pursuant to which Butterfield Trust I ("BTI") and Beekman Street Advisory Corp. ("BSA") shall provide strategic financial advisory services to 455 Central Park West, L.L.C. (the "Company") in connection with the engagement described herein.

I.    ENGAGEMENT

The Company has engaged BTI and BSA as its financial advisors with regard to the transaction described in the letter of intent attached hereto as Annex I (the "Letter of Intent"), in connection with the disposition by the Company of the property located at 455 Central Park West, New York NY, 10025 (the "Property") to Columbia University. As used herein, the term "Transaction" shall mean the transaction described in the Letter of Intent or any other transaction in which Columbia University or an affiliate of Columbia University (the "Purchaser") at any time in the future obtains ownership or use (whether through lease or otherwise) of all, or substantially all, of the Property.

II.    SCOPE OF SERVICES

BTI and BSA, each in their capacity as exclusive financial advisors to the Company, will provide financial advisory services relating to the Transaction, including business, financial and transaction feasibility analysis. Such services shall be provided during normal business hours at the reasonable request of the Company on no less than five business days advance notice.

08/16/02   10:02   ☎2018028401           COLBET AVIATION                    ☒002

## III.   FEES

The total compensation for services rendered under this engagement will be a financial advisory fee equal to four percent (4%) of the total consideration paid by the Purchaser to the Company in connection with the Transaction (including by way of payment, assumption of indebtedness or otherwise) (the "Purchase Price"), which shall be due and payable by the Company as follows:

1.  to BSA, one percent (1%) of the Purchase Price upon the granting of a construction loan to the Company from either any affiliate of the FleetBoston Financial Corporation or any other lender; and
2.  to BTI, three percent (3%) of the Purchase Price at the closing of the Transaction.

## IV.   EXCULPATION

The Company agrees that neither BTI or BSA, nor any of their trustees, principals, officers, employees or affiliates (each, an "Advisory Party") shall have any liability (whether direct or indirect, in contract or tort or otherwise) for claims, losses, damages, deficiencies, liabilities (joint or several), lawsuits, judgments, costs and expenses (including, as incurred and without limitation, reasonable attorneys' fees, interest, penalties, travel expenses, wages allocable to the loss of employee time and all amounts paid in, investigation, defense or settlement of any of the foregoing) (collectively, "Damages") sustained by the Company (or any person claiming through the Company) unless a court having competent jurisdiction shall have determined by final judgment (not subject to further appeal) that such Damages resulted primarily and directly from the willful malfeasance or gross negligence of such Advisory Party under circumstances where BTI's or BSA's act or failure to act was not requested or consented to by the Company.

## V.   DECISION-MAKING

In rendering its services to the Company under this Agreement, neither BTI nor BSA is assuming any responsibility for the Company's underlying business decision to effect any Transaction or for any economic, financial or other results which may be obtained or experienced by the Company as a result of BTI's and BSA's engagement under this Agreement. The Company will make the final determination of value, pricing, terms and conditions on any Transaction ultimately consummated.

## VI.   OTHER AGREEMENTS

(A)    BTI and BSA have been retained under this Agreement separately as independent contractors with no fiduciary or agency relationship with the Company or to any other party. All opinions and advice (oral or written) rendered by BTI and/or BSA pursuant to this Agreement are intended solely for the benefit and use of the officers, directors, and legal and financial advisors of the Company in considering the matters to which this

2

NY1045425

10/23/2002 17:08 FAX                                                    010
08/20/02   10:02   CT2012520401          COMJET AVIATION                 003

Agreement relates, and the Company agrees that such opinions and advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to BTI or BSA be made by the Company (or such persons), without the prior written consent of BTI or BSA, as applicable. In addition, the Company agrees that any descriptive material prepared with BTI's or BSA's assistance, including any financing memoranda, shall not be used, reproduced, disseminated, quoted or referred to at any time or in any manner except with the prior written consent of BTI or BSA, as applicable. Any termination of BTI's and BSA's engagement under this Agreement shall not affect the Company's obligation to comply with this section.

(B)    Notice given pursuant to any of the provisions of the Agreement shall be in writing and shall be mailed or delivered: (a) if to the Company, at its offices at c/o MCL Companies, 455 E. Illinois Street, Chicago, Illinois 60611, Attention: Daniel E. McLean; (b) if to BTI, at its offices at 1054 Black Rock Road, Easton, Connecticut 06612, Attention: David H. Buchanan, Jr. and (c) if to BSA at its offices at 305 West Grand Avenue, Suite 600, Montvale, NJ 07645, attn: Douglas E. Palermo.

(C)    The validity and interpretation of this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).

(D)    This Agreement incorporates the entire understanding of the parties relating to the subject matter hereof, and supersedes and cancels all previous agreements, understandings and/or communications between BTI, BSA and the Company.  This Agreement may not be amended or modified except in writing, executed by the BTI, BSA and the Company. This Agreement shall be binding upon BTI, BSA and the Company and their respective successors and assigns, including any affiliate to which the Company conveys all or any portion of the Property.  This Agreement is not intended to confer any rights upon any shareholder, owner, partner or member of the Company, or any other person not a party hereto.

(E)    This Agreement may be executed in counterparts, each of which together shall be considered a single document.

3

01/26/02  16:06   TP8016059401            COMENT ATILLION                          004

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicates of this Agreement, which shall thereupon constitute a binding agreement between BTI and the Company.

Very truly yours,

BUTTERFIELD TRUST I

By: _____
Name: David H. Luckerman
Title: Trustee

BEEKMAN STREET ADVISORY CORP.

By: _____
Name: _____
Title: President

ACCEPTED AND AGREED TO:

455 Central Park West, L.L.C.

By: _____
Name: _____
Title: President

NY7459425

EXHIBIT 2

LOAN FEE AGREEMENT FOR DOCUMENT #130688

03/28/2002  09:23  212-255-6188                    DEWEY BALLANTINE             212 703 2758 TO 91208(8009461       P.02/02
FEB 01 2002 12:17 FR MCL COMPANIES

# 455 Central Park West, L.L.C.

January 29, 2002

Mr. Douglas E. Palermo
Principal
N.M. Palermo, Inc.
305 W. Grand Avenue, Suite 600
Montvale, NJ 07645

Re:    455 Central Park West

Dear Doug:

Please let this letter serve as our agreement to pay you, or any affiliate you name, a 1% fee for helping finance 455 Central Park West, LLC. The fee will be payable upon closing of a construction loan which has been deemed satisfactory to 455 Central Park West, LLC.

The 1% fee is payable on a loan which has been attained through a source you introduce to 455 Central Park West, LLC, not on a loan attained through our own efforts.

If the loan is obtained from Union Labor Life Insurance Company (ULICO) the fee will be 0.60% as we both currently have relationships with ULICO.

Very truly yours,

455 Central Park West, L.L.C.

By:

Name: Daniel E. McLean
Title:   President

AGREED AND ACCEPTED TO:

N.M. Palermo, Inc.

By:

Name: Douglas E. Palermo
Title:   Principal

455 E. Illinois Street, Suite 565 • Chicago, Illinois 60611 • Phone 312-321-8900 • Fax 312-755-2750

## Promissory Note

$ 90,000.00

June 15, 2004
Chicago, Illinois

FOR VALUE RECEIVED, BEEKMAN STREET ADVISORY CORP., a New Jersey corporation having an address at 535 Fifth Avenue, 18th Floor, New York, NY 10017, BUTTERFIELD TRUST I, a Delaware limited liability company and N.M. PALERMO INC. ("Borrower" or "Borrowers"), promises to pay to the order of PHIL HERLIHEY, 1343 N. Wells Street, Chicago, IL 60610, or his assignee ("Lender"), the principal sum of NINETY THOUSAND DOLLARS ($90,000.00) on July 7, 2004 (the "Maturity Date"), together with interest on the unpaid principal balance from the date of this Note at the rate of seventeen percent (17%) or if not paid in full on or before July 7, 2004, interest at the Default Rate set forth herein on the unpaid principal balance of this Note from the date hereof, until paid in full..

The loan evidenced by this Note, including interest rate, fees and charges as contemplated hereby, are: (a) business loans within the purview of Illinois Compiled Statutes, 815 ILCS 205/4, as amended from time to time; (b) an exempted transaction under the Truth In Lending Act, 15 U.S.C. 1601 et seq., as amended from time to time; and (c) do not and when dispersed shall not, violate the provisions of the Illinois usury laws or any consumer credit laws.

Payments shall be applied first to all accrued interest, then to principal and other sums due under this Note. With the consent of Lender first had, Borrower may prepay this Note in full or in part at any time without penalty prior to the Maturity Date. Partial prepayments shall be applied to principal in the inverse order of maturity and shall not delay the due date of full payment of this Note.

Borrower and all others who may become liable for all or any part of this obligation, to the extent allowed by law, hereby waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; waive presentment, protest, demand and notice of dishonor and any and all lack of diligence or delays in collection or endorsement hereof, and expressly consent to any extension of time, release of any party liable for this obligation or any guaranty of this obligation, release of any security which may have been or which may hereafter be granted in connection herewith or in connection with any guaranty of this obligation, or any other indulgence or forbearance which may be made without notice to said party and without in any way affecting the liability of such party.

Nothing contained herein nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively (a) to require the payment of interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision herein contained shall otherwise so operate to invalidate this Note and/or the transaction related hereto, in whole or in part, then such clause(s) and provision(s) only shall be held for naught as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

If for any reason interest in excess of the amount as limited in the foregoing paragraph shall have been paid hereunder, whether by reason of acceleration or otherwise, then in that event any such excess interest shall constitute and be treated as a payment of principal hereunder and shall operate to reduce such principal by the amount of such excess, or if in excess of the then principal indebtedness, such excess shall be refunded.

The rights and remedies of Lender as provided in this Note or any document securing this Note shall be cumulative and concurrent, and may be pursued singly, successively or together against Borrower,

any guarantor of these obligations or any security for the debt evidenced by this Note, at the discretion of Lender.

Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due hereunder; (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or Borrower has made any material misrepresentations of facts; (c) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws; (d) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest; (e) Lender in good faith deems itself insecure; (f) If the "Advisory Services Agreement Amendment" (attached to the "Assignment" or "Guaranty" of this same date) is cancelled, terminated, voided or defaulted without Lender's prior written consent, or if any claim or lien is made against the funds payable thereunder, Lender may, at its option, require immediate payment in full of all sums due hereunder.

Upon a default Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law do one or both of the following: (a) increase the interest rate on this Note to twenty-five percent (25%) per annum ("Default Rate"); and (b) add any unpaid accrued interest to principal and such sum shall bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by laws.

This Note has been delivered to Lender and accepted by Lender in the State of Illinois and if delivered or accepted elsewhere shall be deemed to have been delivered and accepted in the State of Illinois. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, the State of Illinois and hereby waives any right to contest jurisdiction or venue. This Note shall be governed by and construed in accordance with the laws of the State of Illinois. The Borrower waives the benefit of any law that would otherwise restrict or limit the Lender in the exercise of its right, which is hereby acknowledged, to set-off at any time hereafter any indebtedness owing from Lender to Borrower against any sum due and owing hereunder.

Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, plus attorneys' fees as provided in this Note, plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. Lender may delay or forego enforcing any of its rights or remedies under this Note without losing them. Borrower and all others who may become liable for all or any part of this obligation, agree that Lender may renew or extend (repeatedly and for any length of time) this Loan, or release any party or Collateral; or impair, fail to realize upon or perfect Lender's security interest in the Collateral; and take any other action deemed necessary by Lender without the consent of or

notice to anyone. This Note shall not be construed against either party based upon who drafted it and said Note shall be deemed to have been mutually drafted.

This Note may not be changed, modified, amended or terminated orally, but may only be changed, modified, amended or terminated by an agreement in writing signed by both Borrower and Lender, except that this paragraph may not be changed, modified or amended under any circumstances.

WITNESS, the execution hereof on the date first above written. By signing below Douglas E. Palermo personally represents and warrants that he has full power and authority to enter into this agreement and that all corporate and legal formalities have been met.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE SET FORTH BELOW. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.

BORROWER:

BEEKMAN STREET ADVISORY CORP.
A New Jersey corporation

By: _____
Name:      Douglas E. Palermo
Title:     President

BUTTERFIELD TRUST I, LLC,
a Delawrae limited liability company

By: _____
Name: David H. Buchanan, Jr.
Title:     Manager

N.M. PALERMO INC.

By: _____
Name:      Douglas E. Palermo
Title:     President

PMD

## ASSIGNMENT

This agreement dated this 23th of November, 2005, is to serve as an irrevocable assignment between the parties Norfolk Financial, LLC and Douglas E. Palermo (herein called "Consultant" or "Consultants") and Phil Herlihey, 1343 N. Wells Street, Chicago, IL 60610 (herein called "Lender") assigning all rights, title and interests to monies or sums due to Consultants in relation to the August 29, 2005 letter agreement from MCL Companies to Norfolk Financial, LLC ("Consultant Fee Letter"). This assignment is limited to the amount of money due under the Promissory Note attached hereto as Exhibit "A".

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Consultants, Consultants hereby assign to Lender all rights, title and interests to the first $65,900.00 (or the amount calculated by Lender to be due under the Promissory Note, whichever is greater) of proceeds next due to Consultant(s) in relation to the Consultant Fee Letter or any other amounts due to Consultant from Dan McLean or any company owned or controlled by him.

CONSULTANTS:                                LENDER:

_____            _____
Douglas E. Palermo, Personally             Phil Herlihey

Norfolk, LLC

By: _____
    Name: Douglas E. Palermo
    Title:  President

FOR PURPOSES OF APPROVING THE ASSIGNMENT SET FORTH HEREIN:

MCL COMPANIES

By: _____
    Name: Daniel E. McLean
    Title: _____

And, _____
Daniel E. McLean

# EXHIBIT F-2

Exhibit "A"

# Promissory Note

$ 59,000.00

November 23, 2005
Chicago, Illinois

FOR VALUE RECEIVED, NORFOLK FINANCIAL, LLC and DOUGLAS E. PALERMO ("Borrower" or "Borrowers"), promises to pay to the order of PHIL HERLIHEY, 1343 N. Wells Street, Chicago, IL 60610, or his assignee ("Lender"), the principal sum of FIFTY NINE THOUSAND DOLLARS ($59,000.00) plus a transaction and interest fee of $6,900.00 (for a total amount due on the Maturity Date of $65,900.00) on or before December 31, 2005 (the "Maturity Date"). If not paid in full, on or before the Maturity Date, Borrowers shall pay an additional $5,900.00 for each and every month (or a portion thereof) that the amounts due hereunder have not been fully paid in addition to any other amounts that may be due under the terms of this Promissory Note. Borrowers waive, to the fullest extent permitted by law, any and all claims, defenses and objections to the amounts due hereunder.

The loan evidenced by this Note, including interest rate, fees and charges as contemplated hereby, are: (a) business loans within the purview of Illinois Compiled Statutes, 815 ILCS 205/4, as amended from time to time; (b) an exempted transaction under the Truth In Lending Act, 15 U.S.C. 1601 et seq., as amended from time to time; and (c) do not and when dispersed shall not, violate the provisions of the Illinois usury laws or any consumer credit laws.

Payments shall be applied first to all accrued interest, then to principal and other sums due under this Note. With the consent of Lender first had, Borrower may prepay this Note in full or in part at any time without penalty prior to the Maturity Date. Partial prepayments shall be applied to principal in the inverse order of maturity and shall not delay the due date of full payment of this Note.

Borrower and all others who may become liable for all or any part of this obligation, to the extent allowed by law, hereby waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; waive presentment, protest, demand and notice of dishonor and any and all lack of diligence or delays in collection or endorsement hereof, and expressly consent to any extension of time, release of any party liable for this obligation or any guaranty of this obligation, release of any security which may have been or which may hereafter be granted in connection herewith or in connection with any guaranty of this obligation, or any other indulgence or forbearance which may be made without notice to said party and without in any way affecting the liability of such party.

Nothing contained herein nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively (a) to require the payment of interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision herein contained shall otherwise so operate to invalidate this Note and/or the transaction related hereto, in whole or in part, then such clause(s) and provision(s) only shall be held for naught as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

If for any reason interest in excess of the amount as limited in the foregoing paragraph shall have been paid hereunder, whether by reason of acceleration or otherwise, then in that event any such excess interest shall constitute and be treated as a payment of principal hereunder and shall operate to reduce such principal by the amount of such excess, or if in excess of the then principal indebtedness, such excess shall be refunded.

The rights and remedies of Lender as provided in this Note or any document securing this Note shall be cumulative and concurrent, and may be pursued singly, successively or together against Borrower,

any guarantor of these obligations or any security for the debt evidenced by this Note, at the discretion of Lender.

Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due hereunder; (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or Borrower has made any material misrepresentations of facts; (c) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws; (d) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest; (e) Lender in good faith deems itself insecure; (f) If the "Advisory Services Agreement Amendment" (attached to the "Assignment" or "Guaranty" of this same date) is cancelled, terminated, voided or defaulted without Lender's prior written consent, or if any claim or lien is made against the funds payable thereunder, Lender may, at its option, require immediate payment in full of all sums due hereunder.

Upon a default Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law do one or both of the following: (a) increase the interest rate on this Note to twenty-five percent (25%) per annum ("Default Rate"); and (b) add any unpaid accrued interest to principal and such sum shall bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by laws.

This Note has been delivered to Lender and accepted by Lender in the State of Illinois and if delivered or accepted elsewhere shall be deemed to have been delivered and accepted in the State of Illinois. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, the State of Illinois and hereby waives any right to contest jurisdiction or venue. This Note shall be governed by and construed in accordance with the laws of the State of Illinois. The Borrower waives the benefit of any law that would otherwise restrict or limit the Lender in the exercise of its right, which is hereby acknowledged, to set-off at any time hereafter any indebtedness owing from Lender to Borrower against any sum due and owing hereunder.

Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, plus attorneys' fees as provided in this Note, plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. Lender may delay or forego enforcing any of its rights or remedies under this Note without losing them. Borrower and all others who may become liable for all or any part of this obligation, agree that Lender may renew or extend (repeatedly and for any length of time) this Loan, or release any party or Collateral; or impair, fail to realize upon or perfect Lender's security interest in the Collateral; and take any other action deemed necessary by Lender without the consent of or

11/23/2005  17:15    9448227                      PMD                          PAGE  05/08

notice to anyone. This Note shall not be construed against either party based upon who drafted it and said Note shall be deemed to have been mutually drafted.

This Note may not be changed, modified, amended or terminated orally, but may only be changed, modified, amended or terminated by an agreement in writing signed by both Borrower and Lender, except that this paragraph may not be changed, modified or amended under any circumstances.

WITNESS, the execution hereof on the date first above written. By signing below Douglas E. Palermo personally represents and warrants that he has full power and authority to enter into this agreement and that all corporate and legal formalities have been met.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE SET FORTH BELOW. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.

BORROWER:

Norfolk Financial, LLC

By: _____
Name:       Douglas E. Palermo
Title:      President

BORROWER:

DOUGLAS E. PALERMO

X. _____

PMD
05/09/2006  13:35    9448227    PAGE  02/05

# ASSIGNMENT

This agreement dated this 9th of May, 2006, is to serve as an irrevocable assignment between the parties Norfolk Financial, LLC and Douglas E. Palermo (herein called "Consultant" or "Consultants") and Phil Herlihey, 1343 N. Wells Street, Chicago, IL 60610 (herein called "Lender") assigning all rights, title and interests to monies or sums due to Consultants in relation to the May 5 letter agreement from MCL Companies to Norfolk Financial, LLC ("Consultant Fee Letter"). This assignment is limited to the amount of money due under the Promissory Note attached hereto as Exhibit "A".

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Consultants, Consultants hereby assign to Lender all rights, title and interests to the first $46,000.00 (or the amount calculated by Lender to be due under the Promissory Note, whichever is greater) of proceeds next due to Consultant(s) in relation to the Consultant Fee Letter or any other amounts due to Consultant (or any other company owned, in whole or part, or controlled by Douglas E. Palermo) from Dan McLean or any company owned or controlled by him.

THE PARTIES AGREE THAT THE DOCUMENT MAY BE EXECUTED IN COUNTERPARTS AND THAT FACSIMLE SIGNATURES SHALL BE TREATED AS ORIGINALS AND CONSULTANT AGREES TO IMMEDIATLEY FORWARD ORIGINALSIGNATURES TO LENDER.

CONSULTANTS:

LENDER:

Douglas E. Palermo, Personally

Phil Herlihey

Norfolk, LLC

By: 

Name: Douglas E. Palermo

Title:  President

ONLY FOR PURPOSES OF APPROVING THE ASSIGNMENT SET FORTH HEREIN:

MCL COMPANIES

By: 

Name: Daniel E. McLean

Title: 

And,

Daniel E. McLean

# EXHIBIT F-3

# ASSIGNMENT

This agreement dated this 9th of May, 2006, is to serve as an irrevocable assignment between the parties Norfolk Financial, LLC and Douglas E. Palermo (herein called "Consultant" or "Consultants") and Phil Herlihey, 1343 N. Wells Street, Chicago, IL 60610 (herein called "Lender") assigning all rights, title and interests to monies or sums due to Consultants in relation to the May 5 letter agreement from MCL Companies to Norfolk Financial, LLC ("Consultant Fee Letter"). This assignment is limited to the amount of money due under the Promissory Note attached hereto as Exhibit "A".

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Consultants, Consultants hereby assign to Lender all rights, title and interests to the first $46,000.00 (or the amount calculated by Lender to be due under the Promissory Note, whichever is greater) of proceeds next due to Consultant(s) in relation to the Consultant Fee Letter or any other amounts due to Consultant (or any other company owned, in whole or part, or controlled by Douglas E. Palermo) from Dan McLean or any company owned or controlled by him.

THE PARTIES AGREE THAT THE DOCUMENT MAY BE EXECUTED IN COUNTERPARTS AND THAT FACSIMLE SIGNATURES SHALL BE TREATED AS ORIGINALS AND CONSULTANT AGREES TO IMMEDIATLEY FORWARD ORIGINALSIGNATURES TO LENDER.

CONSULTANTS:                                LENDER:

_____                     _____
Douglas E. Palermo, Personally              Phil Herlihey

**Norfolk, LLC**

By:      _____
         Name: Douglas E. Palermo
         Title:  President

ONLY FOR PURPOSES OF APPROVING THE ASSIGNMENT SET FORTH HEREIN:

MCL COMPANIES _of Chicago, Inc._

By:      _____
         Name: Daniel E. McLean
         Title:  _____

And,

_____
Daniel E. McLean



May 5, 2006

Norfolk Financial, LLC
15 East Putnam Avenue
Suite 3090
Greenwich, Connecticut     06830

Re:     Piper's Alley
        Chicago, Illinois

Gentlemen:

This letter is to confirm our understanding regarding the sale of the above referenced property. In the event Intercontinental Investment Fund III, LLC, or any related entities, purchase the property for a sum of $36,000,000, a consulting fee in the amount of $265,000 will be paid to you at closing. Any reduction of the purchase price between $36,000,000 and $35,000,000 will cause a corresponding reduction of the first $100,000 of fee equal to 10% of the purchase price reduction (i.e. a purchase price reduction of $440,000 will cause a fee reduction of $44,000). If the ultimate sales price drops to $35,000,000, the consulting fee would be $165,000.

If this transaction or any other transaction relating to this property by Intercontinental Investment Fund III, LLC, or any related entities, does not close, there will be no consulting fee paid to you.

I have enclosed two copies of this letter. Please sign one copy and return to me at MCL Companies, at the address shown below.

Yours truly,

Daniel E. McLean
President

Agreed to and Accepted this ___ day of May, 2006

Authorized Officer

Exhibit "A"                        Promissory Note

$ 40,000.00                                              May 9, 2006
                                                         Chicago, Illinois

     FOR VALUE RECEIVED, NORFOLK FINANCIAL, LLC and DOUGLAS E. PALERMO ("Borrower" or "Borrowers"), jointly and severally, promise to pay to the order of PHIL HERLIHEY, 1343 N. Wells Street, Chicago, IL 60610, or his assignee ("Lender"), the principal sum of FORTY THOUSAND DOLLARS ($40,000.00) plus a transaction and interest fee of $6,000.00 (for a total amount due on the Maturity Date of $46,000.00) on or before July 18, 2006 (the "Maturity Date"). If not paid in full, on or before the Maturity Date, Borrowers shall pay an additional $6,000.00 for each and every month (or a portion thereof) that the amounts due hereunder have not been fully paid in addition to any other amounts that may be due under the terms of this Promissory Note. Borrowers waive, to the fullest extent permitted by law, any and all claims, defenses and objections to the amounts due hereunder.

     The loan evidenced by this Note, including interest rate, fees and charges as contemplated hereby, are: (a) business loans within the purview of Illinois Compiled Statutes, 815 ILCS 205/4, as amended from time to time; (b) an exempted transaction under the Truth In Lending Act, 15 U.S.C. 1601 et seq., as amended from time to time; and (c) do not and when dispersed shall not, violate the provisions of the Illinois usury laws or any consumer credit laws.

     Payments shall be applied first to all accrued interest, then to principal and other sums due under this Note. With the consent of Lender first had, Borrower may prepay this Note in full or in part at any time without penalty prior to the Maturity Date. Partial prepayments shall be applied to principal in the inverse order of maturity and shall not delay the due date of full payment of this Note.

     Borrower and all others who may become liable for all or any part of this obligation, to the extent allowed by law, hereby waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; waive presentment, protest, demand and notice of dishonor and any and all lack of diligence or delays in collection or endorsement hereof, and expressly consent to any extension of time, release of any party liable for this obligation or any guaranty of this obligation, release of any security which may have been or which may hereafter be granted in connection herewith or in connection with any guaranty of this obligation, or any other indulgence or forbearance which may be made without notice to said party and without in any way affecting the liability of such party.

     Nothing contained herein nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively (a) to require the payment of interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision herein contained shall otherwise so operate to invalidate this Note and/or the transaction related hereto, in whole or in part, then such clause(s) and provision(s) only shall be held for naught as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

     If for any reason interest in excess of the amount as limited in the foregoing paragraph shall have been paid hereunder, whether by reason of acceleration or otherwise, then in that event any such excess interest shall constitute and be treated as a payment of principal hereunder and shall operate to reduce such principal by the amount of such excess, or if in excess of the then principal indebtedness, such excess shall be refunded.

     The rights and remedies of Lender as provided in this Note or any document securing this Note shall be cumulative and concurrent, and may be pursued singly, successively or together against Borrower,

any guarantor of these obligations or any security for the debt evidenced by this Note, at the discretion of Lender.

Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due hereunder; (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or Borrower has made any material misrepresentations of facts; (c) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws; (d) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest; (e) Lender in good faith deems itself insecure; (f) If the "Advisory Services Agreement Amendment" (attached to the "Assignment" or "Guaranty" of this same date) is cancelled, terminated, voided or defaulted without Lender's prior written consent, or if any claim or lien is made against the funds payable thereunder, Lender may, at its option, require immediate payment in full of all sums due hereunder.

Upon a default Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law do one or both of the following: (a) increase the interest rate on this Note to twenty-five percent (25%) per annum ("Default Rate"); and (b) add any unpaid accrued interest to principal and such sum shall bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by laws.

This Note has been delivered to Lender and accepted by Lender in the State of Illinois and if delivered or accepted elsewhere shall be deemed to have been delivered and accepted in the State of Illinois. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, the State of Illinois and hereby waives any right to contest jurisdiction or venue. This Note shall be governed by and construed in accordance with the laws of the State of Illinois. The Borrower waives the benefit of any law that would otherwise restrict or limit the Lender in the exercise of its right, which is hereby acknowledged, to set-off at any time hereafter any indebtedness owing from Lender to Borrower against any sum due and owing hereunder.

Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, plus attorneys' fees as provided in this Note, plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. Lender may delay or forego enforcing any of its rights or remedies under this Note without losing them. Borrower and all others who may become liable for all or any part of this obligation, agree that Lender may renew or extend (repeatedly and for any length of time) this Loan, or release any party or Collateral; or impair, fail to realize upon or perfect Lender's security interest in the Collateral; and take any other action deemed necessary by Lender without the consent of or

notice to anyone. This Note shall not be construed against either party based upon who drafted it and said Note shall be deemed to have been mutually drafted.

This Note may not be changed, modified, amended or terminated orally, but may only be changed, modified, amended or terminated by an agreement in writing signed by both Borrower and Lender, except that this paragraph may not be changed, modified or amended under any circumstances.

WITNESS, the execution hereof on the date first above written. By signing below Douglas E. Palermo personally represents and warrants that he has full power and authority to enter into this agreement and that all corporate and legal formalities have been met.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE SET FORTH BELOW. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE. THE PARTIES AGREE THAT FACSIMLE SIGNATURES SHALL BE TREATED AS ORIGINALS AND BORROWER AGREES TO IMMEDIATLEY FORWARD ORIGINALSIGNATURES TO LENDER.

BORROWER:

Norfolk Financial, LLC

By: _____
Name:    Douglas E. Palermo
Title:    President

BORROWER:

DOUGLAS E. PALERMO, personally

X: _____

## ASSIGNMENT

This agreement dated June 28, 2006 is to serve as an irrevocable assignment between the parties Norfolk Financial, LLC and Douglas E. Palermo (herein called "Consultant" or "Consultants") and Phil Herlihey, 1343 N. Wells Street, Chicago, IL 60610 (herein called "Lender") assigning all rights, title and interests to monies or sums to Consultants in relation to the June 28, 2006 letter agreement from MCL Companies to Norfolk Financial, LLC ("Consultant Fee Letter"). This assignment is limited to the amount of money due under the Promissory Note attached hereto as Exhibit "A."

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Consultants, Consultants hereby assign to Lender all rights, title and interests to the first $46,000.00 (or the amount calculated by Lender to be due under the Promissory note, whichever is greater) of proceeds next due to Consultant(s) in relation to the Consultant Fee Letter or any other amounts due to Consultant (or any other company owned, in whole or part, or controlled by Douglas E. Palermo) from Dan McLean or any company owned or controlled by him.

THE PARTIES AGREE THAT THE DOCUMENT MAY BE EXECUTED IN COUNTERPARTS AND THAT FACSIMILE SIGNATURES SHALL BE TREATED AS ORIGINALS AND CONSULTANT AGREES TO IMMEDIATELY FORWARD ORIGINAL SIGNATURES TO LENDER.

CONSULTANTS:                          LENDER:

_____              _____
Douglas E. Palermo, Personally        Phil Herlihey

Norfolk, LLC

By: _____
    Name: Douglas E. Palermo
    Title:  President

ONLY FOR PURPOSES OF APPROVING THE ASSIGNMENT SET FORTH HEREIN:

MCL COMPANIES
By: _____
    Name: Daniel E. McLean
    Title:

And, _____
Daniel E. McLean

# EXHIBIT F-4

JUN-28-2006  14:00        LAW OFFS STEPHEN R FIELD        212 681 6845    P.02

# MCL
# COMPANIES

June 28, 2006

Norfolk Financial LLC
15 East Putnam Avenue, Suite 3090
Greenwich, CT 06830

        Re:    Joint Venture between X.E. Capital Partners and MCL Companies

Gentlemen:

This letter is to confirm our understanding that in the event MCL Companies, or any of its
related entities, and X.E. Capital Partners, or any of its related entities, conclude their proposed
joint venture transaction; a consulting fee will be paid to you in the amount of $500,000 at
closing by such joint venture. If this transaction does not come to fruition, there will be no
consulting fee paid to you.

I have enclosed two copies of this letter. Please sign one copy and return one copy to MCL
COMPANIES.

Sincerely,

Daniel E. McLean
President

Agreed to and Accepted by:

Norfolk Financial LLC

By:
        Authorized Officer

P. 1

JUN-20-2006  15:10     LAW OFFS STEPHEN R FIELD          212 681 6845      P.02

## Promissory Note

$40,000                                                          June 28, 2006
                                                                Chicago, Illinois

FOR VALUE RECEIVED, NORFOLK FINANCIAL, LLC and DOUGLAS R. PALERMO ("Borrower" or "Borrowers"), jointly and severally, promise to pay to the order of PHIL HERLIHEY, 1343 N. Wells Street, Chicago, IL 60610, or his assignee ("Lender"), the principal sum of FORTY THOUSAND DOLLARS ($40,000.00) plus a transaction and interest fee of $6,000.00 (for a total amount due on the Maturity Date of $46,000.00) on or before July 28, 2006 (the "Maturity Date"). If not paid in full, on or before the Maturity Date, Borrowers shall pay an additional $6,000.00 for each and every month (or a portion thereof) that the amounts due hereunder have not been fully paid in addition to any other amounts that may be due under the terms of this Promissory Note. Borrowers waive, to the fullest extent permitted by law, any and all claims, defenses and objections to the amounts due hereunder.

The loan evidenced by this Note, including interest rate, fees and charges as contemplated hereby, are: (a) business loans within the purview of Illinois Compiled Statutes, 815 ILCS 205/4, as amended from time to time; (b) an exempted transaction under the Truth in Lending Act, 15 U.S.C. 1601 et seq., as amended from time to time; and (c) do not and when disbursed shall not, violate the provisions of the Illinois usury laws or any consumer credit laws.

Payments shall be applied first to all accrued interest, then to principal and other sums under this Note. With the consent of Lender first had, Borrower may prepay this Note in full or in part at any time without penalty prior to the Maturity Date. Partial prepayments shall be applied to principal in the inverse order of maturity and shall not delay the due date of full payment of this Note.

Borrower and all others who may become liable for all or any part of this obligation, to the extent allowed by law, hereby waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof, waive presentment, protest, demand and notice of dishonor and any and all lack of diligence or delays in collection or enforcement hereof, and expressly consent to any extension of time, release of any party liable for this obligation or any guaranty of this obligation, release of any security which may have been or which may hereafter be granted in connection herewith or in connection with any guaranty of this obligation, or any other indulgence or forbearance which may be made without notice to said party and without in any way affecting the liability of such party.

Nothing contained herein nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively (a) to require the payment of interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only in the extent of such lawful rate or (b) to require the payment or the doing of any act contrary to law, but if any clause or provision herein contained shall otherwise so operate to invalidate this Note and/or transaction related hereto, in whole or in part, then such clause(s) and provision(s) only shall be held for naught as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

TOTAL P.02

If for any reason interest in excess of the amount as limited in the foregoing paragraph shall have been paid hereunder, whether by reason of acceleration or otherwise, then in that event any such excess interest shall constitute and be treated as a payment of principal hereunder and shall operate to reduce such principal by the amount of such excess, or if in excess of the then principal indebtedness, such excess shall be refunded.

The rights and remedies of Lender as provided in this Note or any document securing this Note shall be cumulative and concurrent, and may be pursued singly, successively or together against Borrower, any guarantor of these obligations or any security for the debt evidenced by this Note, at the discretion of Lender.

Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due hereunder; (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or Borrower has made any material misrepresentations of facts; (c) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws; (d) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest; (e) Lender in good faith deems itself insecure; (f) If the "Advisory Services Agreement Amendment" (attached to the "Assignment" or "Guaranty" of this same date) is cancelled, terminated, voided or defaulted without Lender's prior written consent, or if any claim or lien is made against the funds payable there under, Lender may, at its option, require immediate payment in full of all sums due hereunder.

Upon a default Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law do one or both of the following: (a) increase the interest rate on this Note to twenty-five percent (25%) per annum ("Default Rate"); and (b) add any unpaid accrued interest to principal and such sum shall bear interest there from until paid at the rate provided in this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrow also will pay any court costs, in addition to all other sums provided by laws.

This Note has been delivered to Lender and accepted by Lender in the State of Illinois and if delivered or accepted elsewhere shall be deemed to have been delivered and accepted in the State of Illinois. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction or venue. This Note shall be governed by and construed in accordance with the laws of the State of Illinois. The Borrower waives the benefit of any law that would otherwise restrict or limit the Lender in the exercise of its right, which is hereby acknowledged, to set-off at any time hereafter any indebtedness owing from Lender to Borrower against any sum due and owning hereunder.

Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due.

JUN-29-2005  14:01        LAW OFFS STEPHEN R FIELD

plus attorneys' fees as provided in this Note, plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. Lender may delay or forego enforcing any of its rights or remedies under this Note without losing them. Borrower and all others who may become liable for all or any part of this obligation, agree that Lender may renew or extend (repeatedly and for any length of time) this Loan, or release any party or Collateral; or impair, fail to realize upon or perfect Lender's security interest in the Collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. This Note shall not be construed against either party based upon who drafted it and said Note shall be deemed to have been mutually drafted.

This Note may not be changed, modified, amended or terminated orally, but may only be changed, modified, amended or terminated by an agreement in writing signed by both Borrower and Lender, except that this paragraph may not be changed, modified or amended under any circumstances.

WITNESS, the execution hereof on the date first above written. By signing below Douglas E. Palermo personally represents and warrants that he has full power and authority to enter into this agreement and that all corporate and legal formalities have been met.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE SET FORTH BELOW. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE. THE PARTIES AGREE THAT FACSIMILE SIGNATURES SHALL BE TREATED AS ORIGINALS AND BORROWER AGREES TO IMMEDIATELY FORWARD ORIGINAL SIGNATURES TO LENDER.

BORROWER:

NORFOLK FINANCIAL, LLC

BY: _____
Name: Douglas E. Palermo
Title: President

BORROWER:

DOUGLAS E. PALERMO, personally

X: _____

TOTAL P.08

## GUARANTY

This GUARANTY (this "**Guaranty**") is made as of the 15th day of June, 2004, by **DOUGLAS E. PALERMO** ("**Guarantor**"), in favor of **PHIL HERLIHEY** ("**Lender**"), in connection with that certain $90,000.00 loan ("Loan") made to Beekman Street Advisory Corp., a New Jersey corporation and others as set forth in the related promissory note ("Promissory Note").

1.    For value received and in order to induce Lender to make the Loan, Guarantor hereby unconditionally guarantees to Lender the payment of any amounts due under the Promissory Note in accordance with the terms and conditions set forth therein (the "**Indebtedness**"), within thirty (30) days of Guarantor's receipt of written notice from Lender that a default has occurred or that the Promissory Note has not been timely paid. Guarantor also hereby unconditionally guarantees that the "Advisory Services Agreement Amendment" and any underlying or related agreements are valid and that there are not any claims, liens or other facts negatively affecting the payments contemplated under section 3(b) of that agreement. (See agreement attached to Assignment.)

2.    The liability of Guarantor under this Guaranty shall be unconditional irrespective of (a) any lack of enforceability of any Indebtedness; (b) any change of the time, manner or place of payment, or any other term, of any Indebtedness; (c) any exchange, release or non-perfection of any collateral securing payment of any Indebtedness; (d) the acceptance of additional parties or the release of anyone primarily or secondarily liable on the Indebtedness; (e) any law, regulation or order of any jurisdiction affecting any term of any Indebtedness or Lender's rights with respect thereto; and (f) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Guarantor. Guarantor waives promptness, diligence and notices with respect to any Indebtedness and this Guaranty and any requirement that Lender exhaust any right or take any action against any collateral security and any duty on the part of Lender to disclose to the undersigned any matter, fact or thing related to the business, operations or condition (financial or otherwise) of Guarantor, his affiliates or his property, whether now or hereafter known by Lender.

3.    Guarantor waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of any loans made, extensions granted or other action taken in reliance hereon and all demands and notices of any kind in connection with this Guaranty or the Indebtedness.

4.    There are no conditions or limitations to this Guaranty except those set forth herein, and no alteration, change or modification shall be made except in a writing signed by Lender and Guarantor.

5.    This Guaranty is governed by the laws (other than conflict of interest rules) of the State of Illinois.

6.    This Guaranty shall bind the heirs, administrators, representatives, successors and assigns of Guarantor, and shall inure to the benefit of Lender, his successors and assigns.

1
407730v1

7.    This Guaranty shall become effective upon its execution by Guarantor and shall continue in full force and effect and may not be terminated or otherwise revoked until the Indebtedness shall have been fully paid and discharged.

8.    Guarantor and Lender each agrees that all disputes between them arising out of or related to the relationship established between Guarantor and Lender in connection with this Guaranty, whether arising in contract, tort, equity or otherwise, shall be resolved only by state or federal courts located in Chicago, Illinois.

Dated:  June 15, 2004

_____
DOUGLAS E. PALERMO

Address:    535 5th Ave 28th Flod
NY. C NY. 1007

2
407730v1

## GUARANTY

This GUARANTY (this "**Guaranty**") is made as of the 23rd day of November, 2005, by **DOUGLAS E. PALERMO** and **DANIEL E. McLEAN, jointly and severally** ("**Guarantor**" or "**Guarantors**"), in favor of **PHIL HERLIHEY** ("**Lender**"), in connection with that certain $59,000.00 loan ("Loan") made to DOUGLAS E. PALERMO and others as set forth in the related promissory note ("Promissory Note").

1.     For value received and in order to induce Lender to make the Loan, Guarantors, jointly and severally, hereby unconditionally guarantee to Lender the payment of any amounts due under the Promissory Note dated November 23, 2005 in the principal amount of $59,000.00 in accordance with the terms and conditions set forth therein (the "**Indebtedness**"), within three (3) days of Guarantor's receipt of written notice from Lender that a default has occurred or that the Promissory Note has not been timely paid.  Guarantor also hereby unconditionally guarantees that the August 29, 2005 letter from MCL Companies to Norfolk Financial, LLC ("Consultant Fee Letter") and any underlying or related agreements are valid and that there are not any claims, liens or other facts negatively affecting the payments contemplated under said Consultant Fee Letter and Douglas E. Palermo has full power and authority to assign the consulting fee set forth in the Consulting Fee Letter.

2.     The liability of Guarantor under this Guaranty shall be unconditional irrespective of (a) any lack of enforceability of any Indebtedness; (b) any change of the time, manner or place of payment, or any other term, of any Indebtedness; (c) any exchange, release or non-perfection of any collateral securing payment of any Indebtedness; (d) the acceptance of additional parties or the release of anyone primarily or secondarily liable on the Indebtedness; (e) any law, regulation or order of any jurisdiction affecting any term of any Indebtedness or Lender's rights with respect thereto; and (f) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Guarantor.  Guarantor waives promptness, diligence and notices with respect to any Indebtedness and this Guaranty and any requirement that Lender exhaust any right or take any action against any collateral security and any duty on the part of Lender to disclose to the undersigned any matter, fact or thing related to the business, operations or condition (financial or otherwise) of Guarantor, his affiliates or his property, whether now or hereafter known by Lender.

3.     Guarantor waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of any loans made, extensions granted or other action taken in reliance hereon and all demands and notices of any kind in connection with this Guaranty or the Indebtedness.

4.     There are no conditions or limitations to this Guaranty except those set forth herein, and no alteration, change or modification shall be made except in a writing signed by Lender and Guarantor.

5.     This Guaranty is governed by the laws (other than conflict of interest rules) of the State of Illinois.

6.     This Guaranty shall bind the heirs, administrators, representatives, successors and assigns of Guarantor, and shall inure to the benefit of Lender, his successors and assigns.

1
407730v1

7.    This Guaranty shall become effective upon its execution by Guarantor and shall continue in full force and effect and may not be terminated or otherwise revoked until the Indebtedness shall have been fully paid and discharged.

8.    Guarantor and Lender each agrees that all disputes between them arising out of or related to the relationship established between Guarantor and Lender in connection with this Guaranty, whether arising in contract, tort, equity or otherwise, shall be resolved only by state or federal courts located in Chicago, Illinois.

Dated:  November 23, 2005


_____
**DOUGLAS E. PALERMO, personally**

Address:    _____


_____
**DANIEL E. McLEAN, personally**

Address:    _____

_____


2
407730v1

11/23/2005  17:15    9448227    PMD    PAGE  08/08

7.    This Guaranty shall become effective upon its execution by Guarantor and shall continue in full force and effect and may not be terminated or otherwise revoked until the Indebtedness shall have been fully paid and discharged.

8.    Guarantor and Lender each agrees that all disputes between them arising out of or related to the relationship established between Guarantor and Lender in connection with this Guaranty, whether arising in contract, tort, equity or otherwise, shall be resolved only by state or federal courts located in Chicago, Illinois.

Dated:  November 23, 2005

                                      _____
                                        DOUGLAS E. PALERMO, personally

                          Address:    _____

                                        _____

                          _____
                                        DANIEL E. McLEAN, personally

                          Address:    _____

                                        _____

2
407730v1

## "PERSONAL" GUARANTY

This GUARANTY (this "**Guaranty**") is made as of the 26th day of June, 2006, by **Daniel E. McLean, an individual, with a mailing address of Daniel E. McLean, 455 E. Illinois St # 565, Chicago, IL 60611 ("Guarantor"**), in favor of PHIL HERLIHEY, 1343 N. Wells, Chicago, Illinois 60610 ("**Lender**"), in connection with that certain $46,000.00 loan ("Loan") made to Douglas E. Palermo ("Promissory Note") made at or about the same time as this guarantee.

1.    For value received and in order to induce Lender to make the Loan, Guarantor hereby unconditionally guarantees to Lender the payment of any amounts due under the Promissory Note in accordance with the terms and conditions set forth therein (the "**Indebtedness**"), within thirty (30) days of Guarantor's receipt of written notice from Lender that a default has occurred or that the Promissory Note has not been timely paid. **Notwithstanding anything contained in this Guaranty to the contrary, Guarantor shall have no liability hereunder until July 1, 2007.**

2.    The liability of Guarantor under this Guaranty shall be unconditional irrespective of (a) any lack of enforceability of any Indebtedness; (b) any change of the time, manner or place of payment, or any other term, of any Indebtedness; (c) any exchange, release or non-perfection of any collateral securing payment of any Indebtedness; (d) the acceptance of additional parties or the release of anyone primarily or secondarily liable on the Indebtedness; (e) any law, regulation or order of any jurisdiction affecting any term of any Indebtedness or Lender's rights with respect thereto; and (f) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Guarantor. Guarantor waives promptness, diligence and notices with respect to any Indebtedness and this Guaranty and any requirement that Lender exhaust any right or take any action against any collateral security and any duty on the part of Lender to disclose to the undersigned any matter, fact or thing related to the business, operations or condition (financial or otherwise) of Guarantor, his affiliates or his property, whether now or hereafter known by Lender.

3.    Guarantor waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of any loans made, extensions granted or other action taken in reliance hereon and all demands and notices of any kind in connection with this Guaranty or the Indebtedness.

4.    There are no conditions or limitations to this Guaranty except those set forth herein, and no alteration, change or modification shall be made except in a writing signed by Lender and Guarantor.

5.    This Guaranty is governed by the laws (other than conflict of interest rules) of the State of Illinois.

1

6.     This Guaranty shall bind the heirs, administrators, representatives, successors and assigns of Guarantor, and shall inure to the benefit of Lender, his successors and assigns.

7.     This Guaranty shall become effective upon its execution by Guarantor and shall continue in full force and effect and may not be terminated or otherwise revoked until the Indebtedness shall have been fully paid and discharged.

8.     Guarantor and Lender each agrees that all disputes between them arising out of or related to the relationship established between Guarantor and Lender in connection with this Guaranty, whether arising in contract, tort, equity or otherwise, shall be resolved only by state or federal courts located in Chicago, Illinois.

9.     TO THE MAXIMUM EXTENT PERMITTED BY LAW, GUARANTOR AND LENDER HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY ACTION, CAUSE OF ACTION, CLAIM, DEMAND, OR PROCEEDING ARISING UNDER OR WITH RESPECT TO THIS GUARANTY, OR IN ANY WAY CONNECTED WITH, RELATED TO, OR INCIDENTAL TO THE DEALINGS OF GUARANTOR OR LENDER WITH RESPECT TO THIS GUARANTY, OR THE TRANSACTIONS RELATED HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. TO THE MAXIMUM EXTENT PERMITTED BY LAW, GUARANTOR AND LENDER HEREBY AGREE THAT ANY SUCH ACTION, CAUSE OF ACTION, CLAIM, DEMAND, OR PROCEEDING SHALL BE DECIDED BY A COURT TRIAL WITHOUT A JURY AND THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT OR OTHER TRIBUNAL AS WRITTEN EVIDENCE OF THE CONSENT OF GUARANTOR TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

Dated: June 26, 2006

DANIEL E. McLEAN, personally

2

http://web2.westlaw.com/print/printstream.aspx?destination=atp&sv=sp...

**Westlaw Delivery Summary Report for BERISH,BRAD A 2219528**

| | |
|---|---|
| Date/Time of Request: | Wednesday, January 23, 2008 14:27 Central |
| Client Identifier: | 1815-1 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 135 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d                                                                                     Page 1

Not Reported in F.Supp.2d, 2004 WL 1161172 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

▷

In re Magnesium Corp. of America
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re: MAGNESIUM CORPORATION OF AMERICA, et al. Debtor.
Lee E. BUCHWALD, Chapter 7 Trustee of Magnesium Corporation of America and Renco Metals, Inc., Plaintiffs,
v.
THE RENCO GROUP, et al., Defendants.
**No. 01-B-14312 (REG), ADV. 03-06559(REG), 04 Civ. 1357(PKC).**

May 24, 2004.

*MEMORANDUM AND ORDER*

CASEY , J.
    *1 Defendants KPMG, Credit Suisse First Boston LLC ("CSFB"), Houlihan Lokey Howard & Zukin ("Houlihan Lokey") (collectively, "Movants") move, pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 157(d) , to withdraw the automatic reference of this adversary proceeding. The bankruptcy case in which the adversary proceeding arises was commenced on August 2, 2001.

    The notion of a complaint as a short and plain statement is challenged by the Amended Complaint in this adversary proceeding, a 155-page document which requires a five-page table of contents. The Amended Complaint asserts 51 claims against seventeen defendants and twenty Doe defendants. The claims include state law claims of breach of contract, professional

**EXHIBIT G**

malpractice, breach of fiduciary duty, negligence, negligent misrepresentation, unjust enrichment and claims labeled as "conspiracy" claims and "statutory misconduct" claims. In addition to these claims, there are claims of fraudulent conveyance, fraudulent transfer (under both Sections 548 and 550 of the Bankruptcy Code ) and preferential transfer (under Section 547 of the Bankruptcy Code ).

In essence, the Amended Complaint alleges that one of the debtors, Magnesium Corporation of America ("MagCorp"), had certain environmental liabilities arising out of a Rowley, Utah facility which were not adequately disclosed in a 1996 prospectus for an offering by MagCorp's corporate parent, Renco Metals, Inc. ("Renco Metals"), of 11 1/2 % Senior Notes due 2003. The pleading further alleges that certain dividend payments and other transfers were made at a time when Renco Metals was insolvent by reason of the environmental liabilities and, thus, were preferential or fraudulent. The defendants include CSFB, as successor to the underwriter of the 1996 offering, Houlihan Lokey, who rendered the solvency opinion in connection with the 1996 offering, Cadwalader, Wickersham & Taft, L.L.P., who acted as counsel to Renco Metals in connection with the 1996 offering and KPMG who audited the financials of MagCorp and Renco Metals during various years. In addition, to the so-called professional defendants, various officers of MagCorp and Renco Metals are named as defendants. An entity known as K. Sabel Holdings, Inc. ("Sabel") acquired an operating subsidiary of Renco Metals and it and one of its officers and directors are named as defendants and transferees on the fraudulent transfer claims.

The complaint in substantial part asserts claims which are "core proceedings" within the meaning of 28 U.S.C. § 157(b)(2) . The Trustee has asserted fraudulent conveyance, fraudulent transfer and preferential transfer claims (Counts 37, 42, 44, 46, 48-49) which fall within the definition of "core". 28 U.S.C. § 157(b)(2)(F) & (H) . The apparently non-core claims such as those asserted against the lawyers, accountants and underwriters arise out of a common nucleus of facts as the core claims.[FN1]

> FN1. It suffices to note at this juncture that there are core claims and claims which appear on their face to be non-core claims. I need not finally determine whether the apparently non-core claims are, indeed, non-core claims at this juncture. See In re Enron Power Marketing, 2003 WL 68036. (S.D.N.Y. Jan. 8, 2003) ; Good v. Kvaerner US, Inc., 2003 WL 21755782 at n. 6 (S.D.Ind., July 25, 2003) .

Prior to the 1994 bankruptcy amendments, there was authority for the proposition that a bankruptcy court could conduct a jury trial in a core proceeding. Ben Cooper, Inc. v. Ins. Co. of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394 (2d Cir.1990) , cert. granted, 497 U.S. 1023, vacated and remanded, 498 U.S. 964, opinion reinstated on remand, 924 F.2d 36, (2d Cir.) cert. denied, 500 U.S. 928 . In part to resolve an inter-circuit conflict on the issue, section 157(e) of title 28 was adopted, which precludes a jury trial before the bankruptcy judge without the express consent of all the parties. Because a jury has been demanded and all parties have not consented to a jury trial before the bankruptcy judge, any eventual jury trial must be conducted in the district court. That does not dispose of the question of whether this Court should withdraw the reference at this juncture or should await the completion of all pre-trial proceedings.

*2 In considering whether and when to withdraw the reference consideration should be given to the fact that the bankruptcy court will likely have greater familiarity with the facts and issues relating to core matters. In re Orion Pictures Corp. 4 F.3d 1095 (2d Cir.1993) , cert. dismissed, 511 U.S. 1021 (1994) . This Court should also weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping and other related issues. Id. at 1101-02.

Certainly, allowing the bankruptcy court the first opportunity to address core matters promotes the uniform administration of the bankruptcy code. Here, the bankruptcy judge can bring to bear his considerable expertise on the fraudulent conveyance and transfer issues and the preference issues. Further, in administering the Chapter 7 case, the bankruptcy judge will need to become familiar (if he is not already) with the environmental liabilities arising out of the Rowley facility; this may also be the case with the 1996 debt offering. The bankruptcy judge also will be attuned to the timing needs of the overall Chapter 7 case.

CSFB and Houlihan Lokey make much of the fact that *they* are not named in the core claims. But, given the factual intertwinement of the core and apparently non-core claims, it would be highly inefficient for the core claims to remain in the bankruptcy court and the non-core claims to proceed in the district court. KPMG and the Trustees each make this point, though each argues for a different preferred destination.

While the issue is always case specific, often courts in this District have found it appropriate to defer withdrawing the reference until the case is trial ready. *See In re Formica Corp.,* 305 B.R. 147 (S.D.N.Y. Feb 2, 2004) ("While the plaintiff has a right to a jury trial, such a right does not compel withdrawing the reference until the case is ready to proceed to trial.").*See also Gucci by Armstrong v. Gucci,* 1997 WL 122838, at *1 (S.D.N.Y. Mar. 17, 1997) ("While there is no question that this case must return to the District Court if and when there is a jury trial, at the present infant stage of the proceeding the issue of withdrawal is discretionary and turns largely on considerations of judicial economy."); *In re Ames Department Stores,* 190 B.R. 157 (S.D.N.Y.1995) (finding greater efficiency in allowing the matter to remain with the bankruptcy judge until it is trial ready); *In re Kenai Corp.,* 136 B.R. 59, 61 (S.D.N.Y.1992) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme...."); *In re CIS Corp.,* 172 B.R. 748, 764 (S.D.N.Y.1994) (court must consider "whether judicial efficiency and uniformity will be promoted by allowing the bankruptcy court to manage the proceeding until the case becomes ready for trial").

*3 For the foregoing reasons, Movants' motion to withdraw the reference is DENIED without prejudice to its renewal when the bankruptcy court certifies that the adversary proceeding is ready for trial.

SO ORDERED.

S.D.N.Y.,2004.
In re Magnesium Corp. of America
Not Reported in F.Supp.2d, 2004 WL 1161172 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Delivery Summary Report for BERISH,BRAD A 2219528**

| | |
|---|---|
| Date/Time of Request: | Wednesday, January 23, 2008 14:26 Central |
| Client Identifier: | 1815-1 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 234 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 23021972 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

Page 1

▷

In re Rickel & Associates, Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re: RICKEL & ASSOCIATES, INC., Debtor.
RICKEL & ASSOCIATES, INC., Robert Rickel, and Marvin Numeroff, Plaintiffs,
v.
Gregg SMITH, Elliott Smith, and Wireless Acquisition Partners, LLC, Defendants.
Gregg SMITH, Elliott Smith, and Wireless Acquisition Partners, LLC, Third-Party Plaintiffs,
v.
Kenneth RICKEL, Third-Party Defendants.
**No. 98-B-47203 SMB, 01-2441, 03 Civ.7236 PKC.**

Dec. 24, 2003.

**Background:** Creditors brought adversary proceeding against member of creditors' committee alleging that he breached his fiduciary duties.

**Holding:** On member's motion to withdraw the reference, the District Court, Castel , J., held that motion was not timely.

Motion denied.

West Headnotes

Bankruptcy 51 ⌒2103

51 Bankruptcy
   51I In General
      51I(E) Reference
         51k2103 k. Withdrawal or Transfer to District Court. Most Cited Cases

Motion to withdraw reference to bankruptcy court was not timely, since adversary proceeding regarding effect of stipulation was pending in bankruptcy court for 31 months prior to motion to withdraw, bankruptcy judge expended substantial resources in producing opinion on issue, and to allow movant to first have bankruptcy judge rule on effect of stipulation, neither appeal nor reargue that ruling and then, nearly one year later, ask district judge to revisit bankruptcy judge's original rulings, would have prejudiced other party and resulted in unacceptable judicial inefficiency. 28 U.S.C.A. § 157(a), (d) .


*MEMORANDUM AND ORDER*


CASTEL , J.

   *1 Defendants-third party plaintiffs Elliot Smith, Gregg Smith, and Wireless Acquisition Partners, LLC ("WAP") (collectively "defendants") move, pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 157(d) , to withdraw the automatic reference of this adversary proceeding. The proceeding as to which withdrawal is sought was commenced on or about February 26, 2001. Defendants also move for summary judgment.


*Nature of the Adversary Proceeding*

   An understanding of the nature of this proceeding may be gleaned from the complaint. Prior to the October 7, 1998 filing of the Chapter 11 petition, Debtor, Rickel & Associates, Inc. ("Rickel"), was a licensed broker-dealer. (Compl.¶ 12). As compensation for under-writing services, Rickel often received warrants to purchase an issuer's common stock. (Compl.¶ 19). One such issuer was SmartServOnline, Inc. ("SSOL").

   Defendant Gregg Smith, a former Managing Director of Rickel, was appointed as a member of the three-person Committee of Unsecured Creditors ("Creditors' Committee"). (Compl.¶¶ 14, 16). The Creditors' Committee set out to liquidate the Debtor's securities portfolio, including the SSOL warrants (Compl.¶¶ 34, 35). Gregg Smith had the primary responsibility, it is alleged, to provide the Creditors' Committee and its counsel with information relating to the SSOL warrants. (Compl.¶ 35).

   Gregg Smith and Elliott Smith, who was president of Debtor's equity division (Compl.¶ 18), jointly offered to purchase the SSOL warrants from the Debtor. It is alleged that Gregg Smith was the primary negotiator for the Creditors' Committee on the sell side, while he was purchaser on the buy side. (Compl.¶ ¶ 38-39). In late January 2000, Gregg Smith, acting for himself and Elliott, was the successful bidder at a telephonic auction (Compl.¶¶ 51-52). Thereafter, the two formed WAP as their acquisition vehicle for the SSOL warrants (Compl.¶ 53). By order of March 7, 2000, the liquidating plan of reorganization was confirmed by the Court and the sale of the SSOL warrants closed on April 3, 2000. (Compl. ¶¶ 63, 65).

   It is alleged, among other things, that the two Smiths concealed or inadequately disclosed the anti-dilution features of the SSOL warrants and otherwise provided false information to the Creditors' Committee (Compl.¶¶ 37, 41, 63). It is further alleged that the two Smiths and WAP acquired the warrants at a price of $3.525 million at a point in time when they were worth in excess of $20 million (Compl.¶¶ 61-62).

   The complaint alleges that by reason of the foregoing Gregg Smith breached his fiduciary duties as a member of the Creditors' Committee (Compl.¶¶ 95-99 ). It also alleges claims for securities fraud, fraud and unjust enrichment against all

defendants; the claim for negligent misrepresentation, like the fiduciary duty claim, is against Gregg Smith alone. (Compl.¶¶ 69-86, 100-103).

In the bankruptcy court, the defendants moved to dismiss the complaint and for summary judgment. In a thorough 61-page opinion, Judge Stuart M. Bernstein denied defendants' motion in substantial part, but granted it some respects. (Memorandum Decision of January 28, 2002 ("Mem. Dec.")). He declined to grant summary judgment to defendants on the basis of release language in a stipulation that was entered as an order of the Court on June 8, 2000. He also ruled that all claims, other than the breach of fiduciary duty claim, were dismissed to the extent that they sought relief on behalf of the Subordinated Creditor Plaintiffs. He dismissed certain other claims which are not before me on this motion-the turnover claim, the request for declaratory relief and the claim for equitable subordination. Judge Bernstein ruled that plaintiffs' motion to vacate the sale of the warrants (which is not the subject of defendants' motion to withdraw) would be tried with the adversary proceeding.

*Timeliness of the Motion to Withdraw the Reference*

**\*2** Under the authority of 28 U.S.C. § 157(a) , all Chapter 11 cases in this District are automatically referred to the District's bankruptcy judges. An application to withdraw the reference *may* be granted "for cause shown".28 U.S.C. § 157(d) . The reference *shall* be withdrawn "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."*Id.*

The statute expressly requires that for the court to withdraw the reference at the behest of a party (as distinguished from doing so on its own motion), the motion to withdraw must be "timely" made. *Id.* FN1 While there is no bright line test for timeliness, the motion should be made at the earliest opportunity after it is apparent that there is a basis for such a motion. *See* 9 Collier on Bankruptcy at ¶ 5011.01[2].*See also Davis v. Majhlman,* 149 B.R. 866 (N.D.Ill.1993) (one month after the complaint held untimely); *United States Brizendine v. Montgomery Ward & Co., Inc.,* 143 B.R. 877 (N.D.Ill.1992) (seven month delay held untimely).

> FN1. "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on *timely* motion of any party, for cause shown. The district court shall, on *timely* motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce"28 U.S.C. § 157 (emphasis added).

While one district court held that an application filed ten months after the filing of a claim was within, but "at the outer limit" of, timeliness, *Burger King Corp. v. B-K of Kansas, Inc.,* 64 B.R. 728 (D.Kan.1986) , I note that it does not appear to have been a case in which the bankruptcy court had devoted substantial resources to the claim. In *Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397 (S.D.N.Y.1986) , withdrawal was granted after a year had elapsed and there was an intervening ruling on a motion to dismiss by the bankruptcy judge. However, the district court noted that "defendants have represented at a conference before the Court that they will not renew their motion to dismiss in the district court if this action is withdrawn."*Id.* at 402. Here, the motion to withdraw the reference is joined with a renewed summary judgment motion.

This adversary proceeding was pending in the bankruptcy court for 31 months prior to the making of the motion to withdraw.FN2 The bankruptcy judge expended substantial resources in producing his 61-page opinion. Despite some protestations to the contrary, defendants do seek to retrace in the district court substantially the same journey previously taken in the bankruptcy court.FN3 In the summary judgment motion made along with their motion to withdraw the reference, defendants seek to have this Court dismiss the proceedings based upon the very stipulation, dated April 24, 2000, that was approved and entered as an order of the bankruptcy court on June 8, 2000. This same stipulation formed an integral part of defendants' earlier motion for summary judgment made to the bankruptcy court, which motion was denied and never appealed. *See* Mem. Dec. at

10-17.

FN2. As noted, the complaint is dated February 26, 2001. According to plaintiffs, defendants' motion to withdraw was served on October 1, 2003 (Plaintiffs' Memorandum at 2).

FN3. Defendants note that the initial summary judgment opposition was based upon the Rickel affidavit and that the new summary judgment motion relies upon Rickel's deposition testimony. While that may be true, the motion does in substantial part endeavor to revisit the heart of the prior rulings: "... it is respectfully submitted that Judge Bernstein erred by failing to enforce the unequivocal scope of the 'mutual general release' embodied in the Stipulation."(Defendants' Reply Memorandum at 15)

While the presence or absence of prejudice is a factor in assessing timeliness,[FN4] no support is cited for the proposition that it is a *sine qua non.* I reject defendants' argument that actual prejudice must always be shown and that there can be no prejudice because withdrawal of the reference simply substitutes one court for another. This reasoning would read the timeliness requirement out of the statute. Further, it overlooks the potential prejudice to a plaintiff of having a case dislodged from its steady progression on the bankruptcy court's calendar to be placed on that of the district court.[FN5] To allow defendants in this case to first have the bankruptcy judge rule on the effect of the stipulation, neither appeal nor reargue that ruling and then, nearly a year later, ask the district judge to revisit the bankruptcy judge's original rulings, would prejudice the plaintiffs and result in unacceptable judicial inefficiency.

FN4. *Cf. Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 181-83 (2d Cir.2001) (prejudice is a factor in assessing the timeliness of a motion to intervene).

FN5. According to plaintiffs, Judge Bernstein set the final pretrial conference for November 18, 2003 (Plaintiffs' Memorandum at 9).

**\*3** I conclude that the motion to withdraw the reference is untimely. That, however, does not end all issues relating to withdrawal of the reference. This is a case in which a jury trial has been demanded. Defendants also seek withdrawal of the reference on the ground that the bankruptcy court may not conduct a jury trial absent the consent of the parties which they have elected to withhold.

Prior to the 1994 bankruptcy amendments, there was authority for the proposition that a bankruptcy court could conduct a jury trial in a core proceeding. *Ben Cooper, Inc. v. Ins. Co. of Pa. (In re Ben Cooper, Inc. ),* 896 F.2d 1394 (2d Cir.1990) , *cert. granted,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779, *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408. *opinion reinstated on remand,* 924 F.2d 36, (2d Cir.) *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 . In part to resolve an inter-circuit conflict on the issue, section 157(e) of title 28 was adopted, which provides as follows:
"If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court *and with the express consent of all the parties. "* (emphasis added).[FN6]

FN6. The core/non-core distinction is of critical importance to the standard of review (*compare* 28 U.S.C. § 157(b)(1) with § 157(c)(1) but the absence of consent dooms a jury trial in this case even if the case were viewed as a core proceeding. Thus, I need not decide the question at this juncture. *See In re Enron Power Marketing.* 2003 WL 680 36, (S.D.N.Y. Jan. 8, 2003) ; *Good v. Kvaerner US. Inc.,* 2003 WL 21755782 at n. 6 (S.D.Ind., July 25, 2003) . Prior to the adoption of section 157(e) , the core/non-core distinction was necessarily a threshold issue. *See In re Orion Pictures,* 4 F.3d 1095, 1101 (2d Cir.1993) , *cert. denied,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994) .

Because there is no express consent, this proceeding may not be tried with a jury in bankruptcy court. I will conduct a jury trial of this adversary proceeding if a jury trial is required after all pretrial proceedings before the bankruptcy court are concluded. Defendants claim that it is inefficient for anyone other than the trial judge to hear their summary judgment motion (and also complain that their motion is simultaneously accused of being both untimely and premature). I do not have much sympathy for these arguments. Defendants' plea for judicial economy should be evaluated in the context that defendants alone have created. If a judge other than the one deciding the first summary judgment motion were to hear their new motion, it would cause even greater judicial inefficiency than the circumstance defendants posit.

Defendants' motion to withdraw the reference is DENIED without prejudice to its renewal when the bankruptcy court certifies that the adversary proceeding is ready for trial. Defendants' renewed motion for summary judgment is DENIED without prejudice to its being made before the bankruptcy court.

SO ORDERED.

S.D.N.Y.,2003.
In re Rickel & Associates, Inc.
Not Reported in F.Supp.2d, 2003 WL 23021972 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Case No. 05-25081 (ASH) |
| DOUGLAS E. PALERMO,<br>Debtor. | Chapter 7 |
| DAVID R. KITTAY, TRUSTEE,<br><br>Plaintiff,<br>vs.<br><br>BRIAN FARLEY, PHILIP HERLIHY, PMD<br>COMPANY,<br><br>Defendants. | Adv. Pro. No. 08-8203 |

### ORDER WITHDRAWING THE REFERENCE FROM THE BANKRUPTCY COURT AND AUTHORIZING TRANSFER OF VENUE

At New York, New York, in said District, this _____ day of _____, 2008.

THIS CAUSE coming on to be heard on the Motion Of The Defendants To Withdraw The Reference And To Transfer Venue To The United States District Court For The Northern District Of Illinois, Eastern Division (the "**Motion**"); adequate written notice of the Motion having been given to the plaintiff herein; and the Court having heard and considered the statements of counsel present and being otherwise fully advised in the premises;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion be and is hereby granted;

2. The reference to the Bankruptcy Court be and is hereby withdrawn with respect to this Adversary Proceeding;

3. The above captioned Adversary Proceeding be and is hereby transferred to the United States District Court for the Northern District of Illinois, Eastern Division; and

4. The parties and their representatives are hereby authorized to take all other action reasonably necessary to give effect to this Order.

ENTER:

_____
US DISTRICT COURT JUDGE / MAGISTRATE

78105.4 1/29/08